SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
ORI KATZ, Cal. Bar No. 209561
okatz@sheppardmullin.com
AARON J. MALO, Cal. Bar No. 179985
amalo@sheppardmullin.com
ROBERT K. SAHYAN, Cal. Bar No. 257363
rsahyan@sheppardmullin.com
650 Town Center Drive, 4th Floor
Costa Mesa, California 92626-1993
Telephone: 714-513-5100
Facsimile: 714-513-5130

Attorneys for Debtors

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SANTA ANA DIVISION

In re

MMFX CANADIAN HOLDINGS, INC., *et al.*,

Debtors.

☒ Affects MMFX Canadian Holdings, Inc.

☒ Affects MMFX International Holdings, Inc.

☐ Affects Fasteel Corporation

☐ Affects MMFX Steel Corporation of America

☐ Affects, MMFX Technologies Corporation

☐ Affects all Debtors

Case No. 8: 10-bk-10083-RK

(Jointly Administered with Case Nos.: 10-bk-10085; 10-bk-27570; 10-bk-27571; and 10-bk-27572)

Chapter 11

**DEBTORS' SECOND MOTION FOR EXTENSION OF EXCLUSIVE PERIODS TO FILE A PLAN AND TO SOLICIT ACCEPTANCES THERETO**

Date: TBD
Time: TBD
Place: 411 West Fourth Street
Santa Ana, CA 92701
Courtroom: #5D

MMFX International Holdings, Inc. ("International Holdings"), and MMFX Canadian Holdings, Inc. ("Canadian Holdings" and together with International Holdings, the "Initial Debtors"), hereby move the Court for an order further extending the time periods during which they have the exclusive right to file and solicit acceptances to their plan (the "Motion"), and represent as follows:

**I.**

**PRELIMINARY STATEMENT**

Currently, pursuant to an order of the Court approving a stipulation between the Initial Debtors and their only creditor, Third Fourth LLC ("Fourth Third"), and the creditors' collateral agent, Welland Security Holding Corporation ("Welland"), the Initial Debtors' exclusive period to file a chapter 11 plan runs through February 28, 2011, and their exclusivity period to solicit acceptances to such plan runs through March 31, 2011. The Initial Debtors seek to synch their exclusivity deadlines with those of their affiliated debtors in these jointly administered cases. As such, in this Motion the Initial Debtors seek an order from the Court (i) extending, through and including April 12, 2011, the period within which the Initial Debtors have the exclusive right to file a plan, (ii) extending, through and including June 13, 2011, the period within which the Initial Debtors have the exclusive right to solicit acceptances of such plan, (iii) providing that the Court's order is without prejudice to the Initial Debtors' right to seek further extension of the exclusivity periods, and (iv) providing that the Court's order is without prejudice to the rights of any party in interest to seek to terminate exclusivity at any time.

Cause exists to grant the Initial Debtors' request to extend their exclusivity periods. Previously, the Initial Debtors obtained extensions to allow the insolvency proceedings of Canadian Holdings' three subsidiaries ("Canadian Subsidiaries") to run their course in Canada. This made sense because the progress of the Initial Debtors' cases was linked to that of the Canadian Subsidiaries, as the only liability of the Initial Debtors stems from the guaranties they provided in connection with a $55 million credit facility extended by Fourth Third to the Canadian Subsidiaries, which was secured by the Canadian

Subsidiaries' steel mill in Canada (the "Credit Facility"). Fourth Third's credit bid at the auction sale of the steel mill in the Canadian insolvency proceedings was the winning bid and, as a result, Fourth Third acquired the steel mill. Fourth Third has asserted a deficiency claim against the Initial Debtors and against the following three affiliates: Fasteel Corporation ("Fasteel"), MMFX Steel Corporation of American ("Steel Corp.") and MMFX Technologies Corporation ("Technologies) (collectively, the "New Debtors"), who also provided guaranties in connection with the Credit Facility. The New Debtors recently filed their bankruptcy cases in this District, which are jointly administered with the Initial Debtors' bankruptcy cases. The Initial Debtors and the New Debtors are seeking to address Fourth Third's claim and administer their cases as part of a joint plan, and the Initial Debtors seek the extensions requested in this Motion to synch up the deadlines in their cases so that exclusivity runs parallel with the deadline in the cases of the New Debtors.

The Initial Debtors are holding companies and their only liability is shared with the New Debtors. As such, the resolution of the Initial Debtors' cases is part and parcel of the New Debtors' cases. It is desirable for the MMFX Debtors to have the current deadlines for the Initial Debtors' exclusivity extended to match those of the New Debtors, and would aid in the administration of these cases.

Given the above circumstances, the Initial Debtors submit that it is appropriate to extend their exclusivity to match the deadlines of the exclusivity periods of the New Debtors during which only they may file a plan and solicit acceptances thereof, i.e., through and including April 12, 2011 and June 13, 2011, respectively.

The Initial Debtors are in discussions with Fourth Third and Welland to obtain a stipulation to extend the exclusivity as set forth in this Motion. In the event the parties do not reach an agreement with respect to the extension, the Initial Debtors will seek an order shortening time to have the Motion heard before the expiration of their exclusivity to file a plan.

## II.

## BACKGROUND

### A. General Background of the Cases.

The Initial Debtors are holding companies for the consolidated international operations of the MMFX group of companies (the "MMFX Group"), consisting of the Initial Debtors, the New Debtors and MMFX Steel DMCC ("DMCC"). DMCC is organized under the laws of the United Arab Emirate and is not in bankruptcy. The MMFX Group operates as a consolidated business, and all decision-making is centralized in Irvine, California, where the related MMFX companies are headquartered.

International Holdings is a holding company for its two wholly owned subsidiaries, the related debtor Canadian Holdings and DMCC. Canadian Holdings in turn wholly owns the Canadian Subsidiaries. The Canadian Subsidiaries operated the manufacturing business of the MMFX group that was conducted at the steel mill located in Welland in Ontario, Canada (the "Steel Mill"). The companies are in the business of producing the MMFX steel based on a proprietary technology owned by Technologies, the ultimate parent company of the MMFX Group.

The Steel Mill was acquired in April 2006, along with real estate (including office space) and equipment, which assets were held by the Canadian Subsidiaries. Thereafter, the Canadian Subsidiaries obtained the Credit Facility from Fourth Third, and the Initial Debtors and the New Debtors provided guaranties in connection with the extension of the Credit Facility. In addition, Technologies issued a $5 million convertible secured note to Investment Funding, Inc ("Investment Funding "). The note was secured by all of the equipment, machinery and trade fixtures at the mill.

As holding companies, the Initial Debtors' primary asset is the stock of their subsidiaries. Their only debt arises from their guarantees of the Canadian Subsidiaries' obligations under the Credit Facility provided by Fourth Third.

The downturn in the economy and the concomitant lack of orders for MMFX steel left the Canadian Subsidiaries without the cash flow necessary to service the Credit

Facility and their operations. After several failed attempts at renegotiating the loan, the Canadian Subsidiaries sought bankruptcy protection in Canada on January 6, 2010 under the Companies Creditors Arrangement Act (the "Canadian Proceedings"). The Initial Debtors filed their cases before this Court on January 5, 2010.

**B. The Canadian Proceedings.**

Shortly after the commencement of the Canadian Proceedings, in March 2010, Fourth Third extended debtor-in-possession financing in the Canadian proceedings to run a sale process for the assets of the Canadian Subsidiaries, including the steel mill. The sale auction occurred on July 20, 2010, and Fourth Third was the successful bidder after its credit bid was the winning bid.

**C. The New Debtors' Bankruptcy Filing.**

Following the closing of the sale, Fourth Third asserted a deficiency claim against the MMFX guarantors in an amount that is disputed by the MMFX guarantors. Additionally, Investment Funding sought a temporary protective order against Technologies and asserted a lien on Technologies' assets.

Unable to reach a resolution of these claims, the New Debtors filed their bankruptcy cases on December 13, 2010 and December 14, 2010. Using the December 13 date as the point of reference, the exclusive period of the New Debtors to file a plan runs until April 12, 2011, and their exclusive period to solicit acceptances thereto runs until June 13, 2011.[1]

**D. Prior Extension of Exclusivity.**

The Court initially approved the Initial Debtors' motion to extend their exclusive periods pursuant to its order dated May 13, 2010, thereby extending their exclusive period to file a plan to September 30, 2010, and their exclusive period to solicit acceptances thereto to November 29, 2010. Thereafter, the Initial Debtors and Fourth Third and

[1] The additional 60-day period to solicit acceptances to the plan runs until June 11, 2011, but that deadline is extended to June 13, 2011, as June 11, 2011 falls on a Saturday. Fed. R. Bankr. P. 9006(a)(1)(C).

Welland entered into stipulations on three occasions to extend the Initial Debtors' exclusivity. The third and last such stipulation was approved by the Court in its order dated December 14, 2010 [Dckt. #95], extending the Initial Debtors' exclusive periods to February 28, 2011 and March 31, 2011, respectively.

The Initial Debtors now seek to extend exclusivity to match up with the deadlines in the cases of the New Debtors.

**E. The Progress Toward a Plan.**

The Initial Debtors and the New Debtors anticipate the ultimate filing of a joint chapter 11 plan. The New Debtors are exploring their options, including a potential sale, a financial restructuring or other financial transaction, or a licensing or investment transaction, and intend to address the obligations under the Credit Facility through such a plan.

The New Debtors have made substantial progress in their restructuring efforts. The companies' management has been working diligently to keep the business operating efficiently while working on administering these cases. The New Debtors have obtained DIP financing on an interim basis to continue to fund their operations, have retained the services of their longstanding IP counsel to preserve the value of their patents, and have engaged an investment banker to provide maximum exposure of their assets and assist in identifying potential parties interested in a sale, a financial restructuring, licensing or investment transaction.

The Initial Debtors' requested extension of exclusivity is intended to bring them in line with the deadlines in the New Debtors' cases and to provide for ease of administration.

**III.**

**REQUESTED RELIEF**

The Initial Debtors seek an extension of their exclusivity to match that of the New Debtors. Specifically, the Initial Debtors seek an order pursuant to Bankruptcy Code section 1121(d): (i) extending, the period within which the Initial Debtors have the exclusive right to file a plan from its current expiration date of February 28, 2011 to and

including April 12, 2011, (ii) extending the period within which the Initial Debtors have the exclusive right to solicit acceptances to such plan from its current expiration date of March 31, 2011 to and including June 13, 2011, (iii) providing that the order is without prejudice to the Initial Debtors' right to seek further extension of the exclusivity periods, if needed, in accordance with the requirements of Bankruptcy Code section 1121, and (iv) providing that the Court's order is without prejudice to the rights of any party in interest to seek to terminate exclusivity at any time.

**IV.**

**ARGUMENT**

**A. The Court Has Authority To Extend The Debtors' Exclusive Periods For The Filing Of A Plan And Obtaining Acceptance Thereof**

Bankruptcy Code Section 1121 establishes two exclusivity periods. First, for the initial 120 days after a chapter 11 bankruptcy case is commenced, only the debtor may file a plan of reorganization. 11 U.S.C. §1121(b). Second, if a debtor files its plan during this 120-day period, the debtor then has an additional 60-day period (ending on the 180th day after the commencement of the case) during which it may solicit plan acceptance and during which competing plans may not be filed by any party in interest. 11 U.S.C. § 1121(c). The exclusive periods represent Congress's recognition that the debtor in possession is in the best position to understand and deal with the interests of all parties involved in a chapter 11 case and that the best chance for a successful reorganization lies in allowing the debtor to balance creditor and equity interests in the first instance.

Accordingly, Bankruptcy Code section 1121(d)(1) permits a bankruptcy court, for cause, to extend a debtor's exclusivity. Whether to extend exclusivity is a decision that is within the Court's sound discretion. *In re Gibson & Cushman Dredging Corp.*, 101 B.R. 405, 409 (E.D.N.Y. 1989). The Bankruptcy Code does not define "cause" for purposes of section 1121(d)(1) or establish a formal criteria for an extension of the exclusivity periods. Rather, the "cause" standard has been referred to as a general standard that allows the bankruptcy court "maximum flexibility to suit various types of reorganization

proceedings." *In re Public Serv. Co. of New Hampshire*, 88 B.R. 521, 534 (Bankr. D.N.H. 1988). The accepted standard to extend the exclusivity periods, supported by the legislative history of section 1121, requires merely that the debtor make a "showing of some promise of success for reorganization." *Id*. (quoting S.Rep. No. 95-989, 95th Cong.2d Sess. 118 (1978), U.S. Code Cong. & Admin. News 1978 p. 5904).

In addition to the "promise of success" for a debtor's prospective reorganization, other factors weighed by courts to determine whether "cause" exists for the proposed extension of exclusivity include the following: (1) the size and complexity of the case; (2) the necessity of sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information; (3) the existence of good faith progress toward reorganization; (4) the fact that the debtor is paying its bills as they become due; (5) whether the debtor has made progress in negotiations with its creditors; (6) the amount of time which has elapsed in the case; (7) whether the debtor is seeking an extension of exclusivity to pressure creditors to submit to the debtor's reorganization demands; and (8) whether an unresolved contingency exists. *In re Dow Corning Corporation*, 208 B.R. 661, 665-6 (Bankr. E.D. Mich. 1997); *see also* Collier on 7-1121 Bankruptcy, 15th Edition Rev., 15th Ed., ¶1121.06[2]. Courts are not required to consider factors that have no application to the specific case. *In re Ernst Home Center, Inc.*, 209 B.R. 974, 980-81 (Bankr. W.D. Wash. 1997).

Not all of the aforementioned factors "are relevant in every case. Nor is it simply a question of adding up the number of factors which weigh for and against an extension. It is within the discretion of the bankruptcy court to decide which factors are relevant and give the appropriate weight to each." *Bunch v. Hoffinger Indus., Inc. (In re Hoffinger Indus., Inc.)*, 292 B.R. 639, 644 (8th Cir. 2003). According to the 9th Circuit BAP, "a transcendent consideration is whether adjustment of exclusivity will facilitate moving the case toward a fair and equitable resolution." *In re Henry Mayo Newhall Memorial Hospital*, 282 B.R. 444, 453 (9th Cir. BAP 2002).

**B. There Is Sufficient Cause Under The Circumstances To Extend The Debtors' Exclusive Periods.**

While some of the factors noted above are not applicable to these cases because the Initial Debtors are only holding companies, the remaining factors weigh in favor of the requested extension, and in their totality, fully support finding a good cause to grant the exclusivity extensions requested in this Motion. First, there is more than "some promise of success" in these cases. As non-operating entities with their sole liability shared with the New Debtors, the resolution of the Initial Debtors' cases is linked to that of the New Debtors' cases. The Initial Debtors and the New Debtors share the same management who is cognizant that the success of these cases is connected. As such, since the commencement of the New Debtors' cases, management has focused its efforts on advancing these cases and has made significant progress in the two months that have passed since their filing. In these last two months, the New Debtors obtained Court approval of "first day" motions (including an interim DIP financing to continue funding their operations), retained the services of their long standing intellectual property counsel to preserve their most valuable assets, and engaged an investment banker to identify potential investor or interested buyers. The New Debtors have reached out to the major constituencies in these cases and worked hard toward a reorganization. As such, while their cases are still at the preliminary stages, the New Debtors have demonstrated good faith effort to move their cases forward. Significant steps have been made toward a successful resolution of these cases.

In addition, there is a justifiable need for additional time for the Initial Debtors to propose a plan. The only feasible way for them to successfully do so is to propose a joint plan with the New Debtors. As non-operating companies, the Initial Debtors have no assets, other than the stock of their subsidiaries, and their only liability stems from the guarantees provided in connection with the Credit Facility. The lion's share of the New Debtors' liability also stems from their guaranties they provided in connection with the same Credit Facility. The Initial Debtors and the New Debtors are both working toward

resolving that liability and to identify an exist strategy that is in the best interest of the estates, the creditors and interested parties, which is anticipated to form the basis for a joint chapter 11 plan in these cases. Therefore, as part of the efficient coordination of their cases, the Initial Debtors need to synch up their exclusivity with that of the New Debtors.

The Initial Debtors' request for an extension is made in good faith and not for the purpose of improperly pressuring creditors or holding any parties in this case "hostage" to the Initial Debtors' restructuring efforts. The extension of exclusivity is needed to allow the process in the New Debtors' cases to take its course without jeopardizing the MMFX debtors' efforts to file a joint plan and solicit acceptances thereof. The estates' liabilities, including the liability under the Credit Facility, will have to be determined before a feasible plan can be proposed in these cases. Because this unresolved contingency still exists, it is unreasonable to expect the Initial Debtors to have formulated a plan by the February 28 deadline. *See In re Express One Intern., Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) (existing contingency is a factor to consider when determining whether to grant exclusivity). An extension of exclusivity is warranted under these circumstances.

Furthermore, it is not uncommon for courts to grant multiple extensions of the exclusive periods to allow the debtor to file and gain acceptance of a consensual plan. *See e.g.*, *Express One*, 194 B.R. 98 (granting multiple extensions). As such, it is within the Court's the authority to grant the extension requested in this Motion.

Lastly, the Initial Debtors do not have operating obligations and have been in compliance with their obligations as chapter 11 debtors-in-possession. Accordingly, this factor similarly weighs in favor of granting the extension.

Thus, in their totality, the above factors weigh in favor of extending both the exclusive period of the Initial Debtors to propose a plan and their exclusivity period to solicit acceptances thereof, and have their exclusive periods match those of the New Debtors.

**C. The Debtors' Motion Is Timely**

Pursuant to Bankruptcy Code section 1121(d), the bankruptcy court may extend the plan exclusivity periods if a request for the extension is made prior to the expiration of the periods. "Any request for extension of the 120-day or 180-day period must be made before those periods have expired." 7-1121 Collier on Bankruptcy, 15th Ed., ¶ 1121.06[1]. The request of extension is within the limits set forth in 11 U.S.C. § 1121(d)(2), and it is timely made prior to the expiration of the exclusivity periods, as extended by the Court's orders.

Accordingly, based on all of the foregoing, the Debtors submit that good cause exists for granting the relief requested in this Motion.

///

///

///

## V.

## CONCLUSION

For the foregoing reasons, the Initial Debtors respectfully request that the Court enter an order:

1. Extending, through and including April 12, 2011, the period within which the Initial Debtors have the exclusive right to file a plan;

2. Extending, through and including June 13, 2011, the period within which the Initial Debtors have the exclusive right to solicit acceptances of such plan;

3. Providing that the order is without prejudice to the Initial Debtors' right to seek further extension of such exclusivity periods;

4. Providing that the Court's order is without prejudice to the rights of any party in interest to seek to terminate exclusivity at any time; and

5. Granting to the Initial Debtors such other and further relief as the Court deems just and proper.

DATE: February 14, 2011

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By *\/s/ Robert K. Sahyan*
ROBERT K. SAHYAN

Counsel for Debtors