1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
     A Limited Liability Partnership
2      Including Professional Corporations
   ORI KATZ, Cal. Bar No. 209561
3  okatz@sheppardmullin.com
   AARON J. MALO, Cal. Bar No. 179985
4  amalo@sheppardmullin.com
   ROBERT K. SAHYAN, Cal. Bar No. 253763
5  rsahyan@sheppardmullin.com
   650 Town Center Drive, 4th Floor
6  Costa Mesa, California 92626-1993
   Telephone:   714-513-5100
7  Facsimile:   714-513-5130

8  Attorneys for Debtor

9
                    UNITED STATES BANKRUPTCY COURT
10
                    CENTRAL DISTRICT OF CALIFORNIA
11
                         SANTA ANA DIVISION
12

13  In re                                    Case No. 8:10-bk-10083-RK

14  MMFX CANADIAN HOLDINGS, INC., *et*      (Jointly Administered with Case Nos.: 10-
    *al.*,                                   bk-10085; 10-bk-27570; 10-bk-27571; and
15                                           10-bk-27572)
                       Debtors.
16  _____         Chapter 11

17  ☐  Affects MMFX Canadian Holdings,
        Inc.                                 **SUPPLEMENT TO DEBTORS'**
18                                           **EMERGENCY MOTION FOR**
    ☐  Affects MMFX International            **INTERIM AND FINAL ORDER (I)**
19      Holdings, Inc.                        **AUTHORIZING POST-PETITION**
                                             **FINANCING AND GRANTING LIENS**
20  ☒  Affects Fasteel Corporation          **AND SUPER-PRIORITY CLAIMS,**
                                             **AND (II) PROVIDING RELATED**
21  ☒  Affects MMFX Steel Corporation of    **RELIEF**
        America
22                                           Date:  February 22, 2011
    ☒  Affects, MMFX Technologies           Time:  2:30 p.m.
23      Corporation                          Place: United States Bankruptcy Court
                                                    411 West Fourth Street
24  ☐  Affects all Debtors                          Santa Ana, CA 92701
                                                    Courtroom 5D
25                                           Judge:  Hon. Robert Kwan

26

27

28

On December 14, 2010, each of Fasteel Corporation, MMFX Steel Corporation of America, and MMFX Technologies Corporation (the "Debtors"), filed its Debtor's Emergency Motion for Interim and Final Order (I) Authorizing Post-Petition Financing and Granting Liens and Super-Priority Claims, and (II) Providing Related Relief (collectively, the "DIP Motion") in each of their cases.

The DIP Motion came on for an initial hearing before the Court on December 17, 2010, at which hearing the Court granted the Motion on an interim basis pursuant to its order entered on that day (Dckt. #15, Case No. 8:10-bk-27570-RK) (the "Interim DIP Order"), and scheduled the final hearing (the "Final Hearing") on the DIP Motion to be held on January 12, 2011.

The Debtors have met and conferred extensively with the DIP Lender, the Committee, Fourth Third LLC and other parties-in-interest regarding the relief requested in the DIP Motion and the terms of the DIP Financing.  As a result of these discussions, certain changes have been made to the DIP loan documents.  The Debtors now file this supplement to the DIP Motion (the "Supplement") to inform the Court of the terms of the DIP financing agreed upon among the Debtors, the DIP Lender and the Committee, and to highlight the changes made to the DIP Loan documents from the initial drafts filed in connection with the initial and interim hearing on the DIP Motion.

## **BACKGROUND**

In the DIP Motion, the Debtors sought an order from the Court: (a) authorizing them to incur post-petition secured indebtedness of up to $1.6 million on an interim and final basis (the "DIP Financing"), pursuant to a debtor-in-possession loan agreement (the "DIP Credit Agreement") between the Debtors and Lindsey Davidson ("DIP Lender"), and grant to the DIP Lender a lien and security interest on all property of the Debtors (the "DIP Collateral") (other than causes of action arising under chapter 5 of the Bankruptcy Code); and (b) setting a final hearing on the DIP Motion.

After the Official Committee of Unsecured Creditors (the "Committee") was appointed in the case on January 7, 2010, the parties met and conferred regarding the relief

1   requested in the DIP Motion and the terms of the DIP Financing.  The parties requested an

2   extension, on two occasions, of the Final Hearing, to allow those discussions to take place

3   without the pressure of the impending deadline of the Final Hearing.  The Court granted

4   those requests, and the Final Hearing is currently scheduled to be held on February 22,

5   2011 at 2:30 p.m.  As of the date of this supplement, no objections have been filed to the

6   Final Hearing.

7                              **<u>DISCUSSION</u>**

8          The Debtors, the DIP Lender and the Committee have reached an agreement on the

9   terms of the DIP Financing, which the Debtors now seek Court approval for on a final

10  basis.  Among these changes is the agreement among the parties regarding the continued

11  use by the Debtors of their pre-petition cash management practice of transferring funds

12  between the Debtors subject to the controls and protection set forth in the proposed Final

13  DIP Order.

14         A copy of the Credit Agreement, as revised by the parties, is attached hereto as

15  <u>Exhibit A</u>.  In addition, a draft of the form of order approving the DIP Motion on a final

16  basis (the "Final DIP Order") is attached hereto as <u>Exhibit B</u>.  A copy of the budget is

17  attached to the proposed Final DIP Order.

18         In order to highlight the changes made pursuant to the parties' agreement, the

19  following redline comparisons are also attached to this Supplement:

20         (i) <u>Exhibit C</u>: a redline comparison of the revised DIP Credit Agreement against the

21  DIP Credit Agreement attached to the Interim DIP Order, and

22         (ii) <u>Exhibit D</u>: a redline comparison of the draft of the Final DIP Order against the

23  Interim DIP Order.

24         //

25         //

26         //

27

28

W02-EAST:5KES1\200371809.2                                                    SUPPLEMENT

1    At the Final Hearing, the Debtors will seek entry of an order, substantially in the

2    form of the Final DIP Order, approving the revised DIP Credit Agreement.

3

4    DATED: February 21, 2011

5                                    SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

6

7                        By        _____/s/ Ori Katz_____

8                                              ORI KATZ

9                                        Counsel for Debtors

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

SUPPLEMENT

# EXHIBIT A

# LOAN AGREEMENT

THIS LOAN AGREEMENT ("**Agreement**"), dated as of February __, 2011, is between

MMFX TECHNOLOGIES CORPORATION, a California corporation, MMFX STEEL

CORPORATION OF AMERICA, a Nevada corporation, and FASTEEL CORPORATION, a

California corporation ("**Borrowers**") and Lindsey Davidson, as Trustee of the Lindsey

Davidson Trust dated April 28, 2009 ("**Lender**").

## RECITALS

A.    WHEREAS, Borrowers are debtors-in-possession under title 11 of the United States

Code (the "**Bankruptcy Code**"), Central District of California Bankruptcy, and require post-

petition financing, without which they will suffer immediate and irreparable harm, for additional

working capital to fund their operations; and

B.    WHEREAS, Borrowers contemplate a recapitalization pursuant to a Chapter 11 Plan; and

C.    WHEREAS, Lender is willing to advance a loan not to exceed a maximum principal

amount of $1,600,000 pursuant to the terms of this Agreement and related documents referred to

herein (the "**DIP Loan**"); and

D.    WHEREAS, any Advances (as defined in Section 2 below) made under this Agreement

shall be evidenced by a Revolving Note of even date herewith made by Borrowers in favor of

Lender in the original principal amount of $1,600,000 (as amended, restated, supplemented,

modified, extended, or renewed from time to time, the "**Note**"), a security agreement and such

other documents, agreements, filings and instruments required by the Lender in Lender's sole

and absolute discretion (collectively with this Agreement, the "**Loan Documents**"); and

E.    WHEREAS, other than the financing pursuant to the post-petition financing proposed

hereunder, Borrowers have been unable to obtain additional needed unsecured credit, allowable

as an administrative expense under § 503(b)(1) of the Bankruptcy Code, or sufficient secured

credit secured by a junior security interest on encumbered property of the estate under

§ 364(c)(3) of the Bankruptcy Code, or a senior security interest on unencumbered property of

the estate under § 364(c)(2), and Borrowers believe that they cannot obtain credit from any other

lender on terms better than those set forth in this Agreement;

F.        WHEREAS, Borrowers, in order to satisfy their need for post-petition financing, desire to

borrow up to $1,600,000 and obtain Advances from Lender, which Advances shall be made

pursuant to the terms of this Agreement and the other Loan Documents; and

G.        WHEREAS, Lender is currently party to two pre-petition loan agreements:  (i) that

certain 12% secured note, dated August 1, 2010 in the original principal amount of $400,000,

and (ii) that certain 12% secured note dated October and November 2009 in the original principal

of amount of $500,000, Lender's portion of which is $50,000, which loans are secured by certain

of the Borrowers' inventory and equipment (a list of such inventory and equipment are attached),

and pursuant to which Lender is entitled to an aggregate total of  monthly payments of $9,000.00

for interest (collectively, both notes are the "**Existing Loan**").

**AGREEMENT**

        NOW THEREFORE, the parties enter into the following agreement:

1.        <u>Recitals Incorporated</u>. The foregoing recitals are hereby acknowledged as true and

correct.

2.        <u>Loan Advances</u>. Subject to the provisions of Section 13, Lender shall make advances

(each such extension of credit being herein called an "**Advance**" and collectively, the

"**Advances**") to Borrowers under the DIP Loan, on a revolving basis, up to the principal amount

of $1,600,000.00.  Any amount of the DIP Loan repaid may be reborrowed to the extent

permitted under this Agreement.  Interest of 10% per annum shall be charged against Advances, calculated on the basis of a 360-day year and actual days elapsed, and the Borrowers shall make interest only payments equal to the full amount of then accrued and unpaid interest to Lender on the first day of each calendar month, beginning with the interest payment on January 1, 2011 from the date such Advances are made until paid in cash in full.  Lender may deliver the Advances to one or all of Borrowers with any Advance being delivered to one or all of them being deemed to have been properly delivered to Borrowers hereunder.   On the last day of each calendar month, or such earlier business day if such last day falls on a weekend or holiday, and to the extent the aggregate ending cash balances of the Borrowers at the time exceeds $400,000.00, Borrowers shall repay the excess amount to Lender.  Lender shall make available, however, the entire principal balance of $1,600,000 during the term of the loan to re-borrow consistent with the Budget (defined below) so long as an Event of Default has not been declared.

3.      Loan Documents. Any Advances made hereunder shall be subject to the terms of this Agreement, the Loan Documents, and any applicable order of the Bankruptcy Court approving the DIP Loan.

4.      Lender Records. The amount of each Advance shall be recorded on the books and records of Lender, and such record shall constitute proof of such Advance, and shall be admissible in evidence on such issue.

5.      Borrowers' Business Operations. Borrowers shall operate their businesses pursuant to the budget attached to the final DIP Order as Exhibit A (the "**Budget**"), and may use the Advances for the purposes described in and up to the amounts listed in the Budget (or according to deviations from the Budget approved by Lender and the Official Committee of Unsecured Creditors (the "Committee") in writing, or upon approval of the Bankruptcy Court after a noticed

hearing if Committee consent is not provided) solely for the working capital and general

corporate purposes of the Borrowers and payment of costs of administration of the bankruptcy

cases of the Borrowers.  Except with respect to the fees and expenses of the Retained

Professionals (defined below), the aggregate actual disbursements by Borrowers measured on a

rolling cumulative four-week basis shall be no greater than 115% of the aggregate amount of

projected disbursements for such four-week period as set forth in the Budget; notwithstanding

the foregoing, this "aggregate" variance shall not increase the portion of the Carve-Out for the

Retained Professionals.

6.      Cash Management.  Borrowers may continue to utilize their existing integrated cash

management system which provides for the transfer of funds among Borrowers, provided (i) that

Borrowers maintain records of the inter-company transfers of funds and (ii) that Borrowers'

continued use of their existing cash management system shall be without prejudice to any rights

and claims that any Borrower or party-in-interest may have with respect to such inter-company

transfers.

7.      Cost of Loan. As and for additional consideration for this Agreement, Borrowers agree

that Lender is entitled to be reimbursed for its reasonable legal fees and expenses in connection

with offering, implementing and enforcing the DIP Loan, payable out of Advances, if elected by

Lender.  Alternatively, Lender may require that Borrowers reimburse these sums to Lender

within ten (10) business days following written demand for payment.  All such legal fees and

expenses, until paid, shall be secured by the DIP Loan.  Prior to any such payment of fees and

expenses by Borrowers, Lender shall provide Borrowers and the Committee with ten (10)

business days' notice to review such fees and expenses for reasonableness.  In the event of a

dispute regarding the reasonableness of such legal fees that cannot be resolved by the parties, the Bankruptcy Court shall determine such dispute.

8.      <u>Grant of Superpriority Administrative Expense Claim and DIP Liens</u>. As security for repayment of the DIP Loan, the Borrowers hereby grant and the Lender shall have the following: (a) a superpriority administrative expense claim for Advances, pursuant to §364(c)(1) of the Bankruptcy Code ("**Superpriority Claim**"), (b) a fully perfected, first priority security interest in and lien under section 364(c)(2) of the Bankruptcy Code on all unencumbered Collateral[1] of the Borrowers, and (c) a fully perfected junior lien under section 364(c)(3) on all previously encumbered Collateral of the Borrowers.[2]  The liens granted under clauses (b) and (c) herein shall be referred to as the "**DIP Liens**".  Any Superpriority Claim and DIP Liens shall be subordinate only to the Carve Out, the Permitted Liens and the retainer held by Sheppard Mullins Richter &Hampton LLP.  For the avoidance of doubt, the Superpriority Claim shall not be payable from proceeds of Avoidance Claims, and the DIP Liens shall not attach to the Avoidance Claims or proceeds thereof.  The DIP Liens and the perfection thereof shall be effective by entry of the DIP Order and can be further evidenced and accomplished by a security agreement executed by Borrowers and the filing of such UCC-1 Financing Statements and such other instruments, filings and actions as Lender determines to be necessary or appropriate in order to

---

[1] "**Collateral**" of the Borrowers means all of the property, assets or interests in property or assets of the Borrowers, jointly and severally, of any kind or nature whatsoever, real or personal, now existing or hereafter acquired or created, including all property of the Borrowers' bankruptcy estates (within the meaning of the Bankruptcy Code), including all causes of action, accounts, inventory, chattel paper, contract rights, instruments, documents, general intangibles (including all intellectual property, copyrights, deposit accounts, licensing agreements, patents, trademarks and trade names), machinery and equipment, real property, leases, cash, bank accounts and other investment property (but specifically excluding all causes of action arising under chapter 5 of the Bankruptcy Code, related state court provisions incorporated through chapter 5 of the Bankruptcy Code ("**Avoidance Claims**"), and the Proceeds of Avoidance Claims) together with all proceeds, rents, products and profits of any of the foregoing.
[2] Previously encumbered Collateral means any Collateral that is subject to a valid, enforceable, non-avoidable, perfected security interest in existence as of the Petition Date (the "**Permitted Liens**").

properly grant and perfect such security interests under applicable law and to otherwise protect

Lender.

9.      Carve Out. The DIP Liens shall be subject to the following carve out expenses (the

"**Carve Out**"):

> (a)      fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6); and
>
> (b)      up to an aggregate of $200,000.00 per month for all claims of the respective
>
> retained professionals of the Borrowers or the Committee whose retention is
>
> approved by this Court during the Cases pursuant to Sections 327, 328, and 1103
>
> of the Bankruptcy Code (collectively, the "**Retained Professionals**") for fees and
>
> expenses which were incurred at any time on and after the Petition Date and
>
> before the Termination Date; provided that, in each case, such fees and expenses
>
> of the Retained Professionals are (i) authorized under the Budget and (b)
>
> ultimately allowed on a final basis by this Court under sections 330 and 331 of the
>
> Bankruptcy Code (nothing herein shall waive the right of any party to object to
>
> the allowance of any such fees and expenses).

For the sake of clarity, in the event the DIP Loan is terminated, or there are insufficient funds to

repay the DIP Loan in full, the Carve Out shall not be subject to recovery by the Lender.

10.      Existing Loan.  If a final order is entered, any challenge to the Existing Loan by any party

in interest must be asserted by May 15, 2011, such other further date as may be agreed upon

between the Lender, Borrowers, and the Committee, or such other date as fixed by the Court for

cause shown by the Committee.  Such challenge must be asserted in a writing filed with the

Bankruptcy Court.  In the event no such challenge is made, the Existing Loan shall be

automatically deemed to be a valid and allowed claim against the Borrowers and their respective

estates. For purposes of asserting any challenge, the Committee shall be granted automatic

standing to assert any causes of action that the Borrowers may have to the Existing Loan on

behalf of the Borrowers.

11.    <u>Termination Date</u>. This Agreement shall terminate upon the earliest of: (1) the expiration

of ten (10) business days' written notice to the Borrowers and the Committee of the occurrence

of any material breach of its terms by Borrowers, including a breach of any of the terms of the

Loan Documents or any Event of Default; (2) the closing of a sale of all or substantially all of the

assets of Borrowers pursuant to a sale under Section 363 of the Bankruptcy Code; (3) the

effective date of a confirmed Chapter 11 plan of reorganization; (4) the conversion of any

Borrower's bankruptcy case from a case under Chapter 11 to a case under Chapter 7 of the

Bankruptcy Code; (5) the dismissal of any Borrower's bankruptcy case, (6) appointment of a

Chapter 11 trustee in any Borrower's case, or (7) December 31, 2011 (the earliest such event or

date, referred to herein as the "**Termination Date**").

12.    <u>Effect of Termination</u>. If the DIP Loan is terminated, except upon the effective date of a

confirmed plan of reorganization, Lender shall have a right to seek relief from the automatic stay

on shortened notice, with a hearing on such relief to be held with fourteen (14) business days

notice to the Borrowers and the Committee of the Lender seeking such relief.  Lender shall not

conduct a foreclosure sale on the intellectual property on any date less than 120 days after the

termination of the DIP Loan.  In addition, if the DIP Loan is terminated, (i) Lender shall

automatically have no further obligation to Borrowers other than in connection with the

subordination of its lien and priority claim to the Carve-Out if not previously funded, (ii) any

Advances then outstanding shall be immediately due and payable upon Lender's written notice

that such termination has occurred, (iii) and, except as otherwise provided in this Agreement,

Lender shall be permitted to pursue any and all available rights and remedies against Borrower

and the collateral granted as security for the DIP Loan.

13.    <u>Conditions to Advances under the DIP Loan</u>.

(a)    Bankruptcy Court Order (the "**DIP Order**"), in form and substance satisfactory to

the Lender in respect of the approval of this DIP Loan and creation of the court-

ordered super priority claims and security interests provided for herein shall have

been made by the Bankruptcy Court.

(b)    No Event of Default shall have occurred or be continuing.

(c)    The Termination Date shall not have occurred.

(d)    Execution and delivery of all Loan Documents required by the Lender in

connection with this transaction.

14.    <u>Binding Effect</u>. This Agreement shall be binding upon Borrowers and Lender, their

respective successors, assigns and heirs, including any subsequent trustee for Borrowers in

reorganization or otherwise, and shall inure to the benefit of Borrowers, Lender and their

respective successors, assigns and heirs except that the parties hereto may not assign or transfer

their rights hereunder at anytime prior to July 31, 2011.  Notwithstanding the foregoing, Lender

does have the right to allow third parties to participate with respect to the DIP Loan, without first

obtaining the consent of Borrowers and the Committee so long as (i) Lender provides written

notice to Borrowers and Committee within 15 days of the creation of a participation agreement,

and (ii) such participation shall in no way modify Lender's obligations under the DIP Loan.  The

terms of this Agreement and the balance of the Loan Documents shall be valid and enforceable

obligations of Borrowers jointly and severally, and all such obligations and the security interests,

liens, rights and privileges granted to Lender survive the termination of this Agreement, the

appointment of a trustee for Borrowers in reorganization or otherwise, conversion of the

bankruptcy cases to cases under Chapter 7, and the confirmation of a Chapter 11 plan of

reorganization. If any or all of the provisions of this Agreement are hereafter modified vacated or

stayed by subsequent agreement, such action shall not affect the priority, validity, enforceability

or effectiveness of any lien, security interest, priority or claim agreed to herein with respect to

the obligation arising in the Loan Documents incurred by Borrowers prior to the effective date of

such subsequent agreement.

15.     <u>Reasonableness of Terms</u>. The terms of the DIP Loan are fair and reasonable, were

negotiated by the parties at arm's length and in good faith, and are the best terms available to

Borrowers under present market conditions and Borrowers' financial circumstances. Any credit

extended under the DIP Loan by Lender is extended in good faith, as that term is used in Section

364(e) of the Bankruptcy Code.

16.     <u>Representations and Warranties</u>. It is acknowledged that each party has read this

Agreement and has consulted counsel, or knowingly chose not to consult counsel, before

executing the same; each party has relied upon their own judgment and/or that of their counsel in

executing this Agreement and has not relied on or been induced by any representation, statement

or act by any party that is not referred to in this instrument; each party enters into this Agreement

voluntarily, with full knowledge of its significance; and the Agreement is in all respects

complete and final. Each Borrower represents and warrants to the Lender that: it is a corporation

duly incorporated, organized and validly existing under the laws of its jurisdiction of

incorporation; it has all requisite power and authority to enter into and perform its obligations

hereunder; and its execution and delivery hereof and the performance of its obligations

hereunder have been duly authorized by all necessary action.

17.    <u>Covenants by Borrowers</u>. The Borrowers covenant and agree that:

(a)    they shall comply with all laws, rules, regulations and orders applicable to them and their assets except as prohibited under the Bankruptcy Code or bankruptcy laws;

(b)    they shall maintain in good standing at all times all insurance coverage as is customarily carried by companies which are engaged in the same or similar business to the business of the Borrowers or as may be reasonably required by the Lender;

(c)    they shall not seek or consent to any plan of reorganization or liquidation or any plan of arrangement that does not provide, upon its effectiveness for full payment to the Lender of the DIP Loan;

(d)    the Borrowers shall not incur any senior indebtedness other than as permitted by the Lender in writing;

(e)    the Borrowers shall not merge, amalgamate, consolidate, reorganize, or sell any assets or license any technology outside of the ordinary course of business, unless permitted in writing by the Lender or approved by the Bankruptcy Court, or unless such transaction contemplates that the DIP Loan shall be repaid as part of such transaction, unless such transaction is a not a material asset of the business; and

(f)    the Borrowers shall permit the Lender, its representatives and agents, to have access, during normal business hours and subject to reasonable time, to the books, records, property and premises of the Borrowers.

18.    <u>Reporting Covenants</u>. The Borrowers shall deliver to the Lender and the Committee by

5:00 p.m. (PT) onTuesday of each week:

(a)    Weekly and updated cash forecasts in form and substance satisfactory to and

approved by the Lender;

(b)    Line-by-line variance reports (in form and scope reasonably acceptable to the

Lender and Committee) by week for the immediately preceding weekly period

and on a cumulative basis from the beginning of the Budget period comparing

tons sold, actual cash receipts and actual cash disbursements to tons sold, cash

receipts and cash disbursements forecasted in the Budget for such period on a

line-by-line basis.  The variance report will include explanations of any material

variances (10% or greater);

(c)    A written update on the progress of and efforts of the company's Investment

Bankers (including KPMG and Livingston) activities, including, but not limited to

a listing of parties to be contacted, those contacted, who has expressed interest,

which ones have executed a non-disclosure agreement, what materials were sent

to each party and next steps in the process and data room usage reports. Debtor to

also provide the Committee's financial advisors access to the data room and

copies of any marketing materials sent to interested parties;

(d)    A copy of the most recent backlog report updated on a weekly basis and an

explanation of any material changes from the backlog report of the preceding

week;

(e)    Report detailing the usage of the Sales Order Assignment Agreement with

Adelphia Metals, LLC or any other similar agreement;

(f)     Weekly updated rolling sixteen-week cash flow forecast in form and substance

similar to the Budget;

(g)     Prompt notice of any breach of covenant or other obligation of the Borrowers

under or in connection with this DIP Loan;

(h)     The Borrowers shall promptly, upon receipt, deliver to the Lender copies of all

pleadings, motions, applications, judicial information, financial information, and

other documents filed by or on behalf of the Borrowers with the Bankruptcy

Court and any all reports provided to the Committee by the Borrowers, KPMG,

and Livingston regarding the bankruptcy cases.

(i)     Such further reports and information as the Lender and Committee may

reasonably request from time to time.

19.     <u>Events of Default</u>. The occurrence of any one or more of the following events shall

constitute an Event of Default which can be declared by Lender in writing, with a copy to be

delivered to Borrowers and Committee :

(a)     The non-payment of any costs, or any other amount due under the DIP Loan, or

the failure to perform as required under the Loan Documents (whether monetary

or non-monetary in nature), past ten (10) business days of its due date or

performance date beginning from the date that the Lender provides written notice

to the Borrowers and the Committee.

(b)     Expenditures beyond authorization under the Budget as interpreted under this

Agreement;

(c)     The entry of any Bankruptcy Court order that materially, adversely affects the

DIP Loan or the Lender's rights, remedies, liens, priorities, benefits and protections under

any or all of the Bankruptcy Court orders or the DIP Loan.  In the event of a dispute

regarding the materiality of the adverse effect of such order, the Bankruptcy Court shall

determine the dispute through a motion and an adversary proceeding will not be required.

Upon the occurrence of an Event of Default and after the Termination Date, any right of the

Borrowers to receive any advance or other accommodation of credit from the Lender shall be

immediately terminated, and any further advances made, if any, thereafter shall be in the

discretion of the Lender.  Upon the occurrence of an Event of Default, amounts owed by

Borrowers to the Lender, shall become immediately due and payable, and the Lender shall have

the right to exercise all remedies under applicable law, including, without limitation, the right to

realize on all collateral; *provided*, *however*, Lender shall not conduct a foreclosure sale of any

intellectual property collateral on any date less than 120 days from the day Lender declares an

Event of Default by a notice to Borrowers with a copy to the Committee.

20.    Indemnification. The Borrowers shall indemnify, defend with counsel acceptable to the

Lender and hold harmless the Lender, solely in its capacity as Lender, its affiliates and its

officers, directors, employees, agents, attorneys and advisors (each, an "**Indemnified Person**")

from and against any and all suits, actions, proceedings, orders, claims, damages, losses,

liabilities and expenses (including legal fees and disbursements and other costs of investigation

or defense, including those incurred upon any appeal) that may be instituted or asserted against

or incurred by any such Indemnified Person as a result of or in connection with credit having

been extended, suspended or terminated under or in relation to the DIP Loan, or the use of the

proceeds thereof, and the administration of such credit, and in connection with or arising out of

the transactions contemplated hereunder and any actions or failures to act in connection

therewith, including the taking of any enforcement action by the Lender and its representatives,

and including any and all environmental liabilities and legal costs and expenses arising out of or

incurred in connection with disputes between or among any parties hereto, except to the extent

that the suit, action, proceedings, orders, claims, damages, losses, liabilities and expenses arose

directly from the gross negligence or willful misconduct of the Indemnified Person or breach of

this Agreement by the Indemnified Person. All such indemnified amounts, if not immediately

paid by the Borrowers upon demand, shall be secured by the DIP Loan.

21.     <u>Amendment of Agreement</u>. This Agreement shall not be amended except by a writing

signed by all parties and the Committee or upon approval of the Bankruptcy Court upon notice to

the Committee.

22.     <u>Applicable Law and Jurisdiction</u>. This agreement shall be governed by and interpreted in

accordance with the Bankruptcy Code and to the extent not inconsistent with the Bankruptcy

Code, the internal laws in the State of California without regard to its conflicts of law rules

except to the extent superceded by the laws of the United States.

23.     <u>Entire Agreement</u>. This Agreement (together with the associated Loan Documents) sets

forth the entire agreement between the parties, and there are no other agreements or

understandings between them related to this DIP Loan.

24.     <u>Execution by Facsimile Signatures and in Counterparts</u>. The parties agree that facsimile

signatures or signatures delivered by any other electronic means shall have the same force and

effect as original signatures. This Agreement may be executed in one or more counterparts, each

counterpart to be considered an original portion of this Agreement.

25.     <u>Notices</u>. All notices and demands hereunder shall be in writing and shall be deemed

given when addressed as follows: on the earlier of (a) when they are actually delivered to the

addressees by facsimile transmission or otherwise, or (b) at 11:00 a.m. California time on the

business day next following the deposit thereof with any recognized national overnight delivery

service properly addressed to the parties as set forth below:

> If to Borrower:    MMFX Technologies Corporation
> 2415 Campus Drive, Suite 100
> Irvine, CA 92612
> Attn: President
> Fax: 949-474-1130
>
> MMFX Steel Corporation of America
> 2415 Campus Drive, Suite 100
> Irvine. CA 92612
> Attn: President
> Fax: 949-476-7600
>
> Fasteel Corporation
> 2415 Campus Drive, Suite 100
> Irvine, CA 92612
> Attn: Corporate Secretary
> Fax:  949-476-7600
>
> with a copy to:Sheppard, Mullin, Richter & Hampton LLP
> 30 Rockefeller Plaza, 24th Floor
> New York, NY 10112
> Attn:  Carren Shulman, Esq.
>
> If to Lender:    Lindsey Davidson, Trustee
> Lindsey Davidson Trust dated April 28, 2010
> P.O. Box 2342
> Rancho Santa Fe, CA 92076
> Fax: 858-756-1532
>
> with a copy to:Robert Pizzuto
> 401 B Street, Suite 2400
> San Diego, CA 92101
> Fax: 619-239-1719
>
> And
>
> Evan D. Smiley
> Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP
> 650 Town Center Drive, Suite 950
> Costa Mesa, CA 92626
> Fax: 714-966-1002

               If to the Committee:     Jeffrey N. Pomerantz
                                       Pachulski Stang Ziehl & Jones LLP
                                       10100 Santa Monica Blvd., 11th Floor
                                       Los Angeles, California 90067-4100
                                       Fax: 310.201.0760

26.     <u>Bankruptcy Court Approval</u>. This Agreement is subject to Bankruptcy Court approval, upon notice and hearing as required by the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Rules of Bankruptcy Procedure of the Bankruptcy Court for the Central District of California.

27.     <u>Headings</u>. Paragraph headings in this Agreement are included herein for convenience of reference only, and shall not constitute a part of this Agreement for any other purpose.

29.     <u>Lender's Approvals</u>.  Unless expressly stated to the contrary in this Agreement or the other Loan Documents, any and all matters pertaining to this loan or the making or administration thereof which require Lender's approval, consent, discretion and/or determination shall be subject to Lender's determination in its sole and absolute discretion.

*[Signatures on following page]*

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first

above written.

| | |
|---|---|
| BORROWER: | LENDER |
| MMFX TECHNOLOGIES CORPORATION | LINDSEY DAVIDSON TRUST DATED April 28, 2009 |

By: _____        By: _____
     Its: _____                    Its: _____

BORROWER:

MMFX STEEL CORPORATION OF
AMERICA

By: _____
     Its: _____

BORROWER:

FASTEEL CORPORATION

By: _____
     Its: _____

W02-EAST:5KES1\200371428.5
DOCS_LA:232201.3

# **<u>EXHIBIT B</u>**

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
    A Limited Liability Partnership
    Including Professional Corporations
ORI KATZ, Cal. Bar No. 209561
okatz@sheppardmullin.com
AARON J. MALO, Cal. Bar No. 179985
amalo@sheppardmullin.com
ROBERT K. SAHYAN, Cal. Bar No. 253763
rsahyan@sheppardmullin.com
650 Town Center Drive, 4th Floor
Costa Mesa, California  92626-1993
Telephone:   714-513-5100
Facsimile:   714-513-5130

Attorneys for Debtors

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SANTA ANA DIVISION

| | |
|---|---|
| In re | Case No. 8: 10-bk-10083-RK |
| MMFX CANADIAN HOLDINGS, INC., *et al.*, | (Jointly Administered with Case Nos.: 10-bk-10085; 10-bk-27570; 10-bk-27571; and 10-bk-27572) |
| Debtors. | Chapter 11 |
| ☐ Affects MMFX Canadian Holdings, Inc.<br><br>☐ Affects MMFX International Holdings, Inc.<br><br>☒ Affects Fasteel Corporation<br><br>☒ Affects MMFX Steel Corporation of America<br><br>☒ Affects, MMFX Technologies Corporation<br><br>☐ Affects all Debtors | **FINAL ORDER APPROVING DEBTORS' EMERGENCY MOTION FOR INTERIM AND FINAL ORDER (I) AUTHORIZING POST-PETITION FINANCING AND GRANTING LIENS AND SUPER-PRIORITY CLAIMS, AND (II) PROVIDING RELATED RELIEF**<br><br>Date:      February 22, 2011<br>Time:      2:30 p.m.<br>Place:     411 West Fourth Street<br>              Santa Ana, CA 92701<br>              Courtroom:  #5D |

W02-EAST:5KES1\200369981.4

1    Upon the emergency motion (the "Motion") of Fasteel Corporation,

2    MMFX Steel Corporation of America, and MMFX Technologies Corporation (the

3    "Debtors") for an order:  (a) authorizing the Debtors to incur post-petition secured

4    indebtedness of up to $1.6 million on an interim and final basis, pursuant to a

5    debtor-in-possession loan agreement, as modified by the parties (the "DIP Credit

6    Agreement") between the Debtors and Lindsey Davidson, as Trustee of the Lindsey

7    Davidson Trust dated April 28, 2009 ("DIP Lender"), pursuant to Sections 105, 361,

8    362 and 364 of title 11 of the United States Code (the "Bankruptcy Code") and

9    Rules 2002 and 4001(c) of the Federal Rules of Bankruptcy Procedure (the

10   "Bankruptcy Rules"), and to grant to DIP Lender a lien and security interest (the

11   "DIP Lien") for the benefit of the DIP Lender on substantially all property of the

12   Debtors (the "DIP Collateral"), other than as set forth herein; and (b) Setting a final

13   hearing on the this motion, having come for an initial hearing on December 17, 2010

14   and, after being continued on two occasions, for a final hearing on February 22,

15   2011,

16        THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:

17   A.    The Emergency Motion came on for a final hearing before this

18   Bankruptcy Court on the 22nd day of February 2011 at 2:30 p.m., with notice thereof

19   having been given in accordance with Bankruptcy Rule 4001(c)(2) to:  (1) Official

20   Creditors' Committee and/or all statutory committees appointed by the United States

21   Trustee (the "Committee") and/or the creditors holding the 20 largest unsecured

22   claims against the Debtors; (2) the Office of the United States Trustee; and

23   (3) certain other significant parties in interest.

24   B.    Certain creditors and parties in interest made appearances on their own

25   behalf and/or through counsel as noted on the record, and expressed their opinions

26   on the Emergency Motion.  The Court has examined the Emergency Motion and is

27   entering this Order based upon the pleadings on file herein, and the arguments of

28   counsel at the hearing, and all other evidence presented to the Court.

W02-EAST:5KES1\200369981.4

1    C.    All capitalized words not otherwise defined in this Order have the

2    meanings given for said terms in the DIP Credit Agreement.

3    D.    Debtors have requested that DIP Lender loan funds to Debtors (the

4    "DIP Financing") pursuant to the terms and conditions set forth herein and in the

5    DIP Credit Agreement, and all documents, instruments and agreements executed in

6    connection therewith (collectively, the "DIP Documents").

7    E.    The Debtors are unable to obtain unsecured credit allowable under

8    Bankruptcy Code Section 503(b)(1), pursuant to Bankruptcy Code Sections 364(a),

9    (b), (c) or on any basis other than the arrangement with DIP Lender.

10   F.    The secured credit to be provided under the DIP Credit Agreement is

11   necessary to fund the business of the Debtors and to pay the actual and necessary

12   costs and expenses of preserving the Debtors' estates in accordance with the Budget

13   (defined below).

14   G.    The terms and conditions of the secured DIP Financing sought by the

15   Debtors in the Emergency Motion, as set forth in the DIP Credit Agreement are,

16   under the circumstances, the most advantageous currently available to Debtors.

17   After considering all alternatives, and engaging in discussions with other potential

18   lenders for debtor-in-possession financing, the Debtors have concluded, in the

19   exercise of their best and reasonable business judgment, that the terms and

20   conditions contained in the DIP Credit Agreement represent the best financing terms

21   available to Debtors.

22   H.    DIP Lender has agreed to extend the DIP Financing on the terms and

23   conditions contained in the DIP Credit Agreement and in reliance thereon, provided

24   that this Court enters an order satisfactory to DIP Lender approving the DIP Credit

25   Agreement and granting such liens, claims and priorities to DIP Lender as are set

26   forth herein and in the DIP Credit Agreement.

27   I.    Based on the record presented to the Court by the Debtors, it appears

28   that (i) the secured financing arrangement contemplated by the Emergency Motion

W02-EAST:5KES1\200369981.4

1   and approved herein, pursuant to which post-petition loans will be made available to

2   Debtors by DIP Lender, is entered into by DIP Lender in good faith as the term

3   "good faith" is used in Section 364(e) of the Bankruptcy Code, (ii) DIP Lender has

4   expressly relied upon the protections offered by Section 364(e) of the Bankruptcy

5   Code in extending such financing to Debtors, and (iii) in making decisions to extend

6   credit or enforce their rights under the DIP Credit Agreement, DIP Lender shall not

7   be deemed to be in control of the operations or properties of Debtors so as to subject

8   DIP Lender to any liability (including, without limitation, environmental liability).

9   Likewise, it appears that DIP Lender has adequately disclosed and apprised all

10  interested parties of current or past relationships with the Debtors.

11          J.      Notice of the Emergency Motion sufficient to satisfy the requirements

12  of Federal Rules of Bankruptcy Procedure ("FRBP") 2002 and 4001(c)(1), has been

13  given to the United States Trustee, the Committee, or if no Committee has been

14  appointed, the 20 largest unsecured creditors of Debtors, the appropriate Office of

15  the United States Trustee, all secured creditors and all parties otherwise entitled to

16  notice.  No further notice of the request for the relief granted in this Order is

17  required.

18          K.      The terms and conditions contained in the DIP Documents are the

19  result of arms' length negotiations, and Debtors are receiving fair consideration and

20  reasonably equivalent value from DIP Lender for the obligations incurred and the

21  liens granted to DIP Lender.

22          L.      Good cause has been shown for the entry of this Order.  Among other

23  things, pending confirmation of a plan of reorganization or the sale of some or

24  substantially all of the Debtors' assets, entry of this Order will minimize disruption

25  of the Debtors' businesses and operations and permit them to meet payroll and other

26  operating expenses, obtain needed supplies and retain customer and supplier

27  confidence by demonstrating an ability to maintain normal operations. The use of

28  the DIP Financing authorized hereunder is vital to avoid immediate and irreparable

W02-EAST:5KES1\200369981.4

1    harm to the Debtors' estates.  The ability of Debtors to continue in business so that

2    they can attempt to reorganize under the Bankruptcy Code depends on obtaining the

3    relief sought in the Emergency Motion and in this Order.  Approval of the

4    protections granted herein is therefore in the best interest of the Debtors' estates.

5        M.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§

6    157(b) and 1334.  Consideration of this matter constitutes a core proceeding as

7    defined in 28 U.S.C. § 157(b)(2).  The statutory predicates for the relief sought

8    herein are sections 105, 362, 363 and 364 of the Bankruptcy Code and Rule 4001(c)

9    of the Federal Rules of Bankruptcy Procedure.  Venue of these Chapter 11 cases and

10   the Emergency Motion seeking approval of this Order in this District is proper

11   pursuant to 28 U.S.C. §§ 1408 and 1409.

12       NOW, THEREFORE, BASED UPON THE FOREGOING, IT IS HEREBY

13   ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

14       1.    The Emergency Motion is hereby granted in all respects, and the DIP

15   Credit Agreement attached hereto as Exhibit "A" is hereby approved subject to the

16   terms and conditions set forth in this Order.

17       2.    Good and sufficient notice of the Emergency Motion's request for

18   approval of the DIP Financing and the other relief requested therein has been

19   provided in accordance with, inter alia, 11 U.S.C. §§ 102(1), 364(c), and FRBP

20   2002 and 4001(c), and any requirement for other and further notice shall be, and it

21   hereby is, dispensed with and waived.

22       3.    The Debtors are authorized to obtain secured indebtedness from DIP

23   Lender pursuant to the DIP Credit Agreement, and DIP Lender is authorized to

24   disburse on a secured basis to the Debtors pursuant to the DIP Credit Agreement, a

25   total of $1,600,000.00, plus any applicable interest, fees, and costs in accordance

26   with the DIP Credit Agreement (the "DIP Indebtedness").

27       4.    The Debtors are expressly authorized and approved to execute, deliver,

28   perform and consummate all of the terms and conditions set forth in the DIP

W02-EAST:5KES1\200369981.4

1  Documents, and any and all other documents, instruments and agreements

2  reasonably requested by DIP Lender to execute, effectuate, carry out, or

3  consummate all of the terms and conditions set forth in the DIP Documents and this

4  Order.  The Debtors are further authorized and directed to pay any and all costs,

5  charges and expenses, including counsel fees, payable under the DIP Documents.

6  Such costs, charges and expenses are hereby approved and deemed earned by DIP

7  Lender upon entry of this Order and the first advance by DIP Lender to Debtors

8  pursuant to the terms of the DIP Documents and shall be promptly paid to DIP

9  Lender in accordance with the DIP Documents.

10      5.      To secure the repayment of the DIP Indebtedness and any and all other

11  obligations of Debtors to DIP Lender created by or arising under the DIP

12  Documents, pursuant to Section 364 of the Bankruptcy Code, DIP Lender shall

13  have, and is hereby granted an administrative expense claim equivalent in priority to

14  a claim under Section 364(c)(1) of the Bankruptcy Code, with priority, subject to the

15  limitations in paragraph 7 of this Order regarding the Carve-Out and subject to

16  Section 507(b), superior to all other costs and expenses of administration of the

17  kinds specified in, or ordered pursuant to, Sections 105, 326, 327, 328, 330, 331,

18  503, 506(c), 507, 726, or 1114 of the Bankruptcy Code or otherwise, and shall at all

19  times, to the extent permitted by applicable law, be senior to the rights of Debtors or

20  any successor trustee, examiner, or responsible person in these or any subsequent

21  proceedings under the Bankruptcy Code ("Super-Priority Claim"), except for any

22  chapter 7 trustee.  Notwithstanding anything to the contrary herein, the Super-

23  Priority Claim shall not be payable from proceeds of Avoidance Claims.

24      6.      To further secure the repayment of the DIP Indebtedness, the Debtors

25  hereby grant and the Lender shall have the following: (a) a fully perfected, first

26  priority security interest in and lien under section 364(c)(2) of the Bankruptcy Code

27

28

1   on all unencumbered Collateral[1] of the Debtors, and (b) a fully perfected junior lien

2   under section 364(c)(3) on all previously encumbered Collateral of the Debtors.[2]

3   The liens granted under clauses (a) and (b) herein shall be referred to as the "DIP

4   Liens".  The DIP Liens shall not attach to the Avoidance Claims or proceeds

5   thereof.  The Superpriority Claim and DIP Liens shall be subject only to the Carve-

6   Out set forth in paragraph 7 of this Order, the Permitted Liens and the retainer held

7   by Sheppard, Mullin, Richter & Hampton LLP; provided that the DIP Indebtedness

8   shall not be payable from the proceeds of any Avoidance Claims.  The DIP Liens

9   and the perfection thereof shall be effective by entry of this Order and can be further

10  evidenced and accomplished by a security agreement executed by Debtors and the

11  filing of such UCC-1 Financing Statements and such other instruments, filings and

12  actions as Lender determines to be necessary or appropriate in order to properly

13  grant and perfect such security interests under applicable law and to otherwise

14  protect Lender.

15          7.      Any other provision of this Order or the DIP Credit Agreement to the

16  contrary notwithstanding, the DIP Liens and the Super-Priority Claim shall be

17  subject to payment of the following carve-out expenses (the "Carve-Out"): (a) fees

18  payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6); and (b) up

---

[1] "Collateral" of the Debtors means all of the property, assets or interests in property or assets of the Debtors, jointly and severally, of any kind or nature whatsoever, real or personal, now existing or hereafter acquired or created, including all property of the Debtors' bankruptcy estates (within the meaning of the Bankruptcy Code), including all causes of action, accounts, inventory, chattel paper, contract rights, instruments, documents, general intangibles (including all intellectual property, copyrights, deposit accounts, licensing agreements, patents, trademarks and trade names), machinery and equipment, real property, leases, cash, bank accounts and other investment property (but specifically excluding all causes of action arising under chapter 5 of the Bankruptcy Code, related state court provisions incorporated through chapter 5 of the Bankruptcy Code ("Avoidance Claims") and the proceeds of Avoidance Claims), together with all proceeds, rents, products and profits of any of the foregoing.

[2] Previously encumbered Collateral means any Collateral that is subject to a valid, enforceable, non-avoidable, perfected security interest in existence as of the Petition Date (the "Permitted Liens").

W02-EAST:5KES1\200369981.4

to an aggregate of $200,000.00 per month for all claims of the respective retained professionals of the Debtors or the Committee whose retention is approved by this Court during the Cases pursuant to Sections 327, 328, and 1103 of the Bankruptcy Code (collectively, the "Retained Professionals") for fees and expenses which were incurred at any time on and after the Petition Date and before the Termination Date; provided that, in each case, such fees and expenses of the Retained Professionals are ultimately allowed on a final basis by this Court under sections 330 and 331 of the Bankruptcy Code (nothing herein shall waive the right of any party to object to the allowance of any such fees and expenses).

8.    The DIP Liens in, on and to the Collateral granted by Debtors pursuant to this Order and the financing arrangement set forth in the Emergency Motion are hereby deemed effective, valid and perfected as of the commencement of Debtors' bankruptcy cases, without the necessity of the filing by any person of any deeds of trust, mortgages, UCC financing statements, notices of liens and security interests, documents or other instruments otherwise required to be filed under applicable non-bankruptcy law for the perfection of security interests or mortgages, with such validity and perfection being binding upon any subsequently appointed Trustee, either in a Chapter 11 case or a case under any other Chapter of the Bankruptcy Code, and on any and all other creditors of Debtors who have or may hereafter extend credit to Debtors, or file a claim of any nature whatsoever, in this or any superseding Bankruptcy Case of Debtors.

9.    Commencing on the Petition Date, and consistent with the DIP Documents, Debtors are authorized to request and receive from DIP Lender the available balance of the DIP Financing.

10.    The Debtors shall draw down the full amount allocated to each of the Retained Professionals under the attached Budget at the time set forth in such Budget to the extent the amount does not exceed $200,000 per month, even if an order concerning such Retained Professional's fees has not been entered.  The

-7-

1  Debtors shall retain amounts so drawn down under the Budget on account of the

2  Professional fees in a segregated bank account (the "Professional Fees Account") for

3  the benefit of the Retained Professionals only, to be disbursed from the Professional

4  Fees Accounts only pursuant to further order of the Court.  To the extent, if any,

5  after the determination and payment of the Retained Professionals' final Court

6  approved fee applications for their services rendered during the periods covered by

7  the Budget for the funds deposited in the Professional Fee Account, there remain

8  any funds in the Professional Fee Account, such unpaid funds shall be paid to the

9  DIP Lender provided that there are outstanding obligations owing under the DIP

10  Credit Agreement to the DIP Lender.  The DIP Lien shall not attach to the amounts

11  in the Professional Fees Account; provided however, that the DIP Lender shall have

12  a security interest in such unpaid funds to secure the obligation to repay such unpaid

13  funds to the DIP Lender to the extent there remains any amounts owing and unpaid

14  on the DIP Financing.  The amounts allocated in the Budget for each Retained

15  Professional is shown therein only for purposes of the Carve-Out, and neither the

16  Budgeted amounts nor the $200,000 total monthly amount in the Carve-Out shall

17  constitute a cap or limitation on the amounts allowed to the relevant Retained

18  Professional.

19      11.    The Debtors may continue to utilize their existing integrated cash

20  management system which provides for the transfer of funds among the Debtors,

21  provided (i) that the Debtors maintain records of the inter-company transfers of

22  funds and (ii) that the Debtors' continued use of their existing cash management

23  system shall be without prejudice to any rights and claims that any Debtor or party-

24  in-interest may have with respect to such inter-company transfers.

25      12.    As between this Order and any other Loan Documents, this Order shall

26  govern.

27

28

W02-EAST:5KES1\200369981.4

13.   Any reporting that the Debtors are required to provide to the DIP Lender under the DIP Loan Documents shall also be provided concurrently to the Committee.

14.   The Debtors and the DIP Lender, with the consent of the Committee, may amend, modify, supplement or waive any provision of the DIP Financing Documents, provided that such amendment, modification, supplement or waiver, in the judgment of the Debtors and the DIP Agent, is either nonprejudicial to the rights of third parties or is not material.  Except as otherwise provided herein, no waiver, modification, or amendment of any of the provisions hereof shall be effective unless (a) set forth in writing, signed by or on behalf of all the Debtors, the DIP Lender, and the Committee, or (b) approved by this Court.

### 

W02-EAST:5KES1\200369981.4

CONFIDENTIAL

## MMEX U.S. CASH FORECAST

| Cash Forecast | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week # | | bn | bj | | bn | bm | | 1 | bn | 2 | bn | 3 | bn | 4 | bn | 1 | 2 | 3 | 4 | 5 | 1 | 2 | 3 | 4 | 5 | 1 | 2 | 3 | 4 | 1 |
| Friday Ending | | | 2/27 | 3/6 | | 3/13 | 3/20 | | 3/27 | | 4/3 | | 4/10 | | 4/17 | | 4/24 | 5/1 | 5/8 | 5/15 | 5/22 | 5/29 | | | | | | | | |
| Beg Book Available Cash | | 773,584 | 778,637 | 185,912 | | 400,720 | 164,444 | | 311,365 | | 119,489 | | 252,858 | | 406,070 | | 283,284 | 221,383 | 256,790 | 232,234 | 274,474 | 166,596 | | | | | | | | 135,590 |
| Sources into Available Accounts | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| AR | | 45,437 | 106,631 | 94,174 | | 78,644 | 44,183 | | 58,259 | | 144,188 | | 134,354 | | 57,319 | | 74,173 | | 4,821 | 46,000 | | 306,667 | | | | | | | | |
| Misc | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Fabrication Services | | | | | | | | | 35,000 | | | | | | | | | | | | | | | | | | | | | 35,000 | |
| WFB Collateral Released | | 26,298 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Total Available Sources | | 129,866 | 56,100 | | | 167,000 | 167,000 | | 187,000 | | 172,750 | | 172,750 | | 138,200 | | 138,200 | 138,200 | 138,200 | | 138,200 | 172,750 | | | | | | | | 172,750 |
| | | 281,661 | 162,731 | 94,174 | | 243,844 | 211,183 | | 260,259 | | 316,938 | | 307,104 | | 406,670 | | 247,273 | 143,021 | 138,200 | 184,200 | 138,200 | 207,750 | | | | | | | | 478,417 |
| Pre - petition uses (for reference) | | 937,584 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Post - petition Uses | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Payroll | | 10,815 | 101,250 | 10,500 | | 100,171 | 10,500 | | 90,500 | | 10,500 | | 10,500 | | 105,571 | | 10,500 | 90,500 | 10,500 | 90,500 | 10,500 | 90,500 | | | | | | | | 10,500 |
| Consultants | | 4,363 | 9,951 | 6,528 | | 8,332 | 4,182 | | 8,061 | | 5,932 | | 6,332 | | 4,182 | | 4,182 | 5,932 | 5,932 | 6,332 | 4,182 | 8,061 | | | | | | | | 5,932 |
| Employees | | 9,173 | 9,960 | 8,500 | | 8,500 | 8,500 | | 8,500 | | 8,500 | | 8,500 | | 8,500 | | 8,500 | 8,500 | 8,500 | 8,500 | 8,500 | 8,500 | | | | | | | | 8,500 |
| Insurance | | 34,455 | 547 | 37,331 | | 4,681 | | | 547 | | 4,681 | | 4,681 | | 8,500 | | 547 | 37,331 | 37,331 | 4,681 | | 547 | | | | | | | | 547 |
| Interest | | | | | | | | | | | | | | | | | | | | | | | 37,331 | | | | | | | |
| Leases | | 1,216 | 1,629 | 4,056 | | 65 | 748 | | 389 | | 4,056 | | 748 | | 389 | | 389 | 4,056 | | 748 | 399 | | | | | | | | | 4,056 |
| Other G&A | | | 5,533 | 5,716 | | 4,925 | 6,085 | | 4,156 | | 5,469 | | 6,085 | | 748 | | 4,156 | 5,469 | 3,735 | 4,724 | 6,085 | 4,156 | | | | | | | | 5,469 |
| Product | | 144,507 | 128,876 | 102,102 | | 168,358 | 146,147 | | 147,089 | | 6,667 | | 142,208 | | 159,228 | | 5,333 | 5,333 | 3,735 | 5,333 | 442,963 | 8,750 | | | | | | | | 6,667 |
| Professional | | | 1,035 | 5,000 | | 5,000 | 5,000 | | 5,000 | | 7,146 | | 5,000 | | 160,098 | | | | | | 5,000 | 5,000 | | | | | | | | 5,000 |
| Rent | | | 2,909 | 80,679 | | 60,679 | | | | | 5,000 | | | | 5,000 | | | | | | | 60,679 | | | | | | | | |
| Taxes | | | 885 | | | | | | | | | | 2,809 | | | | | | | 2,809 | | | | | | | | | 75,679 |
| Utilities | | 1,832 | 1,832 | | | 2,830 | 6,851 | | 4,456 | | 2,830 | | 2,830 | | 1,632 | | 115 | 2,830 | 6,851 | 2,830 | 6,851 | 4,456 | | | | | | | | 4,456 |
| Other | | 1,250 | 1,250 | 1,250 | | 1,250 | 1,250 | | 1,250 | | 1,250 | | 1,250 | | 1,250 | | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | | | | | | | | 1,250 |
| WFB APA Interest | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Total Post-Petition Uses | | 204,468 | 265,456 | 276,117 | | 304,529 | 188,283 | | 282,135 | | 165,319 | | 48,293 | | 194,274 | | 113,814 | 148,568 | 126,959 | 186,078 | 123,796 | 164,839 | | | | | | | | |
| Other | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Moving expenses on new lease | | | 87,000 | | | 75,000 | | | 75,000 | | 10,000 | | 5,000 | | | | | | | | | | | | | | | | | | |
| Other-Middle East | | | 15,000 | 15,000 | | 15,000 | 15,000 | | | | 15,000 | | | | 15,000 | | | | 15,000 | 15,000 | | | | | | | | | | |
| Other | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Other | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Total Other | | 82,000 | | 75,000 | | 75,000 | | | 75,000 | | 15,000 | | 5,000 | | 15,000 | | | | 15,000 | 15,000 | | | | | | | | | | |
| Restructuring Related Expenses | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| DIP Financing Interest | | | | 3,250 | | | | | 8,250 | | | | | | | | | | 8,250 | | | 9,083 | | | | | | | | |
| Ch 11 Professional | | 400,000 | | 100,000 | | 100,000 | 60,000 | | 115,000 | | 100,000 | | 60,000 | | 115,000 | | | | 100,000 | 60,000 | 115,000 | | | | | | | | | |
| Total Restructuring Related Expenses | | 400,000 | | 3,250 | | 100,000 | 60,000 | | 115,000 | | 100,000 | | 60,000 | | 115,000 | | | | 8,250 | 60,000 | 115,000 | 9,083 | | | | | | | | |
| DIP Financing | | | | 400,000 | | | 200,000 | | | | | | 100,000 | | | | | | 100,000 | | | | | | | | | | | |
| Net Cash Flow From Operations | | (2,867) | (154,725) | (161,943) | | (135,275) | 6,621 | | (76,870) | | 141,618 | | 353,611 | | (63,386) | | 33,399 | (10,395) | 42,241 | (47,878) | 83,954 | (9,083) | | | | | | | | |
| Cumulative Cash Flow from Operations | | 382,685 | 197,940 | 15,998 | | (120,279) | (113,558) | | (190,233) | | (48,616) | | 205,198 | | 141,812 | | 184,811 | 214,812 | 256,252 | 209,316 | 292,228 | 885,865 | | | | | | | | |
| Net Cash Flow from Restructuring | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Net Cash Flow from Restructuring | | (400,000) | 386,750 | (180,000) | | (140,000) | 140,000 | | (115,000) | | (100,000) | | (60,000) | | (115,000) | | (115,000) | (8,250) | 100,000 | | (60,000) | (115,000) | | | | | | | | (9,083) |
| Net Change in Cash | | (2,867) | (184,725) | 214,807 | | (236,276) | 146,621 | | (191,878) | | 133,368 | | 153,611 | | (61,901) | | 29,407 | (18,656) | 42,241 | (167,878) | 168,596 | (31,046) | | | | | | | | 305,494 |
| End Book Cash | | 770,637 | 185,912 | 400,720 | | 164,444 | 311,365 | | 119,489 | | 252,858 | | 406,670 | | 283,284 | | 256,790 | 232,234 | 274,474 | | 166,596 | 135,590 | 441,944 | | | | | | | | |
| DIP Financing | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Beginning Balance | | 390,000 | 390,000 | 390,000 | | 790,000 | 790,000 | | 990,000 | | 990,000 | | 990,000 | | 990,000 | | 990,000 | 990,000 | 990,000 | | 990,000 | 1,090,000 | 1,090,000 | | | | | | | | |
| Funding | | | | 400,000 | | | 200,000 | | | | | | 100,000 | | | | | | 100,000 | | | | | | | | | | | |
| Repayment | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Ending Balance | | 390,000 | 390,000 | 790,000 | | 790,000 | 990,000 | | 990,000 | | 990,000 | | 990,000 | | 990,000 | | 990,000 | 990,000 | 1,090,000 | | 1,090,000 | 1,090,000 | | | | | | | | | |

Cash forecast 20110220 rev 2-18-2011.xls

# **<u>EXHIBIT C</u>**

## LOAN AGREEMENT

THIS LOAN AGREEMENT ("**Agreement**"), dated as of December ____,

2010February __, 2011, is between MMFX TECHNOLOGIES CORPORATION, a California

corporation, MMFX Steel Corporation of AmericaSTEEL CORPORATION OF AMERICA, a

Nevada corporation, and Fasteel CorporationFASTEEL CORPORATION, a California

corporation ("**Borrowers**") and Lindsey Davidson, as Trustee of the Lindsey Davidson Trust

dated April 28, 2009 ("**Lender**").

### RECITALS

A.        WHEREAS, Borrowers are debtors-in-possession under title 11 of the United States

Code (the "**Bankruptcy Code**"), Central District of California Bankruptcy, and require post-

petition financing, without which they will suffer immediate and irreparable harm, for additional

working capital to fund their operations; and

B.        WHEREAS, Borrowers contemplate a recapitalization pursuant to a Chapter 11 Plan; and

C.        WHEREAS, Lender is willing to advance a loan not to exceed a maximum principal

amount of $1,600,000 pursuant to the terms of this Agreement and related documents referred to

herein (the "**DIP Loan**"); and

D.        WHEREAS, any Advances (as defined in Section 2 below) made under this Agreement

shall be evidenced by a Revolving Promissory Note of even date herewith made by Borrowers in

favor of Lender in the original principal amount of $1,600,000 (as amended, restated,

supplemented, modified, extended, or renewed from time to time, the "**Note**"), a security

agreement and such other documents, agreements, filings and instruments required by the Lender

in Lender's sole and absolute discretion (collectively with this Agreement, the "**Loan

Documents**"); and

E.    WHEREAS, other than the financing pursuant to the post-petition financing proposed hereunder, Borrowers ~~contend that they~~ have been unable to obtain additional needed unsecured credit, allowable as an administrative expense under § 503(b)(1) of the Bankruptcy Code, or sufficient secured credit secured by a junior security interest on encumbered property of the estate under § 364(c)(3) of the Bankruptcy Code, or a senior security interest on unencumbered property of the estate under § 364(c)(2), and Borrowers believe that they cannot obtain credit from any other lender on terms better than those set forth in this Agreement;

F.    WHEREAS, Borrowers, in order to satisfy their need for post-petition financing, desire to borrow up to $1,600,000 and obtain Advances from Lender, which Advances shall be made pursuant to the terms of this Agreement and the other Loan Documents; and

G.    WHEREAS, Lender is currently party to two pre-petition loan agreements:  (i) that certain 12% secured note, dated August 1, 2010 in the original principal amount of $400,000, and (ii) that certain 12% secured note dated October and November 2009 in the original principal of amount of $500,000, Lender's portion of which is $50,000, which loans are secured by certain of the Borrowers' inventory and equipment (a list of such inventory and equipment are attached), and pursuant to which Lender ~~contends it~~ is entitled to an aggregate total of monthly payments of $~~4,500.00~~ 9,000.00 for interest (collectively, both notes are the "**Existing Loan**").

## AGREEMENT

NOW THEREFORE, the parties enter into the following agreement:

1.    Recitals Incorporated. The foregoing recitals are hereby acknowledged as true and correct.

2.    Loan Advances. Subject to the provisions of Section ~~5 and Section 14~~13, Lender shall ~~advance~~ make advances (each such extension of credit being herein called an "**Advance**" and

collectively, the "**Advances**") to Borrowers under the DIP Loan, on a revolving basis, up to the principal amount of $1,600,000, not to exceed $400,000 in any one calendar month.00.  Any amount of the DIP Loan repaid may be reborrowed to the extent permitted under this Agreement. Interest of 10% per annum shall be charged against Advances, calculated on the basis of a 360-day year and actual days elapsed, and the Borrowers shall make interest only payments equal to the full amount of then accrued and unpaid interest to Lender on the first day of each calendar month, beginning with the interest payment on January 1, 2011 from the date such Advances are made until paid in cash in full.  Lender may deliver the Advances to one or all of Borrowers with any Advance being delivered to one or all of them being deemed to have been properly delivered to Borrowers hereunder.  On the last day of each calendar month, or such earlier business day if such last day falls on a weekend or holiday, and to the extent the aggregate ending cash balances of the Borrowers at the time exceeds $400,000.00, Borrowers shall repay the excess amount to Lender.  Lender shall make available, however, the entire principal balance of $1,600,000 during the term of the loan to re-borrow consistent with the Budget (defined below) so long as an Event of Default has not been declared.

3.      <u>Loan Documents</u>. Any Advances made hereunder shall be subject to the terms of this Agreement, the Loan Documents, and any applicable order of the Bankruptcy Court approving the DIP Loan.

4.      <u>Lender Records</u>. The amount of each Advance shall be recorded on the books and records of Lender, and such record shall constitute proof of such Advance, and shall be admissible in evidence on such issue.

5.      <u>Borrowers' Business Operations</u>. Borrowers shall operate their businesses pursuant to the budget attached hereto to the final DIP Order as Exhibit A (the "**Budget**"), and may use the

Advances for the purposes described in and up to the amounts listed in the Budget (or according to deviations from the Budget approved by Lender and the Official Committee of Unsecured Creditors (the "Committee") in writing), or upon approval of the Bankruptcy Court after a noticed hearing if Committee consent is not provided) solely for the working capital and general corporate purposes of the Borrowers and payment of costs of administration of the bankruptcy cases of the Borrowers.  Except with respect to the fees and expenses of the Retained Professionals (defined below), the aggregate actual disbursements by Borrowers measured on a rolling cumulative four-week basis shall be no greater than 115% of the aggregate amount of projected disbursements for such four-week period as set forth in the Budget; notwithstanding the foregoing, this "aggregate" variance shall not increase the portion of the Carve-Out for the Retained Professionals.

6.      Cash Management.  Borrowers may continue to utilize their existing integrated cash management system which provides for the transfer of funds among Borrowers, provided (i) that Borrowers maintain records of the inter-company transfers of funds and (ii) that Borrowers' continued use of their existing cash management system shall be without prejudice to any rights and claims that any Borrower or party-in-interest may have with respect to such inter-company transfers.

6.      [Reserved].

7.      [Reserved]

7.      8.Cost of Loan. As and for additional consideration for this Agreement, Borrowers agree that Lender is entitled to be reimbursed for its reasonable legal fees and expenses in connection with offering, implementing and enforcing the DIP Loan, payable out of Advances, if elected by Lender.  Alternatively, Lender may require that Borrower Borrowers reimburse these sums to Lender within ten (10) business days following written demand for payment.  All such legal fees

and expenses, until paid, shall be secured by the DIP Loan. Prior to any such payment of fees and expenses by Borrowers, Lender shall provide Borrowers and the Committee with ten (10) business days' notice to review such fees and expenses for reasonableness. In the event of a dispute regarding the reasonableness of such legal fees that cannot be resolved by the parties, the Bankruptcy Court shall determine such dispute.

8. 9. Grant of Superpriority Administrative Expense Claim and DIP Liens. As security for repayment of the DIP Loan, the Borrowers hereby grant and the Lender shall have the following: (a) a superpriority administrative expense claim for Advances, pursuant to § 364(c)(1)§364(c)(1) of the Bankruptcy Code ("**Superpriority Claim**") to the extent allowable under § 507(b), (b) a fully perfected, first priority security interest in and lien under section 364(c)(2) of the Bankruptcy Code on all unencumbered Collateral[1] of the Borrowers, and (c) a fully perfected junior lien under section 364(c)(3) on all previously encumbered Collateral of the Borrowers.[2] The liens granted under clauses (b) and (c) herein shall be referred to as the "**DIP Liens**". The Any Superpriority Claim and DIP Liens shall be subject subordinate only to the Carve Out and, the Permitted Liens and the retainer held by Sheppard Mullins Richter &Hampton LLP. For the avoidance of doubt, the Superpriority Claim shall not be payable from proceeds of Avoidance Claims, and the DIP Liens shall not attach to the Avoidance Claims or proceeds thereof. The DIP Liens and the perfection thereof shall be effective by entry of the DIP Order and can be

---

[1] "**Collateral**" of the Borrowers means all of the property, assets or interests in property or assets of the Borrowers, jointly and severally, of any kind or nature whatsoever, real or personal, now existing or hereafter acquired or created, including all property of the Borrowers' bankruptcy estates (within the meaning of the Bankruptcy Code), including all causes of action, accounts, inventory, chattel paper, contract rights, instruments, documents, general intangibles (including all intellectual property, copyrights, deposit accounts, licensing agreements, patents, trademarks and trade names), machinery and equipment, real property, leases, cash, bank accounts and other investment property (but specifically excluding all causes of action arising under chapter 5 of the Bankruptcy Code, related state court provisions incorporated through chapter 5 of the Bankruptcy Code ("**Avoidance Claims**"), and the Proceeds of Avoidance Claims) together with all proceeds, rents, products and profits of any of the foregoing.
[2] Previously encumbered Collateral means any Collateral that is subject to a valid, enforceable, non-avoidable, perfected security interest in existence as of the Petition Date (the "**Permitted Liens**").

W02-EAST:5KES1\200370491.1W02-EAST:5KES1\200371428.5

-5-

DOCS_LA:232201.3

further evidenced and accomplished by a security agreement executed by Borrowers and the filing of such UCC-1 Financing Statements and such other instruments, filings and actions as Lender determines to be necessary or appropriate in order to properly grant and perfect such security interests under applicable law and to otherwise protect Lender.

9.   10.Carve Out. The DIP Liens shall be subject to the following carve out expenses (the "**Carve Out**"):

  (a)   fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6); and

  (b)   the up to an aggregate of $200,000.00 per month for all claims of the respective retained professionals of the Borrowers and an official committee of unsecured creditors appointed in this case (or the "Committee") whose retention is approved by this Court during the Cases pursuant to Sections 327, 328, and 1103 of the Bankruptcy Code (collectively, the "**Retained Professionals**") for unpaid fees and expenses which were incurred at any time on and after the Petition Date and before the Termination Date; provided that, in each case, such fees and expenses of the Retained Professionals are (i) authorized under the Budget(s) approved by Lender and (b) ultimately allowed on a final basis by this Court under sections 330 and 331 of the Bankruptcy Code (nothing herein shall waive the right of any party to object to the allowance of any such fees and expenses).

For the sake of clarity, in the event the DIP Loan is terminated, or there are insufficient funds to repay the DIP Loan in full, the Carve Out shall not be subject to recovery by the Lender.

10.   11.Existing Loan.  If a final order is entered, any challenge to the Existing Loan by any party in interest must be asserted within the later of (1) 60 days after entry of the final order or (2) 30 days after the appointment of a by May 15, 2011, such other further date as may be agreed

upon between the Lender, Borrowers, and the Committee, or such other date as fixed by the Court for cause shown by the Committee.  Such challenge must be asserted in a writing filed with the Bankruptcy Court.  In the event no such challenge is made, the Existing Loan shall be automatically deemed to be a valid and allowed claim against the Borrowers and their respective estates.  For purposes of asserting any challenge, the Committee shall be granted automatic standing to assert any causes of action that the Borrowers may have to the Existing Loan on behalf of the Borrowers.

11.    12. Termination Date. This Agreement shall terminate upon the earliest of: (1) the expiration of ten (10) business days' written notice to the Borrowers and the Committee of the occurrence of any material breach of its terms by Borrowers, including a breach of any of the terms of the Loan Documents or any Event of Default; (2) the closing of a sale of all or substantially all of the assets of Borrowers pursuant to a sale under Section 363 of the Bankruptcy Code; (3) the effective date of a confirmed Chapter 11 plan of reorganization; (4) the conversion of any Borrower's bankruptcy case from a case under Chapter 11 to a case under Chapter 7 of the Bankruptcy Code; (5) the dismissal of any Borrower's bankruptcy case, (6) appointment of a Chapter 11 trustee in any Borrower's case, or (7) December 31, 2011 (the earliest such event or date, referred to herein as the "**Termination Date**").

12.    13. Effect of Termination. If the DIP Loan is terminated, except upon the effective date of a confirmed plan of reorganization, Lender shall have a right to seek relief from the automatic stay on shortened notice, with a hearing on such relief to be held within 7 with fourteen (14) business days notice to the Borrowers and the Committee of the Lender seeking such relief. Lender shall not conduct a foreclosure sale on the intellectual property on any date less than 120 days after the termination of the DIP Loan.  In addition, if the DIP Loan is terminated, (i) Lender

shall automatically have no further obligation to Borrowers other than in connection with the subordination of its lien and priority claim to the Carve-Out if not previously funded, (ii) any Advances then outstanding shall be immediately due and payable upon Lender's written notice that such termination has occurred, (iii) and, except as otherwise provided in this Agreement or prohibited by the automatic stay, Lender shall be permitted to pursue any and all available rights and remedies against Borrower and the collateral granted as security for the DIP Loan. Following termination of the DIP Loan, the Borrowers shall carry the burden to demonstrate cause why relief from stay should not be granted.

13.     14. Conditions to Advances under the DIP Loan.

  (a)  Bankruptcy Court Order (the "**DIP Order**"), in form and substance satisfactory to the Lender in respect of the approval of this DIP Loan and creation of the court-ordered super priority claims and security interests provided for herein shall have been made by the Bankruptcy Court.

  (b)  No Event of Default shall have occurred or be continuing.

  (c)  The Termination Date shall not have occurred.

  (d)(d)  Execution and delivery of all Loan Documents required by the Lender in connection with this transaction.

14.     15. Binding Effect. This Agreement shall be binding upon Borrowers and Lender, their respective successors, assigns and heirs, including any subsequent trustee for Borrowers in reorganization or otherwise, and shall inure to the benefit of Borrowers, Lender and their respective successors, assigns and heirs except that Borrowers the parties hereto may not assign or transfer their rights hereunder at anytime prior to July 31, 2011.  Notwithstanding the foregoing, Lender does have the right to allow third parties to participate with respect to the DIP

Loan, without first obtaining the prior written consent of Borrowers and the Committee so long as (i) Lender provides written notice to Borrowers and Committee within 15 days of the creation of a participation agreement, and (ii) such participation shall in no way modify Lender's obligations under the DIP Loan.  The terms of this Agreement and the balance of the Loan Documents shall be valid and enforceable obligations of Borrowers jointly and severally, and all such obligations and the security interests, liens, rights and privileges granted to Lender survive the termination of this Agreement, the appointment of a trustee for Borrowers in reorganization or otherwise, conversion of the bankruptcy cases to cases under Chapter 7, and the confirmation of a Chapter 11 plan of reorganization. If any or all of the provisions of this Agreement are hereafter modified vacated or stayed by subsequent agreement, such action shall not affect the priority, validity, enforceability or effectiveness of any lien, security interest, priority or claim agreed to herein with respect to the obligation arising in the Loan Documents incurred by Borrowers prior to the effective date of such subsequent agreement.

15.      16.Reasonableness of Terms. The terms of the DIP Loan are fair and reasonable, were negotiated by the parties at arm's length and in good faith, and are the best terms available to Borrowers under present market conditions and Borrowers' financial circumstances. Any credit extended under the DIP Loan by Lender is extended in good faith, as that term is used in Section 364(e) of the Bankruptcy Code.

16.      17.Representations and Warranties. It is acknowledged that each party has read this Agreement and has consulted counsel, or knowingly chose not to consult counsel, before executing the same; each party has relied upon their own judgment and/or that of their counsel in executing this Agreement and has not relied on or been induced by any representation, statement or act by any party that is not referred to in this instrument; each party enters into this Agreement

voluntarily, with full knowledge of its significance; and the Agreement is in all respects

complete and final. Each Borrower represents and warrants to the Lender that: it is a corporation

duly incorporated, organized and validly existing under the laws of its jurisdiction of

incorporation; it has all requisite power and authority to enter into and perform its obligations

hereunder; and its execution and delivery hereof and the performance of its obligations

hereunder have been duly authorized by all necessary action.

17.    18.Covenants by Borrowers. The Borrowers covenant and agree that:

    (a)    they shall comply with all laws, rules, regulations and orders applicable to them

and their assets except as prohibited under the Bankruptcy Code or bankruptcy

laws;

    (b)    they shall maintain in good standing at all times all insurance coverage as is

customarily carried by companies which are engaged in the same or similar

business to the business of the Borrowers or as may be reasonably required by the

Lender;

    (c)    they shall not seek or consent to any plan of reorganization or liquidation or any

plan of arrangement that does not provide, upon its effectiveness for full payment

to the Lender of the DIP Loan;

    (d)    the Borrowers shall not incur any senior indebtedness other than as permitted by

the Lender in writing unless such indebtedness shall be subordinate to the

indebtedness in favor of the Lender under the DIP Loan.;

    (e)    the Borrowers shall not merge, amalgamate, consolidate, reorganize, or sell any

assets or license any technology outside of the ordinary course of business, unless

permitted in writing by the Lender or approved by the Bankruptcy Court, or

unless such transaction contemplates that the DIP Loan shall be repaid as part of such transaction, unless such transaction is a not a material asset of the business; and

(f)     the Borrowers shall permit the Lender, its representatives and agents, to have access, during normal business hours and subject to reasonable time, to the books, records, property and premises of the Borrowers.

18.    19.Reporting Covenants. The Borrowers shall deliver to the Lender and the Committee by 5:00 p.m. (PT) onTuesday of each week:

(a)     Weekly and updated Budgets cash forecasts in form and substance satisfactory to and approved by the Lender;

(b)     Line-by-line variance reports (in form and scope reasonably acceptable to the Lender and Committee) by week for the immediately preceding weekly period and on a cumulative basis from the beginning of the Budget period comparing tons sold, actual cash receipts and actual cash disbursements to tons sold, cash receipts and cash disbursements forecasted in the Budget for such period on a line-by-line basis.  The variance report will include explanations of any material variances (10% or greater);

(c)     A written update on the progress of and efforts of the company's Investment Bankers (including KPMG and Livingston) activities, including, but not limited to a listing of parties to be contacted, those contacted, who has expressed interest, which ones have executed a non-disclosure agreement, what materials were sent to each party and next steps in the process and data room usage reports. Debtor to

W02-EAST:5KES1\200370491.1W02-
EAST:5KES1\200371428.5

DOCS_LA:232201.3

also provide the Committee's financial advisors access to the data room and copies of any marketing materials sent to interested parties;

(d)    A copy of the most recent backlog report updated on a weekly basis and an explanation of any material changes from the backlog report of the preceding week;

(e)    Report detailing the usage of the Sales Order Assignment Agreement with Adelphia Metals, LLC or any other similar agreement;

(f)    Weekly updated rolling sixteen-week cash flow forecast in form and substance similar to the Budget;

(g)    ~~(b)~~Prompt notice of any breach of covenant or other obligation of the Borrowers under or in connection with this DIP Loan;

(h)    ~~(c)~~The Borrowers shall promptly, upon receipt, deliver to the Lender copies of all pleadings, motions, applications, judicial information, financial information, and other documents filed by or on behalf of the Borrowers with the Bankruptcy Court and any all reports provided to the Committee by the Borrowers, KPMG, and Livingston regarding the bankruptcy cases.

(i)    ~~(d)~~Such further reports and information as the Lender and Committee may reasonably request from time to time.

19.    ~~20.~~Events of Default. The occurrence of ~~anyone~~ any one or more of the following events shall constitute an Event of Default which can be declared by Lender in writing, with a copy to be delivered to Borrowers and Committee :

(a)    The non-payment of any costs, or any other amount due under the DIP Loan, or the failure to perform as required under the Loan Documents (whether monetary

or non-monetary in nature), past ten (10) business days of its due date or performance date beginning from the date that the Lender provides written notice to the Borrowers and the Committee.

(b)      Expenditures beyond authorization under the Budget as interpreted under this Agreement;

(b)(c)   The entry of any Bankruptcy Court order that materially, adversely affects the DIP Loan or the Lender's rights, remedies, liens, priorities, benefits and protections under any or all of the Bankruptcy Court orders or the DIP Loan.  In the event of a dispute regarding the materiality of the adverse effect of such order, the Bankruptcy Court shall determine the dispute through a motion and an adversary proceeding will not be required.

Upon the occurrence of an Event of Default and after the Termination Date, any right of the Borrowers to receive any advance or other accommodation of credit from the Lender shall be immediately terminated, except the right to payment of the Carve Out, and any further advances made, if any, thereafter shall be in the discretion of the Lender.  Upon the occurrence of an Event of Default, amounts owed by Borrowers to the Lender, shall become immediately due and payable, and, except as otherwise prohibited by the automatic stay, the Lender shall have the right to exercise all remedies under applicable law, including, without limitation, the right to realize on all collateral, without the necessity of obtaining relief or order from any court; provided, however, Lender shall not conduct a foreclosure sale of any intellectual property collateral on any date less than 120 days from the day Lender declares an Event of Default by a notice to Borrowers with a copy to the Committee.

20.      21.Indemnification. The Borrowers shall indemnify, defend with counsel acceptable to the Lender and hold harmless the Lender, solely in its capacity as Lender, its affiliates and its

officers, directors, employees, agents , attorneys and advisors (each, an "**Indemnified Person**")

from and against any and all suits, actions, proceedings, orders, claims, damages, losses,

liabilities and expenses (including legal fees and disbursements and other costs of investigation

or defense, including those incurred upon any appeal) that may be instituted or asserted against

or incurred by any such Indemnified Person as a result of or in connection with credit having

been extended, suspended or terminated under or in relation to the DIP Loan, or the use of the

proceeds thereof, and the administration of such credit, and in connection with or arising out of

the transactions contemplated hereunder and any actions or failures to act in connection

therewith, including the taking of any enforcement action by the Lender and its representatives,

and including any and all environmental liabilities and legal costs and expenses arising out of or

incurred in connection with disputes between or among any parties hereto, except to the extent

that the suit, action, proceedings, orders, claims, damages, losses, liabilities and expenses arose

directly from the gross negligence or willful misconduct of the Indemnified Person or breach of

this Agreement by the Indemnified Person. All such indemnified amounts, if not immediately

paid by the Borrowers upon demand, shall be secured by the DIP Loan.

21.    22. Amendment of Agreement. This Agreement shall not be amended except by a writing

signed by all parties and the Committee or upon approval of the Bankruptcy Court upon notice to

the Committee.

22.    23. Applicable Law and Jurisdiction. This agreement shall be governed by and interpreted

in accordance with the Bankruptcy Code and to the extent not inconsistent with the Bankruptcy

Code, the internal laws in the State of California without regard to its conflicts of law rules

except to the extent superseded superceded by the laws of the United States.

23.    24.Entire Agreement. This Agreement (together with the associated Loan Documents) sets forth the entire agreement between the parties, and there are no other agreements or understandings between them related to this DIP Loan.

24.    25.Execution by Facsimile Signatures and in Counterparts. The parties agree that facsimile signatures or signatures delivered by any other electronic means shall have the same force and effect as original signatures. This Agreement may be executed in one or more counterparts, each counterpart to be considered an original portion of this Agreement.

25.    26.Notices. All notices and demands hereunder shall be in writing and shall be deemed given when addressed as follows: on the earlier of (a) when they are actually delivered to the addressees by facsimile transmission or otherwise, or (b) at 11:00 a.m. California time on the business day next following the deposit thereof with any recognized national overnight delivery service properly addressed to the parties as set forth below:

If to Borrower:    MMFX Technologies Corporation
2415 Campus Drive, Suite 100
Irvine, CA 92612
Attn: President
Fax: 949-474-1130

MMFX Steel Corporation of America
2415 Campus Drive, Suite 100
Irvine. CA 92612
Attn: President
Fax: 949-476-7600

Fasteel Corporation
2415 Campus Drive, Suite 100
Irvine, CA 92612
Attn: Corporate Secretary
Fax:  949-476-7600

with a copy to:Sheppard, Mullin, Richter & Hampton LLP
30 Rockefeller Plaza, 24th Floor
New York, NY 10112
Attn:  Carren Shulman, Esq.

| If to Lender: | Lindsey Davidson, Trustee |
|---|---|
| | Lindsey Davidson Trust dated April 28, 2010 |
| | P.O. Box 2342 |
| | Rancho Santa Fe, CA 92076 |
| | Fax: 858-756-1532 |

with a copy to:Robert Pizzuto
401 B Street, Suite 2400
San Diego, CA 92101
Fax: 619-239-1719

~~with a copy to:Robert Pizzuto401 B Street, Suite 2400 San Diego, CA 92101 Fax: 619-239-1719 AndEvan D. SmileyWeiland, Golden, Smiley, Wang Ekvall & Strok, LLP 650 Town Center Drive, Suite 950Costa Mesa, CA 92626Fax: 714-966-1002~~

And

~~27.    Bankruptcy Court Approval.  This Agreement is subject to Bankruptcy Court approval, upon notice and hearing as required by the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Rules of Bankruptcy Procedure of the Bankruptcy Court for the Central District of California.~~

~~with a copy to:Robert Pizzuto401 B Street, Suite 2400 San Diego, CA 92101 Fax: 619-239-1719AndEvan D. Smiley~~                          Evan D. Smiley

Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
Fax: 714-966-1002

If to the Committee:    Jeffrey N. Pomerantz
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California 90067-4100
Fax: 310.201.0760

26.    ~~27.~~Bankruptcy Court Approval. This Agreement is subject to Bankruptcy Court approval, upon notice and hearing as required by the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Rules of Bankruptcy Procedure of the Bankruptcy Court for the Central District of California.

27.    ~~28.~~Headings. Paragraph headings in this Agreement are included herein for convenience of reference only, and shall not constitute a part of this Agreement for any other purpose.

29.29.  **Lender's Approvals.**  Unless expressly stated to the contrary in this Agreement or the other Loan Documents, any and all matters pertaining to this loan or the making or administration thereof which require Lender's approval, consent, discretion and/or determination shall be subject to Lender's determination in its sole and absolute discretion.

*[Signatures on following page]*

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

BORROWER:                          LENDER:

MMFX TECHNOLOGIES                  LINDSEY DAVIDSON TRUST
CORPORATION                        April 28, 2009


By:_____          By:_____
_____Its:_____          _____Its:_____

BORROWER:

MMFX TECHNOLOGIES
CORPORATION OF AMERICA


By:_____
_____Its:_____


FASTEEL CORPORATION


By: _____
_____Its:_____

BORROWER:                          LENDER

MMFX TECHNOLOGIES                  LINDSEY DAVIDSON TRUST DATED
CORPORATION                        April 28, 2009


By: _____          By: _____
_____Its: _____          _____Its: _____

BORROWER:

MMFX STEEL CORPORATION OF
AMERICA


By: _____
_____Its: _____

BORROWER:

FASTEEL CORPORATION


By: _____
        Its: _____

W02-EAST:5KES1\200370491.1W02-
EAST:5KES1\200371428.5

DOCS_LA:232201.3

# EXHIBIT D

1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
     A Limited Liability Partnership
2      Including Professional Corporations
   ORI KATZ, Cal. Bar No. 209561
3  okatz@sheppardmullin.com
   ~~Four Embarcadero Center, Seventeenth Floor~~
4  ~~San Francisco, California  94111~~
   ~~Telephone:   415-434-9100~~
5  ~~Facsimile:   415-434-3947~~
   AARON J. MALO, Cal. Bar No. 179985
6  amalo@sheppardmullin.com
   ROBERT K. SAHYAN, Cal. Bar No. 253763
7  rsahyan@sheppardmullin.com
   650 Town Center Drive, 4th Floor
8  Costa Mesa, California  92626-1993
   Telephone:  714-513-5100
9  Facsimile:   714-513-5130
   ~~CARREN B. SHULMAN (*admitted in New York*)~~
10 ~~cshulman@sheppardmullin.com~~
   ~~30 Rockefeller Plaza~~
11 ~~New York, New York  10112~~
   ~~Telephone:   212-653-8700~~
12 ~~Facsimile:   212-653-8701~~

13 ~~Proposed~~ Attorneys for Debtors

14              UNITED STATES BANKRUPTCY COURT

15              CENTRAL DISTRICT OF CALIFORNIA

16                    SANTA ANA DIVISION

17

18 In re~~:~~                    | Case No. 8: 10-bk-10083-RK

19 ~~FASTEEL CORPORATION,~~      | (Jointly Administered with Case Nos.:
                                  | 10-bk-10085; 10-bk-27570; 10-
20 ~~———————————— Debtor.~~      | 27571; and 10-bk-27572)

21 ~~In re:~~                    | ~~Case Nos. 8:10-bk-27570; 8:10-bk-~~
                                  | ~~27571; 8:10-bk-27572~~
22 MMFX ~~STEEL~~
   ~~CORPORATION~~CANADIAN       |
23 HOLDINGS, INC., *et al.*,     | Chapter 11

24          ~~OF~~              | **FINAL** ORDER APPROVING
           ~~AMERICA,~~Debtors. | **DEBTORS' EMERGENCY
25                               | MOTION FOR INTERIM AND
   ~~MMFX TECHNOLOGIES~~        | FINAL ORDER (I) AUTHORIZING
26 ~~CORPORATION,~~             | POST-PETITION FINANCING
                                  | AND GRANTING LIENS AND
27 ~~———————————— Debtor.~~     | SUPER-PRIORITY CLAIMS, AND
                                  | (II) PROVIDING RELATED
28                               | RELIEF**

W02-EAST:5KES1\200369981.4

1

2

                                    Date:    February 22, 2011
3    ☐  Affects MMFX Canadian Holdings,        Time:    2:30 p.m.
          Inc.                                  Place:   411 West Fourth Street

4    ☐  Affects MMFX International                            Santa Ana, CA 92701
          Holdings, Inc.                       Courtroom:  #5D
5
☒  Affects Fasteel Corporation
6
☒  Affects MMFX Steel Corporation
7       of America

8    ☒  Affects, MMFX Technologies
9       Corporation

10   ☐  Affects all Debtors

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-

Upon ~~The Court having reviewed~~ the emergency motion (the "Motion") of Fasteel Corporation, MMFX Steel Corporation of America, and MMFX Technologies Corporation (the "Debtors") for an order:  (a) ~~Authorizing~~ authorizing the Debtors to incur post-petition secured indebtedness of up to $1.6 million on an interim and final basis, pursuant to a debtor-in-possession loan agreement, as modified by the parties (the "DIP Credit Agreement") between the Debtors and Lindsey Davidson~~ ~~, as Trustee of the Lindsey Davidson Trust dated April 28, 2009 ("DIP Lender"), pursuant to Sections 105, 361, 362 and 364 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002 and 4001(c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and ~~to~~ grant to DIP Lender a lien and security interest (the "DIP Lien") for the benefit of the DIP Lender on substantially all property of the Debtors (the "DIP Collateral"), other than ~~causes of action arising under chapter 5 of the Bankruptcy Code~~as set forth herein; and (b) Setting a final hearing on the this motion ~~(the "Motion")~~, having come for an initial hearing on December 17, 2010 and, after being continued on two occasions, for a final hearing on February 22, 2011,

THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:

A.    The Emergency Motion came on for a final hearing before this Bankruptcy Court on the ~~16th~~ 22nd day of ~~December 2010 at 3:00~~ February 2011 at 2:30 p.m., with notice thereof having been given in accordance with Bankruptcy Rule 4001(c)(2) to:  (1) ~~all agents and secured creditors of the Debtors of whom the Debtors and its counsel have knowledge; (2) the~~ Official Creditors' Committee and/or all statutory committees appointed by the United States Trustee (the "Committee") and/or the creditors holding the 20 largest unsecured claims against the Debtors; ~~and (3~~(2) the Office of the United States Trustee; and (~~4~~3) certain other significant parties in interest.

B.    Certain creditors and parties in interest made appearances on their own behalf and/or through counsel as noted on the record, and expressed their opinions

1    on the Emergency Motion.  The Court has examined the Emergency Motion and

2    ~~Fourth Third LLC's objection thereto and~~ is entering this Order based upon the

3    pleadings on file herein, and the arguments of counsel at the hearing, and all other

4    evidence presented to the Court.

5        C.    All capitalized words not otherwise defined in this ~~Interim~~ Order have

6    the meanings given for said terms in the DIP Credit Agreement.

7        D.    Debtors have requested that DIP Lender loan funds to Debtors (the

8    "DIP Financing") pursuant to the terms and conditions set forth herein and in the

9    DIP Credit Agreement, and all documents, instruments and agreements executed in

10    connection therewith (collectively, the "DIP Documents").

11        E.    The Debtors are unable to obtain unsecured credit allowable under

12    Bankruptcy Code Section 503(b)(1), pursuant to Bankruptcy Code Sections 364(a),

13    (b), (c) or on any basis other than the arrangement with DIP Lender.

14        F.    The secured credit to be provided under the DIP Credit Agreement is

15    necessary to fund the business of the Debtors and to pay the actual and necessary

16    costs and expenses of preserving the Debtors' estates in accordance with the Budget

17    (defined below).

18        G.    The terms and conditions of the secured DIP Financing sought by the

19    Debtors in the Emergency Motion, as set forth in the DIP Credit Agreement are,

20    under the circumstances, the most advantageous currently available to Debtors.

21    After considering all alternatives, and engaging in discussions with other potential

22    lenders for debtor-in-possession financing, the Debtors have concluded, in the

23    exercise of their best and reasonable business judgment, that the terms and

24    conditions contained in the DIP Credit Agreement represent the best financing terms

25    available to Debtors.

26        H.    DIP Lender has agreed to extend the DIP Financing on the terms and

27    conditions contained in the DIP Credit Agreement and in reliance thereon, provided

28    that this Court enters an order satisfactory to DIP Lender approving the DIP Credit

-2-

1   Agreement and granting such liens, claims and priorities to DIP Lender as are set

2   forth herein and in the DIP Credit Agreement.

3        I.     Based on the record presented to the Court by the Debtors, it appears

4   that (i) the secured financing arrangement contemplated by the Emergency Motion

5   and approved herein, pursuant to which post-petition loans will be made available to

6   Debtors by DIP Lender, is entered into by DIP Lender in good faith as the term

7   "good faith" is used in Section 364(e) of the Bankruptcy Code, (ii) DIP Lender has

8   expressly relied upon the protections offered by Section 364(e) of the Bankruptcy

9   Code in extending such financing to Debtors, and (iii) in making decisions to extend

10  credit or enforce their rights under the DIP Credit Agreement, DIP Lender shall not

11  be deemed to be in control of the operations or properties of Debtors so as to subject

12  DIP Lender to any liability (including, without limitation, environmental liability).

13  Likewise, it appears that DIP Lender has adequately disclosed and apprised all

14  interested parties of current or past relationships with the Debtors.

15       J.     Notice of the Emergency Motion sufficient to satisfy the requirements

16  of Federal Rules of Bankruptcy Procedure ("FRBP") 2002 and 4001(c)(1), has been

17  given to the United States Trustee, the Committee, or if no Committee has been

18  appointed, the 20 largest unsecured creditors of Debtors, the appropriate Office of

19  the United States Trustee, all secured creditors and all parties otherwise entitled to

20  notice.  No further notice of the request for the relief granted in this ~~Interim~~ Order is

21  required.

22       K.     The terms and conditions contained in the DIP Documents are the

23  result of arms' length negotiations, and Debtors are receiving fair consideration and

24  reasonably equivalent value from DIP Lender for the obligations incurred and the

25  liens granted to DIP Lender.

26       L.     Good cause has been shown for the entry of this ~~Interim~~ Order.  Among

27  other things, pending confirmation of a plan of reorganization or the sale of some or

28  substantially all of the Debtors' assets, entry of this ~~Interim~~ Order will minimize

-3-

1  disruption of the Debtors' businesses and operations and permit them to meet payroll

2  and other operating expenses, obtain needed supplies and retain customer and

3  supplier confidence by demonstrating an ability to maintain normal operations. The

4  use of the DIP Financing authorized hereunder is vital to avoid immediate and

5  irreparable harm to the Debtors' estates.  The ability of Debtors to continue in

6  business so that they can attempt to reorganize under the Bankruptcy Code depends

7  on obtaining the relief sought in the Emergency Motion and in this ~~Interim~~ Order.

8  Approval of the protections granted herein is therefore in the best interest of the

9  Debtors' estates.

10      M.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§

11  157(b) and 1334.  Consideration of this matter constitutes a core proceeding as

12  defined in 28 U.S.C. § 157(b)(2).  The statutory predicates for the relief sought

13  herein are sections 105, 362, 363 and 364 of the Bankruptcy Code and Rule 4001(c)

14  of the Federal Rules of Bankruptcy Procedure.  Venue of these Chapter 11 cases and

15  the Emergency Motion seeking approval of this ~~Interim~~ Order in this District is

16  proper pursuant to 28 U.S.C. §§ 1408 and 1409.

17      NOW, THEREFORE, BASED UPON THE FOREGOING, IT IS HEREBY

18  ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

19      1.      The Emergency Motion is hereby granted in all respects, and the DIP

20  Credit Agreement attached hereto as Exhibit "A" is hereby approved subject to the

21  terms and conditions set forth in this Order.

22      2.      Good and sufficient notice of the Emergency Motion's request for

23  approval of the DIP Financing and the other relief requested therein has been

24  provided in accordance with, inter alia, 11 U.S.C. §§ 102(1), 364(c), and FRBP

25  2002 and 4001(c), and any requirement for other and further notice shall be, and it

26  hereby is, dispensed with and waived.

27      3.      The Debtors are authorized to obtain secured indebtedness from DIP

28  Lender pursuant to the DIP Credit Agreement ~~in an amount not to exceed~~

-4-

1   ~~$391,000.00,~~, and DIP Lender is authorized to disburse on a secured basis to the

2   Debtors pursuant to the DIP Credit Agreement, a total of $1,600,000.00, plus any

3   applicable interest, fees, and costs in accordance with the DIP Credit Agreement

4   (the "DIP Indebtedness") ~~and to borrow and become obligated for all borrowings,~~

5   ~~interest and fees from such available amounts under the DIP Documents~~, and DIP

6   Lender is authorized to disburse ~~to Debtors, a total of $391,000.00 from the DIP~~

7   ~~Lender prior to the final hearing to be conducted on January 12, 2011~~.

8       4.      The Debtors are expressly authorized and approved to execute, deliver,

9   perform and consummate all of the terms and conditions set forth in the DIP

10  Documents, and any and all other documents, instruments and agreements

11  reasonably requested by DIP Lender to execute, effectuate, carry out, or

12  consummate all of the terms and conditions set forth in the DIP Documents and this

13  ~~Interim~~ Order.  The Debtors are further authorized and directed to pay any and all

14  costs, charges and expenses, including counsel fees, payable under the DIP

15  Documents.  Such costs, charges and expenses are hereby approved and deemed

16  earned by DIP Lender upon entry of this ~~Interim~~ Order and the first advance by DIP

17  Lender to Debtors pursuant to the terms of the DIP Documents and shall be

18  promptly paid to DIP Lender in accordance with the DIP Documents.

19      5.      To secure the repayment of the DIP Indebtedness and any and all other

20  obligations of Debtors to DIP Lender created by or arising under the DIP

21  Documents, pursuant to Section 364 of the Bankruptcy Code, DIP Lender shall

22  have, and is hereby granted an administrative expense claim equivalent in priority to

23  a claim under Section 364(c)(1) of the Bankruptcy Code, with priority, subject to the

24  limitations in paragraph 7 of this ~~Interim~~ Order regarding the Carve-Out and subject

25  to Section 507(b), superior to all other costs and expenses of administration of the

26  kinds specified in, or ordered pursuant to, Sections 105, 326, 327, 328, 330, 331,

27  503, 506(c), 507, 726, or 1114 of the Bankruptcy Code or otherwise, and shall at all

28  times, to the extent permitted by applicable law, be senior to the rights of Debtors or

-5-

1  any successor trustee, examiner, or responsible person in these or any subsequent

2  proceedings under the Bankruptcy Code ("Super-Priority Claim"), except for any

3  chapter 7 trustee.  Notwithstanding anything to the contrary herein, the Super-

4  Priority Claim shall not be payable from proceeds of Avoidance Claims.

5       6.     To further secure the repayment of the DIP Indebtedness, the

6  ~~Borrowers~~ Debtors hereby grant and the Lender shall have the following: (a) a fully

7  perfected, first priority security interest in and lien under section 364(c)(2) of the

8  Bankruptcy Code on all unencumbered Collateral[1] of the ~~Borrowers~~Debtors, and (b)

9  a fully perfected junior lien under section 364(c)(3) on all previously encumbered

10 Collateral of the ~~Borrowers, meaning that they are junior with respect to any~~

11 ~~property encumbered by liens held by Wells Fargo as of the petition date~~Debtors.[2]

12 The liens granted under clauses (a) and (b~~) and (c)~~ herein shall be referred to as the

13 "DIP Liens".  The DIP Liens shall not attach to the Avoidance Claims or proceeds

14 thereof.  The Superpriority Claim and DIP Liens shall be subject only to the Carve-

15 Out set forth in paragraph 7 of this ~~Interim~~ Order ~~and~~, the Permitted Liens and the

16 retainer held by Sheppard, Mullin, Richter & Hampton LLP; provided that the DIP

17 Indebtedness shall not be payable from the proceeds of any Avoidance ~~Actions or~~

18 ~~commercial tort claims~~Claims.  The DIP Liens and the perfection thereof shall be

[1] "Collateral" of the ~~Borrowers~~Debtors means all of the property, assets or interests in property or assets of the ~~Borrowers~~Debtors, jointly and severally, of any kind or nature whatsoever, real or personal, now existing or hereafter acquired or created, including all property of the ~~Borrowers~~Debtors' bankruptcy estates (within the meaning of the Bankruptcy Code), including all causes of action, accounts, inventory, chattel paper, contract rights, instruments, documents, general intangibles (including all intellectual property, copyrights, deposit accounts, licensing agreements, patents, trademarks and trade names), machinery and equipment, real property, leases, cash, bank accounts and other investment property (but specifically excluding all causes of action arising under chapter 5 of the Bankruptcy Code, related state court provisions incorporated through chapter 5 of the Bankruptcy Code ("Avoidance Claims") and the proceeds of ~~commercial tort claims~~Avoidance Claims), together with all proceeds, rents, products and profits of any of the foregoing.

[2] Previously encumbered Collateral means any Collateral that is subject to a valid, enforceable, non-avoidable, perfected security interest in existence as of the Petition Date (the "Permitted Liens").

~~W02-WEST:3MAW1\403156806.1~~W02-EAST:5KES1\200369981.4

1   effective by entry of this Order and can be further evidenced and accomplished by a

2   security agreement executed by ~~Borrowers~~ Debtors and the filing of such UCC-1

3   Financing Statements and such other instruments, filings and actions as Lender

4   determines to be necessary or appropriate in order to properly grant and perfect such

5   security interests under applicable law and to otherwise protect Lender.

6       7.    Any other provision of this ~~Interim~~ Order or the DIP Credit Agreement

7   to the contrary notwithstanding, the DIP Liens and the Super-Priority Claim shall be

8   subject to payment of the following carve-out expenses (the "Carve-Out"): (a) fees

9   payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6); and (b) ~~the~~

10   up to an aggregate of $200,000.00 per month for all claims of the respective retained

11   professionals of the ~~Borrowers or any official committee of unsecured creditors~~

12   (Debtors or the "Committee") whose retention is approved by this Court during the

13   Cases pursuant to Sections 327, 328, and 1103 of the Bankruptcy Code

14   (collectively, the "Retained Professionals") for ~~unpaid~~ fees and expenses which

15   were incurred at any time on and after the Petition Date and before the Termination

16   Date; provided that, in each case, such fees and expenses of the Retained

17   Professionals are ~~(i) authorized under the Budget(s) approved by Lender and (b)~~

18   ultimately allowed on a final basis by this Court under sections 330 and 331 of the

19   Bankruptcy Code (nothing herein shall waive the right of any party to object to the

20   allowance of any such fees and expenses).

21       8.    The DIP Liens in, on and to the Collateral granted by Debtors pursuant

22   to this ~~Interim~~ Order and the financing arrangement set forth in the Emergency

23   Motion are hereby deemed effective, valid and perfected as of the commencement

24   of Debtors' bankruptcy cases, without the necessity of the filing by any person of

25   any deeds of trust, mortgages, UCC financing statements, notices of liens and

26   security interests, documents or other instruments otherwise required to be filed

27   under applicable non-bankruptcy law for the perfection of security interests or

28   mortgages, with such validity and perfection being binding upon any subsequently

~~W02-WEST:3MAW1\403156806.1~~W02-EAST:5KES1\200369981.4

1 appointed Trustee, either in a Chapter 11 case or a case under any other Chapter of

2 the Bankruptcy Code, and on any and all other creditors of Debtors who have or

3 may hereafter extend credit to Debtors, or file a claim of any nature whatsoever, in

4 this or any superseding Bankruptcy Case of Debtors.

5      9.      Commencing on the Petition Date, and consistent with the DIP

6 Documents, Debtors are authorized to request and receive from DIP Lender the

7 available balance of the DIP Financing.

8      ~~10.    Debtors shall mail copies of a notice of the approval of this Interim~~

9 ~~Order, together with a copy of this Interim Order, to the parties having been given~~

10 ~~notice of the Emergency Motion and to any other party which has filed a request for~~

11 ~~notices with this Court and to counsel for any Committee.  The notice of approval of~~

12 ~~this Interim Order shall state that any party in interest objecting to this Interim Order~~

13 ~~as a final Order shall file written objections with the United States Bankruptcy Court~~

14 ~~Clerk for the Central District of California no later than January 4, 2011.  Any other~~

15 ~~further obligation for notice of the relief granted herein and of the final hearing on~~

16 ~~the Emergency Motion shall be, and hereby is, dispensed with and waived.~~

17      ~~11.    As noted above, a final hearing to consider the Emergency Motion will~~

18 ~~be held on January 12, 2011 at 2:30 p.m. and any opposition to final approval of the~~

19 ~~DIP Documents must be filed and served no later than January 4, 2011.  Any reply~~

20 ~~papers must be filed and served no later than close of business on January 10, 2011.~~

21      ~~12.~~MMFX Steel Corporation of America ("Steel Corp.") is authorized to

22 continue conducting business with Adelphia Metals, LLC ("Adelphia") pursuant to

23 the terms of the Sales Order Assignment Agreement (the "SO Agreement") entered

24 into as of September 8, 2010 by and between Steel Corp. and Adelphia, and that the

25 terms of the SO Agreement and related agreements shall continue to govern the

26 relationship between Steel Corp. and Adelphia in connection with the transactions

27 contemplated under the SO Agreement, provided, however, that this Interim Order

28 does not constitute an assumption of the SO Agreement pursuant to Section 365 of

W02-WEST:3MAW1\403156806.1 W02-EAST:5KES1\200369981.4

1  the Bankruptcy Code and Adelphia, Steel Corp. and all other parties in interest

2  reserve all of their respective rights regarding Section 365 of the Bankruptcy Code.

3      10.    The Debtors shall draw down the full amount allocated to each of the

4  Retained Professionals under the attached Budget at the time set forth in such

5  Budget to the extent the amount does not exceed $200,000 per month, even if an

6  order concerning such Retained Professional's fees has not been entered.  The

7  Debtors shall retain amounts so drawn down under the Budget on account of the

8  Professional fees in a segregated bank account (the "Professional Fees Account") for

9  the benefit of the Retained Professionals only, to be disbursed from the Professional

10  Fees Accounts only pursuant to further order of the Court.  To the extent, if any,

11  after the determination and payment of the Retained Professionals' final Court

12  approved fee applications for their services rendered during the periods covered by

13  the Budget for the funds deposited in the Professional Fee Account, there remain

14  any funds in the Professional Fee Account, such unpaid funds shall be paid to the

15  DIP Lender provided that there are outstanding obligations owing under the DIP

16  Credit Agreement to the DIP Lender.  The DIP Lien shall not attach to the amounts

17  in the Professional Fees Account; provided however, that the DIP Lender shall have

18  a security interest in such unpaid funds to secure the obligation to repay such unpaid

19  funds to the DIP Lender to the extent there remains any amounts owing and unpaid

20  on the DIP Financing.  The amounts allocated in the Budget for each Retained

21  Professional is shown therein only for purposes of the Carve-Out, and neither the

22  Budgeted amounts nor the $200,000 total monthly amount in the Carve-Out shall

23  constitute a cap or limitation on the amounts allowed to the relevant Retained

24  Professional.

25      11.    The Debtors may continue to utilize their existing integrated cash

26  management system which provides for the transfer of funds among the Debtors,

27  provided (i) that the Debtors maintain records of the inter-company transfers of

28  funds and (ii) that the Debtors' continued use of their existing cash management

W02-WEST:3MAW1\403156806.1W02-EAST:5KES1\200369981.4

system shall be without prejudice to any rights and claims that any Debtor or party-in-interest may have with respect to such inter-company transfers.

12.    As between this Order and any other Loan Documents, this Order shall govern.

13.    Any reporting that the Debtors are required to provide to the DIP Lender under the DIP Loan Documents shall also be provided concurrently to the Committee.

14.    The Debtors and the DIP Lender, with the consent of the Committee, may amend, modify, supplement or waive any provision of the DIP Financing Documents, provided that such amendment, modification, supplement or waiver, in the judgment of the Debtors and the DIP Agent, is either nonprejudicial to the rights of third parties or is not material.  Except as otherwise provided herein, no waiver, modification, or amendment of any of the provisions hereof shall be effective unless (a) set forth in writing, signed by or on behalf of all the Debtors, the DIP Lender, and the Committee, or (b) approved by this Court.

###

W02-WEST:3MAW1\403156806.1W02-EAST:5KES1\200369981.4

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP, Four Embarcadero Center, 17th Fl, San Francisco CA 94111

A true and correct copy of the foregoing document described as

***SUPPLEMENT TO DEBTORS' EMERGENCY MOTION FOR INTERIM AND FINAL ORDER (I) AUTHORIZING POST-PETITION FINANCING AND GRANTING LIENS AND SUPER-PRIORITY CLAIMS, AND (II) PROVIDING RELATED RELIEF***

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On February 21, 2011, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

> Henkie F Barron hbarron@winston.com, docketsf@winston.com
> Frank Cadigan frank.cadigan@usdoj.gov
> Shirley Cho scho@pszjlaw.com
> Jeffrey W Dulberg jdulberg@pszjlaw.com
> Peter L Duncan peterd@psdslaw.com, chelam@psdslaw.com
> Donald English dae@englishapc.com
> Beth Gaschen  bgaschen@wgllp.com
> Nancy S Goldenberg  nancy.goldenberg@usdoj.gov
> Ori Katz  okatz@sheppardmullin.com
> Aaron J Malo  amalo@sheppardmullin.com
> Margaret M Mann  mmann@sheppardmullin.com, michelemcconnell@sheppardmullin.com
> J. Barrett Marum  bmarum@sheppardmullin.com, danderson@sheppardmullin.com
> Jeffrey N Pomerantz  jpomerantz@pszjlaw.com
> Justin E Rawlins  jrawlins@winston.com, docketla@winston.com
> Daniel H Reiss dhr@lnbrb.com
> Robert K Sahyan  rsahyan@sheppardmullin.com
> Gerald N Sims  jerrys@psdslaw.com, bonniec@psdslaw.com
> Evan D Smiley  esmiley@wgllp.com
> Philip E Strok  pstrok@wgllp.com
> United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov

II.  **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On _____, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

III.  **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on *February 21, 2011*, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                                                 **9013-3.1.PROOF.SERVICE**

personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

| <u>Name</u> | <u>Electronic Mail</u> |
|---|---|
| Nancy S Goldenberg | nancy.goldenberg@usdoj.gov |
| Donald English | dae@englishapc.com |
| Jeffrey N Pomerantz | jpomerantz@pszjlaw.com |
| Shirley Cho | scho@pszjlaw.com |
| Justin E Rawlins | jrawlins@winston.com |
| John D Fredericks | jfrederi@winston.com |
| Evan D Smiley | esmiley@wgllp.com |
| Carol Pinlac | cpinlac@bdo.com |
| Ricardo S. Chance | rchance@KPMG.com |
| Erik Jordan | erjordan@kpmg.com |
| Robin Spigel | rspigel@willkie.com |
| Andrew Ward | jaward@kpmg.com |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| February 21, 2011 | ROBERT K. SAHYAN | /s/ Robert K. Sahyan |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                          **9013-3.1.PROOF.SERVICE**