1 | SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
2   Including Professional Corporations
   Ori Katz (SBN: 209561)
3   Aaron J. Malo (SBN: 179985)
   Robert K. Sahyan (SBN: 253763)
4   650 Town Center Drive, 4th Floor
   Costa Mesa, California  92626-1993
5   Telephone:    (714) 513-5100
   Facsimile:    (714) 513-5130
6   Email: okatz@sheppardmullin.com
          amalo@sheppardmullin.com
7          rsahyan@sheppardmullin.com

8 | COUNSEL TO DEBTORS

9

10

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

| In re | Case No. 8:10-bk-10083-RK |
|---|---|
| MMFX CANADIAN HOLDINGS, INC., *et al.*, | (Jointly Administered with Case Nos.: 10-bk-10085; 10-bk-27570; 10-bk-27571; and 10-bk-27572) |
| Debtors. | Chapter 11 |
| ☐ Affects MMFX Canadian Holdings, Inc. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CONFIRMATION OF FIRST AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION** |
| ☒ Affects MMFX International Holdings, Inc. | |
| ☒ Affects Fasteel Corporation | Date:     July 22, 2011 |
| ☒ Affects MMFX Steel Corporation of America | Time:    9:00 a.m. Place:    United States Bankruptcy Court 411 West Fourth Street |
| ☒ Affects MMFX Technologies Corporation | Santa Ana, CA 92701 Courtroom 5D |
| ☐ Affects all Debtors | Judge:   Hon. Robert Kwan |

# TABLE OF CONTENTS

**Page(s)**

I. THE PLAN COMPLIES WITH CHAPTER 11 OF THE BANKRUPTCY CODE ......... 4

    A.    The Plan Complies With Bankruptcy Code Section 1129(a)(1). .................... 4

    B.    The Plan Complies With The Classification Requirements Of Bankruptcy Code Section 1122. ........................................................................ 5

    C.    The Plan Contains All Mandatory Provisions And Certain Permissive Provisions Set Forth In Bankruptcy Code Section 1123. ............................... 7

        1.    Compliance With Bankruptcy Code Section 1123(a) (Mandatory Plan Provisions). .................................................................. 8

            a.    Compliance With Bankruptcy Code Section 1123(a)(1) (Designation of Classes Of Claims And Interests). ................. 8

            b.    Compliance With Bankruptcy Code Section 1123(a)(2) (Specification Of Unimpaired Classes And Interests). ............. 9

            c.    Compliance With Bankruptcy Code Section 1123(a)(3) (Specification Of Treatment Of Impaired Classes And Interests). ...................................................................................... 9

            d.    Compliance With Bankruptcy Code Section 1123(a)(4) (Provide Same Treatment For Each Claim Or Interest Within A Class). ................................................................................... 10

            e.    Compliance With Bankruptcy Code Section 1123(a)(5) (Adequate Means for Implementation of Plan)...................... 10

            f.    Compliance With Bankruptcy Code Section 1123(a)(6) (Charter of Reorganized Debtor). ............................................. 16

            g.    Compliance With Bankruptcy Code Section 1123(a)(7) (Selection Of Officers And Directors). .................................. 16

        2.    Compliance With Bankruptcy Code Section 1123(b) (Permissive Plan Provisions). ................................................................. 17

            a.    Compliance With Bankruptcy Code Section 1123(b)(1) (Impairment/Nonimpairment). ................................................. 17

            b.    Compliance With Bankruptcy Code Section 1123(b)(2) (Assumption/Rejection Of Executory Contracts And Unexpired Leases). ................................................................... 17

            c.    Compliance With Bankruptcy Code Section 1123(b)(3) (Settlement And Retention of Claims). .................................... 18

            d.    Compliance With Bankruptcy Code Section 1123(b)(5) (Modification Of Rights Of Holders Of Claims). ................... 18

CONFIRMATION BRIEF

D.  The Debtor Has Complied With The Requirements Of Bankruptcy Code Section 1129(a)(2) (Compliance With Applicable Provisions of Title 11). ...................................................................................................... 19

1.  Compliance With Bankruptcy Code Section 1121(a) (Who May File a Plan). ..................................................................... 19

2.  Compliance With Bankruptcy Code Section 1125 (Post-petition Disclosure and Solicitation). ...................................... 19

3.  The Plan Has Been Proposed In Good Faith In Compliance With Bankruptcy Code Section 1129(a)(3). ......................... 21

4.  The Plan Complies With The Requirements Of Bankruptcy Code Section 1129(a)(4) (Payment for Services or Costs in Connection With the Case). .............................................................. 22

5.  The Plan Complies With Bankruptcy Code Section 1129(a)(5) Regarding The Identity Of Officers, Directors, And Insiders............ 24

6.  The Plan Complies With Bankruptcy Code Section 1129(a)(6) Regarding Governmental Regulatory Approval Of Rates. ............... 24

7.  The Plan Satisfies the Requirements Of Bankruptcy Code Section 1129(a)(7) ("Best Interest" Test). ................................ 24

8.  The Plan Has Been Accepted By All Classes In Compliance With Bankruptcy Code Section 1129(a)(8). ............................ 28

9.  The Plan Complies With Bankruptcy Code Section 1129(a)(9). ........ 29

10.  The Plan Has Been Accepted By At Least One Impaired Class In Compliance With Bankruptcy Code Section 1129(a)(10). ............ 31

11.  Confirmation Of The Plan Is Not Likely To Be Followed By Liquidation (Unless Provided For In The Plan) Or The Need For Further Financial Reorganization In Compliance With Bankruptcy Code Section 1129(a)(11). ................................. 31

12.  The Debtor Will Pay On Or Before The Effective Date All Fees Payable Under 28 U.S.C. § 1930 In Compliance With Bankruptcy Code Section 1129(a)(12). ................................. 31

13.  The Plan Complies With Bankruptcy Code Section 1129(a)(13) In Respect To Retiree Benefits. ................................................ 32

14.  The Plan Complies With Bankruptcy Code Section 1129(d) Because The Principal Purpose Of The Plan Is Not To Avoid Taxes Or Applicable Securities Laws. ................................... 32

II. THE SOLE OBJECTION TO THE PLAN SHOULD BE OVERRULED ................... 32

III. COMMITTEE'S CONSENT ..................................................................... 34

IV. CONCLUSION ...................................................................................... 35

-ii-

# TABLE OF AUTHORITIES

**Page(s)**

<u>Federal Cases</u>

In re Apple Tree Partners, LP,
  131 B.R. 380 (Bankr. W.D. Tenn. 1991) ................................................................. 23

Brady v. Andrew (In re Commercial Western Finance Corp.),
  761 F.2d 1329 (9th Cir. 1985) ................................................................................... 4

In re Cajun Electric Power Cooperative, Inc.,
  230 B.R. 715 (Bankr. M.D. La. 1999) ..................................................................... 22

In re Consolidated Water Utilities, Inc.,
  217 B.R. 588 (9th Cir. BAP 1998) .......................................................................... 23

In re Cramer, Inc.,
  100 B.R. 63 (Bankr. D. Kan. 1989) ......................................................................... 18

In re Drexel Burnham Lambert Group,
  138 B.R. 723 (Bankr. S.D.N.Y. 1992) ..................................................................... 23

Duff v. United States Trustee (In re California Fidelity, Inc.),
  198 B.R. 567 (9th Cir. BAP 1996) .......................................................................... 18

In re Eagle Bus Manufacturing, Inc.,
  134 B.R. 584 (Bankr. S.D. Tex. 1991) ...................................................................... 9

Florida Partners Corp. v. Southeast Co. (In re Southeast Co.),
  868 F.2d 335 (9th Cir. 1989) ................................................................................... 10

In re Fur Creations by Varriale, Ltd.,
  188 B.R. 754 (Bankr. S.D.N.Y. 1995) ...................................................................... 4

In re Greate Bay Hotel & Casino, Inc.,
  251 B.R. 213 (Bankr. D.N.J. 2000) ........................................................................... 4

In re Haardt,
  65 B.R. 697 (Bankr. E.D. Pa. 1986) .......................................................................... 9

Hanson v. First Bank.,
  828 F.2d 1310 (8th Cir. 1987) ................................................................................. 19

In re Hoff,
  54 B.R. 746 (Bankr. D.N.D. 1985) .......................................................................... 17

In re Jeppson,
  66 B.R. 269 (Bankr. D. Utah 1986) ......................................................................... 17

In re Jersey City Medical Center,
  817 F.2d 1055 (3d Cir. 1987) .................................................................................... 5

CONFIRMATION BRIEF

Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.),
    843 F.2d 636 (2d Cir. 1988) ........................................................................... 4

In re Leslie Fay Cos.,
    207 B.R. 764 (Bankr. S.D.N.Y. 1997) ..................................................... 19, 23

In re M.S.M. & Associates, Inc.,
    104 B.R. 312 (Bankr. D. Haw. 1989) ........................................................... 22

Platinum Capital, Inc. v. Sylmar Plaza, L.P. (In re Sylmar Plaza L.P.),
    314 F.3d 1070 (9th Cir. 2002) ..................................................................... 26

Resorts International, Inc. v. Lowenschuss (In re Lowenschuss),
    67 F.3d 1394 (9th Cir. 1995) ......................................................................... 4

In re Ruti-Sweetwater, Inc.,
    836 F.2d 1263 (10th Cir. 1988) ................................................................... 28

In re Smith,
    123 B.R. 863, (Bankr. C.D. Cal. 1991) ......................................................... 9

In re Stuart Glass & Mirror, Inc.,
    71 B.R. 332 (Bankr. S.D. Fla. 1987) ........................................................... 10

In re Sullivan,
    26 B.R. 677 (Bankr. W.D.N.Y. 1982) ........................................................... 6

In re Sun Country Development, Inc.,
    764 F.2d 406 (5th Cir. 1985) ....................................................................... 19

In re TS Industrial Inc.,
    117 B.R. 682 (Bankr. D. Utah 1990) ........................................................... 15

In re Texaco Inc.,
    84 B.R. 893 (Bankr. S.D.N.Y. 1988) ....................................................... 4, 19

In re Toy & Sports Warehouse, Inc.,
    37 B.R. 141 (Bankr. S.D.N.Y. 1984) ..................................................... 17, 19

In re Treasure Bay Corp.,
    212 B.R. 520 (Bankr. S.D. Miss. 1997) ....................................................... 18

In re Victory Construction Co.,
    42 B.R. 145 (Bankr. C.D. Cal. 1984) ........................................................... 23

Federal Statutes

Bankruptcy Code (11 U.S.C.)
    § 1121(a) .................................................................................................... 17
    § 1122 ......................................................................................................... 4, 5
    § 1122(a) ............................................................................................... 5, 6, 7
    § 1122(b) ......................................................................................................... 5
    § 1123 ......................................................................................................... 4, 7
    § 1123(a) ..................................................................................................... 6, 7
    § 1123(a)(1) .............................................................................................. 7, 8, 9

W02-EAST:5KES1\200406687.4

CONFIRMATION BRIEF

§ 1123(a)(2)............................................................................................6, 7, 9
§ 1123(a)(3)..........................................................................................7, 9, 10
§ 1123(a)(4)............................................................................................7, 10
§ 1123(a)(5)............................................................................................7, 10
§ 1123(a)(6)............................................................................................7, 14
§ 1123(a)(7)......................................................................................7, 14, 15
§ 1123(b)................................................................................................8, 15
§ 1123(b)(1)................................................................................................15
§ 1123(b)(2)..........................................................................................15, 16
§ 1123(b)(3)................................................................................................16
§ 1123(b)(3)(B)..........................................................................................16
§ 1123(b)(5)................................................................................................16
§ 1124..........................................................................................................9
§ 1125..................................................................................................17, 18
§ 1125(b)....................................................................................................18
§ 1126..........................................................................................................18
§ 1126(c)......................................................................................................26
§ 1126(d)..............................................................................................26, 28
§ 1126(f)................................................................................................23, 26
§ 1128(a)(7)................................................................................................23
§ 1129(a)(1)-(a)(9) ..........................................................................en passim
§ 365............................................................................................................15
§§ 502 and 507............................................................................................6

Section 5 of the Securities Act of 1933
    (15 U.S.C. § 77e). ................................................................................30

28 U.S.C. § 1930......................................................................................29

Fed. R. Bankr. P. 6006(a) ......................................................................15

Bankruptcy Rules

Rule 3017(d) ............................................................................................18

Rule 9014..................................................................................................15

W02-EAST:5KES1\200406687.4

CONFIRMATION BRIEF

1    MMFX Technologies Corporation, MMFX Steel Corporation of America, Fasteel

2  Corporation and International Holdings, Inc., the four debtor proponents (the "Debtors"),

3  submit this memorandum in support of confirmation of the *First Amended Joint Plan of*

4  *Reorganization of Affiliated Debtors Under Chapter 11 of the Bankruptcy Code* (the

5  "Plan")[1] filed June 7, 2011 as docket # 374, and jointly proposed by the Debtors, the

6  Official Committee of Unsecured Creditors (the "Committee"), Fourth Third LLC ("Fourth

7  Third"), and Investment Funding, Inc. ("Investment Funding" and collectively with the

8  Debtors, the Committee and Fourth Third, the "Proponents").  This memorandum

9  demonstrates that the Plan satisfies the relevant provisions of title 11 of the United States

10 Code (the "Bankruptcy Code").

11   Additionally, this memorandum responds to the sole objection to confirmation (the

12 "Objection") [Docket No. 421], filed by Lindsey Davidson, individually and as trustee of

13 the Lindsey Davidson Trust dated April 28, 2009 ("Davidson").

14   This memorandum is supported by: the Declaration of Michael W. Pompay, the

15 Debtors' President and/or Corporate Secretary (the "Pompay Declaration"); the Declaration

16 of Ricardo S. Chance of KPMG Corporate Finance LLC, the Debtors' investment banker

17 (the "Chance Declaration"); the Declaration of Robert Sahyan (the "Voting Declaration");

18 the ballots and other solicitation materials approved by the Court and served on parties

19 entitled to vote to accept or reject the Plan; the Plan Supplement filed in support of the

20 Plan; any other oral or documentary evidence that may be presented in support of the Plan;

21 the arguments and representations of counsel at the hearing regarding confirmation of the

22 Plan; and the record in these cases.

23   The *Joint Disclosure Statement in Support of First Amended Joint Plan of*

24 *Reorganization Proposed by (1) Debtors; (2) Official Committee of Unsecured Creditors;*

25 *(3) Fourth Third LLC; and (4) Investment Funding, Inc.* (the "Disclosure Statement") in

26

27 [1] Undefined capitalized terms used in this memorandum shall have the meanings given to
such terms in the Plan.

28

1  support of the Plan was approved by this Court after a hearing on June 7, 2011, by order

2  entered on June 9, 2011 [Docket No. 379].  On June 10, 2011, the Debtors served, by mail,

3  copies of the Plan and Disclosure Statement, and notice of the time fixed for filing

4  objections to and the hearing to consider the confirmation of the Plan, on all parties

5  required to be served with the same, including ballots for those parties entitled to vote or

6  reject the Plan [Docket Nos. 385, 386, & 387].  On June 24, 2011, the Debtors served

7  copies of the Notice of Filing of Supplement to Chapter 11 Plan of Reorganization on all

8  parties required to be served with the same.  All votes were due by 5:00 p.m. on July 8,

9  2011.

10        A detailed discussion of the Debtors' historical background and business, the events

11  leading to the filing of these bankruptcy cases and the major events during these

12  bankruptcy cases is included in the Disclosure Statement.  That detailed discussion is not

13  repeated in this memorandum and is instead incorporated by reference.

14        The Plan represents the concerted efforts of the major constituents in these cases,

15  including the Debtors, the Committee, Fourth Third and Investment Funding.  These

16  parties and the Debtors are parties to a stipulated resolution that embodies the parties'

17  Restructuring Support Agreement (the "RSA") approved by the Court and pursuant to

18  which they agreed to certain concessions in order to pave the way for the confirmation of

19  the Plan.

20        The Plan is a reorganization plan that builds on the Debtors' investment banking

21  process seeking solicitation of bids to invest in, license or acquire some or all of the

22  Debtors' assets (the "Investment Banking Process").  The Plan provides that the Debtors

23  would reorganize under one of two alternative scenarios described in the Plan as

24  Scenario A and Scenario B.

25        Scenario A would be applicable only in the event the Investment Banking Process

26  resulted in a Successful Bid prior to the Confirmation Hearing, under which event the

27  Debtors could proceed with confirmation under that scenario; otherwise, Scenario B would

28  take place whereby the Debtors' two largest creditors, Fourth Third and Investment

W02-EAST:5KES1\200406687.4                                          CONFIRMATION BRIEF

Funding, would convert their Allowed General Unsecured Claims (which total over $65 million in the aggregate) to equity and provide the Reorganized Debtors with the Exit Facility that equals the greater of (a) $3.6 million or (b) an amount sufficient to the Administrative and Secured Claims in full plus $1 million to be made available for the holders of Priority Claims and General Unsecured Claims.

The Proponents are proceeding to confirm the Plan under Scenario B because, as of the date of this memorandum, no bids have been selected that satisfies the requirement of the Minimum Bid for Scenario A under the Plan.  However, the Debtors reserve their right to seek confirmation of the Plan under Scenario A in the event a Minimum Bid is selected before the time of the confirmation hearing.

The Plan was accepted by the both the shareholders and the General Unsecured Creditors.  General Unsecured Creditors, who are the only class entitled to vote under Scenario B of the Plan, have voted to accept the Plan.  They have accepted the Plan both on an unconsolidated basis with respect to each Debtor's individual creditors and on a consolidated basis with respect to all of the Debtors creditors taken as a whole.  By number, the percentages of acceptances by the General Unsecured creditors by Debtor entity range from 80% in the case of Steel Corp. to 100% in the case of International.  By amount, the percentages of acceptances by the General Unsecured creditors by Debtor entity range from 99% in the case of Steel Corp. to 100% in the case of International.  (In the event the Debtors seek to proceed under Scenario A, however, the Plan would also be confirmable on a "cramdown" basis under Scenario A, where shareholders and holders of subordinated claims would also be entitled to vote and where holders of approximately 78% of the shares voting on the Plan have voted to accept the Plan.)  The vote evidences that the Plan enjoys vast support from both the creditors an shareholders alike.

The Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed for the reasons set forth below.

W02-EAST:5KES1\200406687.4

**I.**

## THE PLAN COMPLIES WITH CHAPTER 11 OF THE BANKRUPTCY CODE

Under the Bankruptcy Code, a plan "shall" be confirmed if all of the applicable confirmation requirements set forth in Bankruptcy Code Section 1129 are satisfied.  See Brady v. Andrew (In re Commercial Western Fin. Corp.), 761 F.2d 1329, 1338 (9th Cir. 1985); In re Greate Bay Hotel & Casino, Inc., 251 B.R. 213, 221 (Bankr. D.N.J. 2000); In re Fur Creations by Varriale, Ltd., 188 B.R. 754, 758-59 (Bankr. S.D.N.Y. 1995).  As discussed below, the Plan satisfies all of the applicable confirmation requirements of Section 1129 and should therefore be confirmed.[2]

**A.**    **The Plan Complies With Bankruptcy Code Section 1129(a)(1).**

Bankruptcy Code Section 1129(a)(1) requires that a plan comply with the "applicable provisions of this title."  See 11 U.S.C. § 1129(a)(1); Resorts Int'l., Inc. v. Lowenschuss (In re Lowenschuss), 67 F.3d 1394, 1401 (9th Cir. 1995).  "The legislative history of Subsection 1129(a)(1) suggests that Congress intended the phrase 'applicable provisions' in this Subsection to mean provisions of chapter 11 that concern the form and content of reorganization plans."  Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.), 843 F.2d 636, 648-49 (2d Cir. 1988) (emphasis added).  The two applicable provisions relating to the form and content of a plan of reorganization are Bankruptcy Code Sections 1122 and 1123, which govern classification of claims and interests and the contents of a plan, respectively.  See In re Texaco Inc., 84 B.R. 893, 905 (Bankr. S.D.N.Y. 1988), appeal dismissed 92 B.R. 38 (S.D.N.Y. 1988) ("In determining whether a plan complies with Section 1129(a)(1), reference must be made to Code §§ 1122 and 1123 with respect to classification of claims and the contents of a plan of reorganization.").  As demonstrated below, the Plan complies with both Bankruptcy Code Sections 1122 and 1123, and thus satisfies the requirements of Subsection 1129(a)(1).

---

[2] Bankruptcy Code Sections 1129(a) (14), (15) and (16) are not applicable to the Debtors since they are not individuals (Sections 1129(a)(14) and (15)), and are not nonprofit corporations (Section 1129(a)(16)).

**B.**      **The Plan Complies With The Classification Requirements Of Bankruptcy Code Section 1122.**

Section 1122(a) of the Bankruptcy Code requires that each claim or interest within a class be substantially similar to all other claims or interests within that class.  See 11 U.S.C. § 1122(a) ("[A] plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.").  Courts are afforded broad discretion to decide the propriety of classification in plans in light of the facts of each case.  See Steelcase Inc. v. Johnston (In re Johnston), 21 F.3d 323, 327 (9th Cir. 1994) ("[B]ankruptcy court judges must have discretionary power in classifying claims under § 1122(a)").

A plan proponent is afforded significant flexibility in classifying claims under § 1122(a) provided there is a reasonable, non discriminatory basis for the classification scheme and all claims within a particular class are substantially similar.  In re Montclair Retail Center, L.P., 177 B.R. 663, 665 (9th BAP 1995) (citing In re Johnston, supra); In re Tucson Self-Storage, Inc., 166 B.R. 892, 898 (BAP 9th Cir. 1994) (acknowledging that classification of claims or interests is valid under Section 1122(b) of the Bankruptcy Code if there is a "business or economic justification"); See also Frito-Lay, Inc. v. LTV Steel Co., Inc. (In re Chateaugay Corp.), 10 F.3d 944, 956-57 (2d Cir. 1993) (holding that the debtor demonstrated a rational basis for its separate classification of similar claims); In re Jersey City Med. Ctr., 817 F.2d 1055, 1060-61 (3d Cir. 1987); In re Heritage Org., L.L.C., 375 B.R. 230, 299 n. 86 (Bankr. N.D. Tex. 2007) (finding that if creditors had different legal rights under subordination, then separate classification would be appropriate).

Here, the Plan's classification of Claims and Interests satisfies the requirements of Bankruptcy Code Section 1122.  The Plan separately classifies 6 distinct classes of claims and interests in the following classes:

|          |   |                          |
|----------|---|--------------------------|
| Class 1  | - | Priority Non-Tax Claims; |
| Class 2  | - | Secured Claims;          |
| Class 3  | - | General Unsecured Claims; |

W02-EAST:5KES1\200406687.4                                                    CONFIRMATION BRIEF

1               Class 4        -  Intercompany Claims;

2               Class 5        -  Subordinated Claims; and

3               Class 6        -  Equity Interests.

4       The foregoing classification scheme is appropriate because the Plan adheres to the

5 statutory requirements that the claims and interests within each class are substantially

6 similar to all other claims and interests in that class.  Pursuant to the Plan's classification

7 scheme, the secured debt is classified separately from unsecured debt, unsecured

8 subordinated debt is classified separately from unsecured claims, intercompany claims are

9 classified separately from unsecured claims, and equity interests are classified separately

10 from claims.

11       Class 1 consists only of priority non-tax claims, which under the Bankruptcy Code

12 are entitled to payment in full upon the effective date of the Plan.  See 11 U.S.C.

13 § 1129(a)(9)(A); see also In re Sullivan, 26 B.R. 677, 678 (Bankr. W.D.N.Y. 1982)

14 (holding that it is improper to classify general unsecured claims and priority claims

15 together in the same class).

16       Class 2 consists of Secured Claims.  These claims are not impaired under the Plan

17 and must accordingly be separately classified.  See 11 U.S.C. § 1123(a)(2) ("a plan shall–

18 specify any class of claims or interests that is not impaired under the plan.").

19       Class 3 consists of all General Unsecured Claims (i.e., claims that are not an

20 administrative expense, secured or entitled to priority under Bankruptcy Code Sections 502

21 and 507).  These claims are impaired under the Plan and are placed in the same class

22 because they are substantially similar.  See 11 U.S.C. § 1122(a) ("a plan may place a claim

23 or an interest in a particular class only if such claim or interest is substantially similar to

24 the other claims or interests of such class.").

25       Class 4 consists of all Intercompany Claims against the Technologies, Fasteel, Steel

26 Corp., and International, respectively.  These Claims are by insiders and are not entitled to

27 vote on the Plan.  These claims are placed in the same class because they are substantially

28 similar.  See 11 U.S.C. § 1123(a).

W02-EAST:5KES1\200406687.4                                    CONFIRMATION BRIEF

1    Class 5 consists the Subordinated Claims against Technologies, Fasteel, Steel Corp.,

2    and International.  The only Claims under this classification of which the Debtors are

3    aware are those related to a certain stipulated settlement approved by the Court between

4    Steel Corp. and the applicable Creditors in connection with certain steel purchase

5    agreements with the Steel Crop., pursuant to which the Creditors agreed to subordinate

6    such Claims.  These Claims are separately classified in accordance with the settlement and

7    because they are substantially similar.  See 11 U.S.C. § 1123(a).

8    Class 6 consists of all Interests in Technologies, Fasteel, Steel Corp., and

9    International.  These Claims are placed in the same class because they are substantially

10    similar.  See 11 U.S.C. § 1123(a).

11    As such, valid business, factual and legal reasons exist for the Plan's classification

12    scheme.  Based on their security position, if any, their legal priority against the Debtors'

13    assets, settlements approved by the Court fixing certain Claims, and other relevant criteria,

14    each of the stated Classes contains substantially similar Claims in terms of the legal or

15    factual rights of the members within a particular Class.  Accordingly, the Plan meets the

16    requirements of Bankruptcy Code Section 1122(a).

17    **C.**    **The Plan Contains All Mandatory Provisions And Certain Permissive**

18    **Provisions Set Forth In Bankruptcy Code Section 1123.**

19    Bankruptcy Code Section 1123 sets forth the mandatory and permissive contents of

20    a plan.  Specifically, Section 1123(a)(1)-(7)[3] requires that a plan:

21    (i)    designate classes of claims and interests;

22    (ii)    specify unimpaired classes of claims and interests;

23    (iii)    specify treatment of impaired classes of claims and interests;

24

25

26

---

27    [3] 11 U.S.C. § 1123(a)(8) is not applicable here as it is applicable in cases in which the
debtor is an individual.

28

-7-

(iv)  provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim agrees to a less favorable treatment of such particular claim or interest;

(v)  provide adequate means for implementation of the plan;

(vi)  provide for the prohibition of nonvoting equity securities and provide an appropriate distribution of voting power among the classes of securities; and

(vii)  contain only provisions that are consistent with the interests of the creditors and equity security holders and with public policy with respect to the manner of selection of the reorganized company's officers and directors.

Additionally, Section 1123(b) of the Bankruptcy Code identifies various permissive provisions that may be included in a plan of reorganization, but which are not required. 11 U.S.C. § 1123(b).  In particular, pursuant to § 1123(b), a plan may impair or leave unimpaired any class of claims or interests, provide for the assumption or rejection of executory contracts and unexpired leases, include settlements of any claims or interests, provide for consolidation, modify the rights of secured creditors and include any other appropriate provision not inconsistent with the applicable provisions of the Bankruptcy Code.  See 11 U.S.C. § 1123 (b)(1)-(6).  As shown below, the Plan complies with all the mandatory provisions and certain permissive provisions set forth in Bankruptcy Code Section 1123.

1.    Compliance With Bankruptcy Code Section 1123(a) (Mandatory Plan Provisions).

a.    Compliance With Bankruptcy Code Section 1123(a)(1) (Designation of Classes Of Claims And Interests).

Bankruptcy Code Section 1123(a)(1) requires that a plan designate classes of claims and interests, other than claims of a kind specified in Bankruptcy Code Section 507(a)(2) (administrative expense claims), Bankruptcy Code Section 507(a)(3) (claims arising during

-8-

CONFIRMATION BRIEF

1  the "gap" period in an involuntary case), and Bankruptcy Code Section 507(a)(8) (tax

2  claims).  See 11 U.S.C. § 1123(a)(1); see also In re Haardt, 65 B.R. 697, 700 (Bankr. E.D.

3  Pa. 1986); accord In re Commercial W. Fin. Corp., 761 F.2d 1329, 1334 (9th Cir. 1985); In

4  re Eagle Bus Mfg., Inc., 134 B.R. 584, 596 (Bankr. S.D. Tex. 1991), aff'd 158 B.R. 421

5  (S.D. Tex. 1993).  Section II of the Plan designates classes of claims and interests in

6  accordance with Bankruptcy Code Section 1123(a)(1) by expressly classifying all Claims

7  and Interests, other than Administrative Claims and Priority Tax Claims.  See Section II of

8  the Plan.  The Plan does not classify claims of the type described in Bankruptcy Code

9  Sections 507(a)(2) or (507)(a)(8).  See id.  Additionally, because each of the Debtors' cases

10  was commenced as a voluntary chapter 11 case, there are no "involuntary gap claims" of

11  the kind specified in Bankruptcy Code Section 507(a)(3).  Thus, the Plan satisfies the

12  requirements of Bankruptcy Code Section 1123(a)(1).

13          b.      Compliance With Bankruptcy Code Section 1123(a)(2) (Specification
14                  Of Unimpaired Classes And Interests).

15          Bankruptcy Code Section 1123(a)(2) requires that a plan "specify any class of

16  claims or interests that is not impaired under the plan."  11 U.S.C. § 1123(a)(2); see also In

17  re Smith, 123 B.R. 863, 865 (Bankr. C.D. Cal. 1991).  Under Bankruptcy Code

18  Section 1124, a class of claims or interests is impaired unless each claim in that class is

19  treated in either of the following ways:  (1) the plan leaves unaltered the legal, equitable,

20  and contractual rights to which such claim or interest is entitled; or (2) the plan cures any

21  default, reinstates the maturity, compensates the holder for damages and does not

22  otherwise alter the legal, equitable, or contractual rights to which such claim or interest

23  entitles the holder.  See 11 U.S.C. § 1124.

24          Section IV of the Plan specifies that the allowed claims in Classes 1 and 2 are

25  unimpaired under the Plan, thereby satisfying Bankruptcy Code Section 1123(a)(2).

26          c.      Compliance With Bankruptcy Code Section 1123(a)(3) (Specification
27                  Of Treatment Of Impaired Classes And Interests).

28

1  Bankruptcy Code Section 1123(a)(3) requires that a plan "specify the treatment of

2  any class of claims or interests that is impaired under the plan."  11 U.S.C. § 1123(a)(3).

3  In accordance with Bankruptcy Code Section 1123(a)(3), Section IV of the Plan specifies

4  the treatment of Classes 3, 4, 5, and 6 which are impaired under Scenario B of the Plan.

5  Class 3, 4, 5, and 6 are impaired under the Plan.

6            d.     Compliance With Bankruptcy Code Section 1123(a)(4) (Provide

7                 Same Treatment For Each Claim Or Interest Within A Class).

8  Bankruptcy Code Section 1123(a)(4) requires that a plan "provide the same

9  treatment for each claim or interest of a particular class, unless the holder of a particular

10  claim or interest agrees to a less favorable treatment of such particular claim or interest."

11  11 U.S.C. § 1123(a)(4).  As set forth in Section IV of the Plan, the same treatment is

12  provided for each Claim or Interest in each particular Class, unless the Claimant elects

13  otherwise.

14            e.     Compliance With Bankruptcy Code Section 1123(a)(5) (Adequate

15                 Means for Implementation of Plan).

16  Bankruptcy Code Section 1123(a)(5) requires that a plan "provide adequate means

17  for the plan's implementation" and sets forth several examples of such adequate means.

18  11 U.S.C. § 1123(a)(5); see also Florida Partners Corp. v. Southeast Co. (In re Southeast

19  Co.), 868 F.2d 335 (9th Cir. 1989); accord In re Stuart Glass & Mirror, Inc., 71 B.R. 332,

20  334 (Bankr. S.D. Fla. 1987).

21  The means for implementing the Plan are set forth throughout the Plan, but are

22  primarily described in Section V of the Plan in accordance with Bankruptcy Code

23  Section 1123(a)(5), and will enable implementation of the Plan in compliance with

24  Bankruptcy Code Section 1123(a)(5).  Section V focuses on the corporate structure,

25  governance matters, sources of consideration, and substantive consolidation of the

26  Debtors.  Other Sections of the Plan set forth the mechanics for administering the Claims

27  and the distributions.

28

                         CONFIRMATION BRIEF

(1)    <u>Various Means for Plan Implementation</u>

Specifically, the Plan provides that Fourth Third and Investment Funding will convert their Allowed General Unsecured Claims to equity and provide the Reorganized Debtors with the Exit Facility, thereby providing the necessary liquidity for the implementation of the Plan.  The Plan also provides for the means of selection of management and corporate governance structure (Section V.D of the Plan), the assumption or rejection of executory contracts and unexpired leases (Section VII of the Plan), the manner of distributions under the Plan (Section VI of the Plan), the continued corporate existence of the Debtors as the Reorganized Debtors (Section V of the Plan), the vesting of the property of the Debtors' Estates in the Reorganized Debtors free and clear of liens, claims and interests except as specifically otherwise provided in the Plan, and the preservation of Causes of Action (Sections V.G and VI.J of the Plan).

(2)    <u>Substantive Consolidation</u>

Additionally, the Plan seeks to substantively consolidate the Debtors for claims resolution and distribution purposes (Section V.E of the Plan), thus combining the assets and liabilities of all four Debtors into a single pool whereby they are treated as though they belong to a single entity.  The substantive consolidation of the Debtors for claims resolution and distribution purposes should be granted under section 1123 of the Bankruptcy Code as a settlement as it is supported by the Creditors by virtue of their votes to accept the Plan and section 1123(a)(5) also allows for consolidation.  The consolidation in this instance should save considerable sums in the resolution of claims and distributions made to creditors.  In addition, the applicable law in the Ninth Circuit authorizes substantive consolidation of the Debtors as one or more bases for substantive consolidation are present in these cases.

Courts considering substantive consolidation consider "(1) whether creditors dealt with the entities as a single economic unit and did not rely on their separate identity in extending credit; or (2) whether the affaires of the Debtor are so entangled that consolidation will benefit creditors."  <u>See</u> <u>Alexander v. Compton (In re Bonham)</u>, 229 F.3d

CONFIRMATION BRIEF

1   750, 766 (9th Cir. 2000) (citation omitted).  "The presence of either factor is a sufficient

2   basis to order substantive consolidation."  Id.

3       Here, the first Bonham factor is present as certain of the Creditors have perceived

4   the Debtors as one unit without regard to the separateness of the Debtors' entities.  The

5   Debtors generally presented and reported their financial statements on a consolidated basis

6   to the shareholders and creditors.  See Pompay Declaration.  In addition, various creditors,

7   like Fourth Third and Davidson, extended credit to the Debtors as a single business

8   enterprise.  See Pompay Declaration (the debt to Fourth Third is guaranteed by all the

9   Debtors, and Technologies and Steel Corp. are co-debtors on the inventory loan from

10  Davidson).  Therefore, the record strongly supports the inference that creditors did not rely

11  on the separate identity of any Debtor in extending credit to such Debtor.  The extent of the

12  view by the Creditors regarding the lack of separateness among the Debtors is further

13  evident from the Claims filed against the incorrect Debtor in these cases.  See, e.g., Claim

14  # 1 filed on Technologies' Claims Register but scheduled on Steel Corp.'s schedules; Claim

15  # 9 filed on Canadian's Claims Register but scheduled on Technologies' schedules; Claim

16  # 47 filed on Steel Corp.'s Claims Register but scheduled on Technologies' schedules;

17  Claim # 14 filed on Canadian's Claims Register but it is on account of a debt by

18  Technologies.  Accordingly, the first factor of the substantive consolidation test is met and

19  substantive consolidation should be granted.

20      Alternatively, the second Bonham factor standing alone supports substantive

21  consolidation of the Debtors as their operations and affairs are so commingled to the

22  determinant of Creditors if substantive consolidation is not employed.  The following

23  factors are considered to determine whether the Debtors' business and affaires are so

24  entangled to justify substantive consolidation: (1) the presence or absence of consolidated

25  financial statements; (2) the unity of interests and ownership between various corporate

26  entities; (3) the existence of parent and interoperate guarantees on loans; (4) the degree of

27  difficulty in segregating and ascertaining individual assets and liabilities; (5) the existence

28  of transfers of assets without formal observance of corporate formalities; (6) the

-12-

1  commingling of assets and business functions; and (7) the probabilities of consolidation at

2  a single physical location.  <u>Bonham</u>, 229 F.3d at 766 n. 10.  Contrary to what the Objection

3  suggests, the majority of these factors are present here and support substantive

4  consolidation.

5        The Debtors constitute single corporate enterprise where each of Fasteel, Steel

6  Corp. and International is a wholly-owned subsidiary of Technologies.  <u>See</u> Pompay

7  Declaration.  As demonstrated by the Pompay Declaration, the Debtors have such an

8  interwoven and interdependent relationship that one company cannot survive separately

9  from the others.  They share the same corporate headquarters, have mutual management,

10 and have employed a consolidated cash management system.  Despite the fact that each of

11 the Debtors are independent legal entities, the Debtors operated as separate divisions for

12 one business entity.  For example, Steel Corp. has been the operating entity that generates

13 virtually all the revenue for the MMFX group and the revenue is booked at Steel Corp.

14 However, Technologies owns the technology and allows Steel Corp. to sell the steel

15 encompassing the technology, but has not charged Steel Corp. a licensing fee for use of

16 such technology.  Also, Technologies provides management, accounting, engineering,

17 technical, and legal support for all the other Debtors companies, but Technologies has not

18 been reimbursed by the other Debtors for these services.  Fasteel provides testing and

19 R&D support for both Steel and Technologies, but has not charged the other Debtors a

20 service fee.  In other words, the Debtors share overhead, management, accounting,

21 technology and other related assets, costs and expenses, but such amounts were never

22 allocated among each of the Debtors who each benefitted from these services.

23       Furthermore, the Debtors generally presented and reported their financial statements

24 on a consolidated basis to the shareholders and creditors.  Although the reporting may have

25 included a column showing the financials for each entity, such separate reporting does not

26 take into account the Debtors' intercompany relationships described above.  The financials

27 do not make sense on an individual basis.  For example, Technologies shows no revenue,

28 but substantial operating expenses on its income statement.

W02-EAST:5KES1\200406687.4                                    CONFIRMATION BRIEF

1    In a de-consolidated Plan scenario, in order to arrive at the true assets and liabilities

2    at each Debtor, the Debtors would need to conduct an extensive forensic accounting,

3    including a detailed evaluation and allocation of the personnel's time and efforts (which

4    time allocation has not been recorded to date), arrive at a cost sharing mechanism for

5    overhead, as well as some type of technology licensing agreement, among other things.  It

6    would be extremely difficult, if not impossible, time consuming, and expensive to attempt

7    to allocate the Debtors' operating costs and assets.

8    Not only do the Debtors operate as one entity with intercompany lending, shared

9    personnel (including directors and officers), and other shared services and administrative

10   support, third party creditors dealing with the Debtors treated the Debtors as one business

11   enterprise when extending credit to them.  For example, (i) the Debtors' DIP lender

12   required all Debtors be jointly and severally liable on the DIP loan; (ii) Technologies, Steel

13   Corp., Fasteel and International are co-guarantors and obligors of the debt to Fourth Third;

14   and (iii) Steel Corp. and Technologies are co-obligors on a significant pre-petition

15   inventory loan in favor of Lindsey Davidson.

16   Further authority to grant substantive consolidation stems from sections 1123(a)(5),

17   1123(b)(3)(A) and 105 of the Bankruptcy Code.  First, a plan shall provide for adequate

18   means for its implementation.  Section 1123(a)(5) of the Bankruptcy Code states that this

19   includes "consolidation" with any person.

20   Second, section 1123(b)(3)(A) provides that a plan may include "the settlement or

21   adjustment of any claim or interest belonging to the debtor or to the estate."  Where a plan

22   includes such a settlement, confirmation of the plan is subject to:

23       the court's determination that the compromise is fair and equitable to
          the estate after considering the following factors:

24

25       (a) the probability of success in the litigation; (b) the difficulties, if
          any, to be encountered in the matter of collection; (c) the complexity
          of the litigation involved, and the expense, inconvenience and delay

26       necessarily attending it; [and] (d) the paramount interest of the
          creditors and a proper deference to their reasonable views . . . .

27

28

-14-

W02-EAST:5KES1\200406687.4    CONFIRMATION BRIEF

1    Arden v. Motel Partners (In re Arden), 176 F.3d 1226, 1228 (9th Cir. 1999) (quoting

2    Martin v. Kane (In re A&C Properties), 784 F.2d 1377, 1381 (9th Cir. 1986)).  As

3    discussed in this Confirmation Brief and the supporting declarations, and as demonstrated

4    by the Plan, the Disclosure Statement, the related documents, and the record of these cases,

5    such factors are present here and support the approval of the substantive consolidation as a

6    settlement.

7        Third, in addition to section 1123(b)(3)(A), section 105(a) of the Bankruptcy Code

8    provides ancillary authority for approval of a settlement in a plan of reorganization or

9    liquidation:

10       To the extent that the authority of § 105(a) is invoked to approve the
         provisions of [a settlement in a plan], its use is limited to providing

11      supplemental authority for the enforcement of a settlement that
         otherwise is subject to the court's approval under § 1123(b)(3)(A).

12

13    In re WCI Cable, Inc., 282 B.R. at 469.  Courts have found that a vote by creditors to

14    approve the plan is tantamount to a showing that it is in the paramount interest of creditors.

15    See In re Pac. Gas & Elec. Co., 304 B.R. 395, 417-18 (Bankr. N.D. Cal. 2004) (finding

16    creditors' approval of plan to satisfy fourth factor in A&C Properties test); see also In re

17    Adelphia Communs. Corp., 368 B.R. 140, 234-35 (Bankr. S.D.N.Y. 2007) ("Adelphia II")

18    ("If the approval percentages are so high, and so many feel that the Plan and its Settlement

19    are worthy of approval, one must at least pause to consider why a judge should feel

20    otherwise"), appeals dismissed at ACC Bondholder Group v. Adelphia Communs. Corp

21    (In re Adelphia Communs. Corp), 367 B.R. 84 (S.D.N.Y. 2007); and Official Comm. of

22    Equity Sec. Holders v. Adelphia Communs. Corp. (In re Adelphia Communs. Corp.), 371

23    B.R. 660 (S.D.N.Y. 2007).

24        In addition, substantive consolidation benefits creditors and facilitate a successful

25    reorganization of the Debtors.  First, General Unsecured Claims based on the same

26    underlying liability, such as duplicate claims and claims asserting joint and several

27    liability, will automatically be eliminated.  Thus, under the Plan, over $150 million of

28    general unsecured obligations alone will be eliminated just based on Fourth Third's claims,

1   which are asserted at each of the Debtors.  Second, the Intercompany Claims in Class 4

2   will be eliminated, which will obviate the need for the costly and time-consuming forensic

3   accounting discussed above.  Third, substantive consolidation will eliminate the need to

4   object to claims that have been filed incorrectly against the wrong Debtor because they

5   will be deemed to have been filed against one debtor.

6       Lastly, substantive consolidation is proper as it is supported by the Creditors

7   receiving distributions under the Plan.  Class 3 represents the sole impaired Class of

8   creditors who will receive distributions under the Plan.  Because Class 3, both with respect

9   to each individual Debtor and on a consolidated basis, has voted to accept the Plan, the

10  consolidation should be approved as a settlement and consolidation under Section 1123 of

11  the Bankruptcy Code.

12      As such, based on the above, the foregoing factors, on balance, weigh heavily in

13  favor of approving the substantive consolidation of the Debtors.

14          f.    Compliance With Bankruptcy Code Section 1123(a)(6) (Charter of

15                Reorganized Debtor).

16      Bankruptcy Code Section 1123(a)(6) requires that, with respect to a corporate

17  debtor, a plan must contain a provision prohibiting the issuance of nonvoting equity

18  securities, and providing for the appropriate distribution of power among the voting

19  securities.  See 11 U.S.C. § 1123(a)(6).  In the case of the Debtors, the Plan specifically

20  provides that the Reorganized Debtors' articles of incorporation or bylaws (as applicable)

21  will contain "provisions prohibiting the issuance of nonvoting equity securities to the

22  extent, and only to the extent, required by Section 1123(a)(6)."  See Section V.D.G of the

23  Plan.

24          g.    Compliance With Bankruptcy Code Section 1123(a)(7) (Selection Of

25                Officers And Directors).

26      Bankruptcy Code Section 1123(a)(7) requires that a plan:

27          contain only provisions that are consistent with the interests of
            creditors and equity security holders and with public policy
28          with respect to the manner of selection of any officer, director,

-16-

or trustee under the plan and any successor to such officer, director, or trustee.

11 U.S.C. § 1123(a)(7).  The Plan, as supplemented by the Plan Supplement, satisfies this requirement.  The Plan Supplement provides the structure of the management of the Reorganized Debtors and the lists of the initial senior officers and directors who will manage the Reorganized Debtors.  See Exhibit A and Exhibit B of the Plan Supplement. The foregoing procedures are consistent with applicable state law, public policy, the interests of Creditors and Interest holders.

2.      Compliance With Bankruptcy Code Section 1123(b) (Permissive Plan Provisions).

Bankruptcy Code Section 1123(b) describes various other provisions that are permitted in a plan.  The Plan contains a number of these provisions, all of which are intended to facilitate the reorganization of the Debtor and the payment to holders of allowed claims and interests.

a.      Compliance With Bankruptcy Code Section 1123(b)(1) (Impairment/Nonimpairment).

Bankruptcy Code Section 1123(b)(1) provides that a plan may "impair or leave unimpaired any class of claims, secured or unsecured, or of interests."  11 U.S.C. § 1123(b)(1).  The Plan impairs Classes 3, 4, 5 and 6, and leaves Classes 1 and 2 unimpaired.  See Sections III and IV of the Plan.

b.      Compliance With Bankruptcy Code Section 1123(b)(2) (Assumption/Rejection Of Executory Contracts And Unexpired Leases).

Subject to Bankruptcy Code Section 365, Bankruptcy Code Section 1123(b)(2) permits a plan to provide for the assumption or rejection of any executory contract and unexpired lease not previously rejected.  See 11 U.S.C. § 1123(b)(2); see also In re TS Indus. Inc., 117 B.R. 682, 685 (Bankr. D. Utah 1990).  Bankruptcy Rule 9014 does not govern the assumption or rejection of an executory contract or unexpired lease as a part of

-17-

1  a plan.  See Fed. R. Bankr. P. 6006(a).  Thus, no separate motion, notice, or hearing is

2  required.

3          In accordance with Bankruptcy Code Section 1123(b)(2), Section VII of the Plan

4  provides that, on the Effective, the Reorganized Debtors will assume the executory

5  contracts and unexpired of the Debtors that: (a) have been expressly identified in the Plan

6  Supplement for assumption, (b) are subject to a motion for assumption, or (c) are identified

7  in the Successful Bid (as applicable, the "Notice of Assumption").  Additionally, it

8  provides that on the Effective Date, the Debtors will reject all executory contracts and

9  unexpired leases of the Debtors otherwise not identified in the Notice of Assumption.

10  Exhibit E to the Plan Supplement provides the list of the assumed executory contracts and

11  unexpired leases under Scenario B.

12                  c.      Compliance With Bankruptcy Code Section 1123(b)(3) (Settlement

13                          And Retention of Claims).

14          Pursuant to Bankruptcy Code Section 1123(b)(3), a plan may provide for

15                  (A)  the settlement or adjustment of any claim or interest
                    belonging to the debtor or to the estate; or

16                  (B)  the retention and enforcement by the debtor, by the trustee,
17                  or by a representative of the estate appointed for such purpose,
                    of any such claim or interest.

18

19  11 U.S.C. § 1123(b)(3).  Here, the Plan takes advantage of this discretionary right under

20  Section 1123(b)(3)(B) as set forth in Sections V.G and VI.J of the Plan titled "Retained

21  Claims and/or Defenses" and "Preservation of Causes of Action," respectively.  This is in

22  compliance with Bankruptcy Code Section 1123(b)(3) in that it seeks to reserve rights of

23  the Debtors.

24                  d.      Compliance With Bankruptcy Code Section 1123(b)(5) (Modification

25                          Of Rights Of Holders Of Claims).

26          Bankruptcy Code Section 1123(b)(5) provides that a plan may "modify the rights of

27  holders of secured claims . . . or of holders of unsecured claims, or leave unaffected the

28  rights of holders of any class of claims."  11 U.S.C. § 1123(b)(5).  As set forth in

-18-

1    Section V of the Plan, the Plan modifies the rights of the holders of allowed Interests in

2    Classes 3, 4, 5 and 6, and leaves unaffected the rights of the holders of allowed claims in

3    Classes 1 and 2.

4    **D.    The Debtor Has Complied With The Requirements Of Bankruptcy Code**

5    **Section 1129(a)(2) (Compliance With Applicable Provisions of Title 11).**

6    Bankruptcy Code Section 1129(a)(2) requires that the proponent of the plan also

7    comply with "the applicable provisions" of title 11.  11 U.S.C. § 1129(a)(2).  The

8    "applicable provisions" of title 11 are Bankruptcy Code Section 1121 (dealing with who

9    may file a plan) and Bankruptcy Code Section 1125 (dealing with the solicitation of

10    acceptances of a plan).  <u>See</u> <u>In re Hoff</u>, 54 B.R. 746, 750-51 (Bankr. D.N.D. 1985); <u>In re</u>

11    <u>Toy & Sports Warehouse, Inc.</u>, 37 B.R. 141, 149 (Bankr. S.D.N.Y. 1984).

12    1.    Compliance With Bankruptcy Code Section 1121(a) (Who May File a Plan).

13    Bankruptcy Code Section 1121(c) provides

14    (c) Any party in interest, including the debtor, the trustee, a
creditors' committee, an equity security holders' committee, a

15    creditor, an equity security holder, or any indenture trustee,
may file a plan if and only if—

16    (1) a trustee has been appointed under this chapter;

17    (2) the debtor has not filed a plan before 120 days after the

18    date of the order for relief under this chapter; or

19    (3) the debtor has not filed a plan that has been accepted,
before 180 days after the date of the order for relief under

20    this chapter, by each class of claims or interests that is
impaired under the plan.

21

22    11 U.S.C. § 1121(c).  Here, the Plan is proposed by the Debtors, the Committee, Fourth

23    Third and Investment Funding.  The Proponents are accordingly qualified to file the Plan

24    under Section 1121(c)(1).

25    2.    Compliance With Bankruptcy Code Section 1125 (Post-petition Disclosure

26    and Solicitation).

27    One of the principal purposes of Bankruptcy Code Section 1129(a)(2) is to ensure

28    that plan proponents have complied with the requirements of Bankruptcy Code

-19-

1    Section 1125 in the solicitation of acceptances of a plan of reorganization.  See In re

2    Jeppson, 66 B.R. 269, 296-97 (Bankr. D. Utah 1986); Toy & Sports Warehouse, 37 B.R. at

3    149 ("[t]he proponent must comply with the ban on post-petition solicitation of the plan

4    unaccompanied by a written disclosure statement approved by the court in accordance with

5    Code §§ 1125 and 1126.").  Bankruptcy Code Section 1125(b) provides that a proponent

6    may not solicit acceptances of its plan unless, at or before the time of such solicitation,

7    there is transmitted to the claimant, or the authorized representative thereof, both a copy of

8    the plan and a court-approved disclosure statement.  See 11 U.S.C. § 1125(b); see also

9    Duff v. United States Trustee (In re California Fidelity, Inc.), 198 B.R. 567, 571 (9th Cir.

10   BAP 1996); accord In re Treasure Bay Corp., 212 B.R. 520, 540-41 (Bankr. S.D. Miss.

11   1997); In re Cramer, Inc., 100 B.R. 63, 66 (Bankr. D. Kan. 1989).

12           As shown below, the Proponents have fully complied, the Proponents have

13   followed the mandates of Section 1125.  By this Court's order approving the Disclosure

14   Statement, entered on June 9, 2011, the Court approved the Disclosure Statement as

15   required by Bankruptcy Code Section 1125, and approved the Proponents' solicitation

16   procedures.  The Plan has not been modified since such approval.  Subsequently, in

17   compliance with Bankruptcy Rule 3017(d), on June 10, 2011, the Debtors transmitted the

18   plan solicitation packages to creditors and shareholders entitled to vote on the Plan

19   pursuant to the Court-approved solicitation procedures, including serving the governmental

20   entities and other interested parties with copies of the Disclosure Statement and Plan.

21   Certificates of service regarding the distribution of the solicitation packages have been

22   filed with the Bankruptcy Court.[4]  The plan package documents provided the parties with

23   notice of the deadline of the objection to confirmation of July 8, 2011 as set by this Court.

24   The Objection is the sole objection to confirmation that has been received.

25

26

27   _____

     [4] See Docket Entry Nos. 385, 386 & 387.

28

1   The Proponents have complied with the applicable provisions of the Bankruptcy

2 Code, the Bankruptcy Rules and the solicitation procedures, and thus the Plan complies

3 with the requirements of Bankruptcy Code Section 1129(a)(2).

4    3.  <u>The Plan Has Been Proposed In Good Faith In Compliance With Bankruptcy</u>

5     <u>Code Section 1129(a)(3).</u>

6   Bankruptcy Code Section 1129(a)(3) requires a plan to be "proposed in good faith

7 and not by any means forbidden by law."  11 U.S.C. 1129(a)(3).  Good faith is viewed in

8 light of the totality of circumstances.  <u>See</u> <u>In re Sun Country Dev., Inc.</u>, 764 F.2d 406, 408

9 (5th Cir. 1985).  Generally, a plan is proposed in good faith if "there is a likelihood that the

10 plan will achieve a result consistent with the standards prescribed under the Code."  <u>In re</u>

11 <u>Texaco, Inc.</u>, 84 B.R. 893, 907 (Bankr. S.D.N.Y. 1988) <u>appealed dismissed</u>, 92 B.R. 38

12 (S.D.N.Y. 1988) (quoting <u>Hanson v. First Bank.</u>, 828 F.2d 1310, 1315 (8th Cir. 1987)

13 (quoting <u>In re Toy & Sports Warehouse</u>, 37 B.R. 141, 149 (Bankr. S.D.N.Y. 1984).

14   Good faith for purposes of Section 1129(a)(3) of the Bankruptcy Code also may be

15 found where the plan is supported by key creditor constituencies, or was the result of

16 extensive arm's-length negotiations with creditors.  <u>See</u> <u>In re Leslie Fay Cos.</u>, 207 B.R.

17 764, 781 (Bankr. S.D.N.Y. 1997) ("The fact that the plan is proposed by the committee as

18 well as the debtors is strong evidence that the plan is proposed in good faith"); In <u>re Eagle-</u>

19 <u>Picher Indus., Inc.</u>, 203 B.R. 256, 274 (Bankr. S.D. Ohio 1996) (finding that plan of

20 reorganization was proposed in good faith when, among other things, it was based on

21 extensive arm's-length negotiations among plan proponents and other parties in interest).

22   From the facts and the circumstances of these cases, it is evident that the Plan has

23 been proposed in good faith and not in any means forbidden by law and, except for

24 Davidson by way of a conclusory statement in a footnote in the Objection, no party has

25 placed the Proponents' good faith at issue and there is nothing in the record to suggest the

26 lack of good faith in proposing the Plan.

27   The Plan achieves the bankruptcy goal of allowing the Debtors to reorganize their

28 business affairs and emerge from bankruptcy as viable entities through means consistent

                   Confirmation Brief

1   with the objections and purposes of the Bankruptcy Code.  The Plan accomplishes this

2   goal by paying the Secured Claims and Administrative Claim in full, and providing

3   significant recoveries to the General Unsecured Claims.  By providing for the alternative

4   Scenario A as part of the Plan, the Plan allowed for the possibility of full recovery for

5   creditors and for the Interests holders to retain an interest under the Plan to the extent the

6   Investment Banking Process is successful.  Under Scenario B, the Reorganized Debtors

7   will benefit from the availability of the Exit Facility, which will be used to make a

8   substantial distribution to Holders of Allowed General Unsecured Claims who have not

9   opted to receive equity.  The Plan is overwhelmingly supported by the Debtors' General

10  Unsecured Creditors as well as the shareholders.

11        Moreover, the Plan is the result of extensive arm's length negotiations among the

12  Proponents and pursuant to the terms of the RSA that resulted after resolving the

13  Proponents' dispute with respect to the Debtors' exclusivity periods.  The resolution of that

14  dispute and the RSA, which have been approved by this Court in its order entered on

15  May 5, 2011, provided the blueprint for the Plan and Plan process.  Throughout that

16  process, the Proponents worked diligently to adhere to the deadlines, procedures and key

17  terms of the agreements embodied in those documents, and have proposed the Plan with

18  the purpose of reorganizing the Debtors.

19        In sum, the support for the Plan from the creditors and the shareholders evidences

20  the Proponents' honesty and good faith in proposing the Plan, and the totality of the

21  circumstances surrounding its formulation, including the months of negotiation, clearly

22  promotes the rehabilitative objectives and purposes of the Bankruptcy Code.

23        4.    The Plan Complies With The Requirements Of Bankruptcy Code

24              Section 1129(a)(4) (Payment for Services or Costs in Connection With the

25              Case).

26  Bankruptcy Code Section 1129(a)(4) requires that:

27              [a]ny payment made or to be made by the proponent, by the
                debtor, or by a person issuing securities or acquiring property
28              under the plan, for services or for costs and expenses in or in

-22-

1  connection with the case, or in connection with the plan and
2  incident to the case, has been approved by, or is subject to the
   approval of, the court as reasonable.

3  11 U.S.C. § 1129(a)(4).  Bankruptcy Code Section 1129(a)(4) is directed primarily at

4  policing the award and payment of professional fees from the estates in chapter 11 cases.

5  See 7 COLLIER ON BANKRUPTCY ¶ 1129.03[4] (15th ed. rev. 2001) ("Section 1129(a)(4)

6  requires that the bankruptcy court exercise substantive control over fees and costs related

7  to confirmation and the chapter 11 case.").

8       In these cases, the employment of all professionals has been obtained by way of

9  orders of this Court and the professionals that have been paid were paid pursuant to the

10  Bankruptcy Code and the compensation procedures approved by this Court.  All payments

11  to these professionals for pre-confirmation periods are subject to final court approval if

12  such approval has not been granted.[5]  Only the amount of such fees and expenses allowed

13  by the Court will be owed and required to be paid under the Plan for such time period.

14  Pursuant to Section III.D of the Plan, each Holder of a Professional Fee Claim seeking an

15  award of compensation for services rendered or reimbursement of expenses incurred

16  through and including the Effective Date will (i) file their respective interim (if applicable)

17  and final fee applications by no later than the tenth (10th) day after the Effective Date or

18  such other date as may be fixed by the Court and (ii) if granted such an award, be paid

19  Cash in such amounts as are Allowed by the Court on the date such Professional Fee Claim

20  becomes an Allowed Claim, or as soon thereafter as is practicable.

21       The foregoing demonstrates compliance with the requirements of

22  Section 1129(a)(4), as all compensation to be paid from estate assets will be subject to

23  review by this Court in accordance with the standards and principles applicable to

24  allowance of compensation and reimbursement of expenses in cases under the Bankruptcy

25  Code.

26  ─────────────────
27  [5] The sole exception is the compensation for Bidna & Keys APLC whose retained as an
    ordinary course professional and to the extent the monthly compensation does not exceed
28  $5,000.

W02-EAST:5KES1\200406687.4                                    CONFIRMATION BRIEF

5.      **The Plan Complies With Bankruptcy Code Section 1129(a)(5) Regarding The Identity Of Officers, Directors, And Insiders.**

Pursuant to Bankruptcy Code Section 1129(a)(5)(A)(i), a proponent of a plan must disclose:

> the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under the plan.

11 U.S.C. § 1129(a)(5)(A)(i); see also In re M.S.M. & Assocs., Inc., 104 B.R. 312, 315 (Bankr. D. Haw. 1989); In re Cajun Elec. Power Coop., Inc., 230 B.R. 715, 740 (Bankr. M.D. La. 1999).  In addition, Bankruptcy Code Section 1129(a)(5)(A)(ii) requires that the appointment to or continuation in office by any individual be consistent with the interests of creditors and equity security holders and with public policy.  See 11 U.S.C. § 1129(a)(5)(A)(ii).  Finally, Bankruptcy Code Section 1129(a)(5)(B) requires the proponents to disclose the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insiders.  See 11 U.S.C. § 1129(a)(5)(B).

Exhibit B to the Plan Supplement discloses the identity of senior management personnel.  The appointment of the proposed directors and officers is consistent with the interests of the holders of Claims and Interests and with public policy.

6.      **The Plan Complies With Bankruptcy Code Section 1129(a)(6) Regarding Governmental Regulatory Approval Of Rates.**

Section 1129(a)(6) requires that any regulatory commission with jurisdiction over the rates of the debtor approve any changes in rates provided in the plan.  See 11 U.S.C. § 1129(a)(6).  In this case, Section 1129(a)(6) of the Bankruptcy Code is not applicable because the Debtors' business does not involve the establishment of rates over which any regulatory commission has jurisdiction or will have jurisdiction after Confirmation.

7.      **The Plan Satisfies the Requirements Of Bankruptcy Code Section 1129(a)(7) ("Best Interest" Test).**

1   The "best interests" test set forth in Section 1129(a)(7) requires that the plan

2   proponent demonstrate that, with respect to each impaired class of claims or interests, the

3   holder of each claim or interest in such class has either accepted the plan or:

4       will receive or retain under the plan on account of such claim
        or interest property of a value, as of the effective date of the
5       plan, that is not less than the amount that such holder would so
        receive or retain if the debtor were liquidated under chapter 7
6       of this title on such date . . . .

7   11 U.S.C. § 1128(a)(7); In re Consol. Water Utilities, Inc., 217 B.R. 588, 592 (9th Cir.

8   BAP 1998); In re Victory Constr. Co., 42 B.R. 145, 151 (Bankr. C.D. Cal. 1984).

9   The "best interests" test focuses on individual dissenting creditors rather than

10  classes of claims.  See In re Apple Tree Partners, LP, 131 B.R. 380, 393 (Bankr. W.D.

11  Tenn. 1991); In re Drexel Burnham Lambert Group, 138 B.R. 723, 761 (Bankr. S.D.N.Y.

12  1992).  In the instant case, the test requires that each holder of a claim or equity security

13  interest either accepts the Plan or will receive or retain under the Plan property having a

14  present value, as of the effective date of the plan, not less than the amount such holder

15  would receive or retain if the debtor were liquidated under chapter 7 of the Bankruptcy

16  Code on such date.  See In re Leslie Fay Cos., 207 B.R. 764, 787 (Bankr. S.D.N.Y. 1997).

17  Thus, under the "best interests" test, the court "must find that each [non-accepting]

18  creditor [or Interest holder] will receive or retain value that is not less than the amount he

19  would receive if the debtor were liquidated." In re Victory Constr. Co., 42 B.R. 145, 151

20  (Bankr. C.D. Cal. 1984).  As Section 1129(a)(7) makes clear, the liquidation analysis

21  applies only to non-accepting impaired claims or interests.  If a class of claims or interest

22  unanimously accepts the plan, then the best interests test is automatically satisfied for all

23  members of that class.

24  Pursuant to Section 1126(f) of the Bankruptcy Code, each holder of a claim or

25  equity interest, as the case may be, in a class that is unimpaired is deemed to accept the

26  plan.  11 U.S.C. § 1126(f).  Under the Plan, Classes 1 (Priority Non-Tax Claims) and 2

27  (Secured Claims) are unimpaired, and therefore, the "best interests" test is satisfied with

28  respect to each claim in each such Class.

W02-EAST:5KES1\200406687.4                                                    CONFIRMATION BRIEF

1    With respect to the holders of Class 4 Claims (Intercompany Claims), such Claims

2    are by Insiders and are not entitled to vote on the Plan, and have deemed to reject the Plan.

3    No junior Class of Interests or Claims are retaining property under Scenario B of the Plan.

4    Therefore the "best interest" test is satisfied with respect to Class 4.

5    As to Class 5 (Subordinate Claims), Class 5 is impaired under the Plan (entitled to

6    vote only under Scenario A) is deemed to reject the Plan under Scenario B.  Holders of

7    Class 5 Claims have agreed that they will not receive any distribution prior to the

8    satisfaction of all other Claims pursuant to the SPA stipulation [Docket No. 334] and the

9    order approving it.  Holders of Claims in Class 5 are not receiving any distributions under

10   the Plan under Scenario B, which is what they would receive under a chapter 7 liquidation,

11   and no junior Class of Interests or Claims are retaining property.  As such, their treatment

12   the "best interest" test is satisfied with respect to Class 5.

13   As for Class 6 (Interests holders), Class 6 Interest holders are impaired (entitled to

14   vote on the Plan only regarding Scenario A and have voted to accept Scenario A) are

15   deemed to reject the Plan under Scenario B.  Class 6 Interest holders are receiving nothing

16   under the Plan pursuant to Scenario B, which is exactly what they would receive in a

17   chapter 7 bankruptcy case, and no junior Class of Interests or Claims are retaining

18   property.  There is no credible evidence that the Debtors would suddenly become solvent

19   following the administration of a chapter 7 bankruptcy case.  Accordingly, the "best

20   interests" test is satisfied as to the interests in Class 6.

21   The Plan also satisfies Section 1129(a)(7)'s "best interest" test with respect to

22   Class 3 (the General Unsecured Claims).  The Plan builds on and incorporates the Debtors'

23   robust Investment Banking Process.  In order to achieve the maximum recovery possible

24   for the Estates and their creditors, the Debtors' Investment Banking Process included

25   reaching out to over 270 potential financial investors and over 120 strategic investors.  See

26   Chance Declaration.  As such, the Debtors' business and assets have been vigorously tested

27   by the market.

28

1    In addition, as set forth in the Breakeven Analysis, in order to achieve the same

2    recovery provided under the Plan for the holders of the General Unsecured Claims in a

3    chapter 7, the Debtors estimate that the Estates' assts will have to be liquidated by the

4    chapter 7 trustee for at least $47 million.  <u>See</u> Pompay Declaration.  No qualified

5    Minimum Bid has been selected thus far.  The Debtors' Investment Banking Process is still

6    ongoing and the Debtors will be prepared to make an offer of proof to the Court at the

7    confirmation hearing regarding the submissions of bids received up to that time.

8    Also, the Plan provides the necessary liquidity in the form of the Exit Facility for

9    the payment of the DIP Loan, the Secured Claims and the Administrative Claims that

10    would otherwise come ahead of holders of General Unsecured Claims.  Further, the Exit

11    Facility will provide an additional $1,000,000 to be set aside on account of the Priority

12    Claims and the General Unsecured Claims, which funds would not otherwise be available.

13    The Plan also avoids a layer of administrative expense and delay associated with the

14    appointment of a chapter 7 trustee, while increasing the efficiency of administering the

15    Debtor's assets for the benefit of Creditors.  In a chapter 7 case, the chapter 7 trustee

16    would be entitled to seek a sliding scale commission based upon the funds distributed by

17    such trustee, even though the Debtors have already accumulated certain funds and incurred

18    certain expenses associated with generating such funds.  Accordingly, the Proponents

19    believe that there is a reasonable likelihood that Creditors would "pay again" for the funds

20    accumulated by the Debtors, since the chapter 7 trustee would be entitled to receive a

21    commission in some amount for all funds distributed, including possibly the funds handed

22    over to the chapter 7 trustee by the Debtors.

23    Additionally, the Plan allows the holders of Allowed General Unsecured Claims to

24    realize a recovery that is much quicker than they otherwise would in the context of a

25    chapter 7 case.  Among other things, a chapter 7 case would trigger a new bar date for

26    filing Claims that would be more than 90 days following conversion of the Chapter 11

27    Cases to chapter 7.  Fed. R. Bankr. P. 3002(c).  Hence, a chapter 7 liquidation would not

28

CONFIRMATION BRIEF

1    only delay distributions, but raise the prospect of additional Claims that were not asserted

2    in the Chapter 11 Cases.

3         Based on the foregoing analysis, the Plan satisfies the requirements of Bankruptcy

4    Code Section 1129(a)(7).

5         8.    <u>The Plan Has Been Accepted By All Classes In Compliance With</u>

6               <u>Bankruptcy Code Section 1129(a)(8).</u>

7         Bankruptcy Code Section 1129(a)(8) requires that each class of claims and interests

8    has either accepted the plan or is not impaired under the plan.  <u>See</u> 11 U.S.C. § 1129(a)(8).

9    A class of claims accepts a plan if holders of at least two-thirds in dollar amount and more

10   than one-half in number of claims of that class vote to accept the plan, counting only those

11   claims whose holders actually vote on the plan.  <u>See</u> 11 U.S.C. § 1126(c).  A class of

12   interests accepts a plan if holders of at least two-thirds in amount of the allowed interests

13   vote to accept the plan, counting only those shares whose holders actually vote.  <u>See</u> 11

14   U.S.C. § 1126(d).

15        The Voting Declaration contains a summary of the votes cast.  The voting on the

16   Plan was as follows:

17        1.    <u>Class 1 (Priority Non-Tax Claims)</u>:  Class 1 is unimpaired under the Plan and

18   is thus conclusively presumed to have accepted the Plan.  <u>See</u> 11 U.S.C. § 1126(f);

19   <u>Platinum Capital, Inc. v. Sylmar Plaza, L.P. (In re Sylmar Plaza L.P.)</u>, 314 F.3d 1070, 1075

20   (9th Cir. 2002).

21        2.    <u>Class 2 (Secured Claims)</u>:  Class 2 is unimpaired under the Plan and is thus

22   conclusively presumed to have accepted the Plan.  <u>See</u> 11 U.S.C. § 1126(f); <u>Sylmar Plaza</u>,

23   314 F.3d at 1075.

24        3.    <u>Class 3 (General Unsecured Claims)</u>:  As set forth in the Voting Declaration,

25   Class 3 has voted to accept the Plan, whether the votes are tabulated on case-by-case basis

26   or a consolidated basis.  The following is the breakdown of the votes by the holders of

27   Allowed Claims in Class 3 that have voted to accept the Plan in each of the Debtors' cases:

28

-28-

1       (a) <u>Technologies</u>:  83.33% of the number of the votes received, reflecting

2       99.57% of the Dollar amount of the voting Claims in Class 3.

3       (b) <u>Steel Corp.</u>:  79.31% of the number of the votes received, reflecting

4       99.52% of the Dollar amount of the voting Claims in Class 3.

5       (c) <u>Fasteel</u>:  85.71% of the number of the votes received, reflecting almost

6       100% of the Dollar amount of the voting Claims in Class 3.

7       (d) <u>International</u>:  100% of the number of the votes received, reflecting

8       100% of the Dollar amount of the voting Claims in Class 3.

9      4.     <u>Class 4 (Intercompany Claims)</u>:  Class 4 is not entitled to vote on the Plan.

10      5.     <u>Class 5 (Subordinated Claims)</u>:  Class 5 (which is entitled to vote on the Plan

11  under Scenario A and have voted to reject Scenario A) is deemed to have rejected the Plan

12  under Scenario B.  As such, the requirement of Section 1129(a)(8) of the Bankruptcy Code

13  is not met with respect to Classes 5.  Nevertheless, even where certain impaired classes of

14  claims or interests do not accept a plan, and therefore the requirements of Section

15  1129(a)(8) of the Bankruptcy Code are not satisfied, the plan nevertheless may be

16  confirmed over such nonacceptance pursuant to the "cramdown" provisions of Section

17  1129(b)(1) of the Bankruptcy Code.  The holders of Class 5 Claims have agreed not to

18  receive any distribution under the Plan until all the other Claims have been satisfied.

19  Under Scenario B, holders of Class 5 Claims are receiving nothing under the Plan and

20  because no junior class is retaining anything under Scenario B, the requirements of

21  Bankruptcy Code Section 1129(b)(2)(B) are satisfied.

22      6.     <u>Class 6 (Equity Interests)</u>:  As set forth in the Voting Declaration, Class 6

23  (only entitled to vote regarding Scenario A) has voted to accept the Plan.  77.87% of the

24  amount of the Allowed Interests in Class 6 have voted to accept the Plan.

25      As a result, the requirements of Bankruptcy Code Section 1129(a)(8) have been

26  satisfied.

27      9.     <u>The Plan Complies With Bankruptcy Code Section 1129(a)(9).</u>

28

                                  

1     Bankruptcy Code Section 1129(a)(9) contains provisions generally requiring

2   payment in cash of administrative and non-tax priority claims and permitting regular

3   installment payments of priority tax claims over a period not exceeding 5 years after the

4   date of the order for relief.  See 11 U.S.C. § 1129(a)(9).

5     The Plan satisfies the requirements of Section 1129(a)(9).  First, with respect to the

6   Administrative Claims, the Plan provides that

7           Unless any entity entitled to payment of an Allowed Administrative
            Claim agrees to a less favorable treatment or unless otherwise
8           ordered by the Court, each Holder of an Allowed Administrative
            Claim (except for Professional Fees, which shall be treated as set
9           forth in Section III(D)) will receive in full satisfaction, discharge,
            exchange and release thereof, Cash in an amount equal to such
10          Allowed Administrative Claim on the later of (i) the Effective Date,
            and (ii) the fifteenth (15th) Business Day after such Administrative
11          Claim becomes an Allowed Administrative Claim, or, in either case,
            as soon thereafter as is practicable
12
    Section III.A of the Plan.  Second, with respect to the Priority Tax Claims, the Plan
13
    provides that
14
            Except to the extent that a Holder of an Allowed Priority Tax Claim
15          has been paid by the Debtors before the Effective Date or agrees to a
            less favorable treatment, each Holder of an Allowed Priority Tax
16          Claim will receive in full satisfaction, discharge, exchange and
            release thereof, Cash in an amount equal to such Allowed Priority
17          Tax Claim on the later of (i) the Effective Date or (ii) the fifteenth
            (15th) Business Day after such Priority Tax Claim becomes an
18          Allowed Priority Tax Claim, or as soon thereafter as is practicable.

19  Section III.B of the Plan.  With respect to Priority Non-Tax Claims, the Plan provides that

20          Each Holder of an Allowed Class 1 Priority Non-Tax Claim, unless
            otherwise mutually agreed upon by the Holder of such Claim and the
21          applicable Debtor, will receive Cash in an amount equal to such Class
            1 Allowed Priority Non-Tax Claim on the later of (a) the Effective
22          Date, or as soon as practicable thereafter, or (b) the date such Priority
            Non-Tax Claim becomes an Allowed Priority Non-Tax Claim
23          pursuant to a Final Order, or as soon thereafter as is practicable.

24  Section IV.A of the Plan.  Lastly, Claims for professional fees and expenses will be paid as

25  soon as on the date such Professional Fee Claims become Allowed Claims, or as soon

26  thereafter as is practicable.  See Section III.D. of the Plan.

27     For the above reasons, the plan complies with Bankruptcy Code Section 1129(a)(9).

28

CONFIRMATION BRIEF

1    10.    The Plan Has Been Accepted By At Least One Impaired Class In

2        Compliance With Bankruptcy Code Section 1129(a)(10).

3        Bankruptcy Code Section 1129(a)(10) requires at least one class of impaired claims

4    to have accepted the plan, determined without including any acceptance of the plan by an

5    insider holding a claim in such class.  See 11 U.S.C. § 1129(a)(10); In re Ruti-Sweetwater,

6    Inc., 836 F.2d 1263, 1267 (10th Cir. 1988).  As noted above, Classes 3 and 6, which are

7    both impaired, duly accepted the Plan in accordance with Bankruptcy Code

8    Section 1126(d).  The vote of Class 3 will be considered under Scenario B.  (To the extent

9    the Proponents proceed under Scenario A, the vote of Class 6 will be considered.)

10    11.    Confirmation Of The Plan Is Not Likely To Be Followed By Liquidation

11        (Unless Provided For In The Plan) Or The Need For Further Financial

12        Reorganization In Compliance With Bankruptcy Code Section 1129(a)(11).

13        Bankruptcy Code Section 1129(a)(11) requires that "[c]onfirmation of the plan is

14    not likely to be followed by the liquidation, or need for further financial reorganization, of

15    the debtor or any successor to the debtor under the plan, unless such liquidation is

16    proposed in the plan."  11 U.S.C. § 1129(a)(11).  As discussed above, there are adequate

17    means for implementation of the Plan.  Such means include the Exit Facility under

18    Scenario B, which provides the Reorganized Debtors with the necessary liquidity.

19    12.    The Debtor Will Pay On Or Before The Effective Date All Fees Payable

20        Under 28 U.S.C. § 1930 In Compliance With Bankruptcy Code

21        Section 1129(a)(12).

22        Bankruptcy Code Section 1129(a)(12) requires the payment of "[a]ll fees payable

23    under Section 1930 of title 28 [of the United States Code], as determined by the court at

24    the hearing on confirmation of the plan."  11 U.S.C. § 1129(a)(12).  The Plan complies

25    with Section 1129(a)(12) by providing that:

26        Quarterly Fees to the United States Trustee. All fees payable under
        28 U.S.C. § 1930(a)(6) shall be paid by the Debtors in the amounts
27        and at the times such fees may become due up to and including the
        Effective Date. Thereafter, the Reorganized Debtors shall pay all fees

28

                                    CONFIRMATION BRIEF

1      payable under 28 U.S.C. § 1930(a)(6) until the Bankruptcy Cases are
       closed, dismissed or converted.
2

3    Section XII.F of the Plan.

4          13.    The Plan Complies With Bankruptcy Code Section 1129(a)(13) In Respect

5                 To Retiree Benefits.

6          Bankruptcy Code Section 1129(a)(13) requires that a plan provide for the continued

7    payment of certain retiree benefits "for the duration of the period that the debtor has

8    obligated itself to provide such benefits."  11 U.S.C. § 1129(a)(13).  The Debtor is not

9    obligated to provide such benefits.  The Debtors have a 401(k) plan, but it is administered

10   by a third party and not the Debtors, and the Debtors do not make any contribution to and

11   have no control over the plan.  As a result, the requirements of Bankruptcy Code Section

12   1129(a)(13) have been satisfied.

13         14.    The Plan Complies With Bankruptcy Code Section 1129(d) Because The

14                Principal Purpose Of The Plan Is Not To Avoid Taxes Or Applicable

15                Securities Laws.

16         Bankruptcy Code Section 1129(d) provides:

17                Notwithstanding any other provision of this Section, on request
                  of a party in interest that is a governmental unit, the court may
18                not confirm a plan if the principal purpose of the plan is the
                  avoidance of taxes or the avoidance of the application of
19                Section 5 of the Securities Act of 1933 (15 U.S.C. § 77e).

20   11 U.S.C. § 1129(d).  Here, the principal purpose of the Plan is not to avoid taxes or the

21   securities laws.  No governmental party in interest has requested the denial of confirmation

22   on any of the foregoing grounds.  Accordingly, the Plan satisfies Section 1129(d).

23                                         **II.**

24         **THE SOLE OBJECTION TO THE PLAN SHOULD BE OVERRULED**

25         Davidson's Objection raises the following three arguments against the confirmation

26   of the Plan, each of which should be overruled:

27         (1) Davidson objects to the substantive consolidation of the Debtors' estates.  First,

28   the evidence set forth in the Pompay declaration establishes that substantive consolidation

-32-

1    is appropriate.  As demonstrated above in greater detail, the applicable test for substantive

2    consolidation is easily satisfied in these cases.  Davidson's Objection has not shown a

3    single harm of substantive consolidation and the benefits with regard to claims resolution

4    and distributions are readily apparent.  In addition, the impaired Creditors who are

5    receiving distributions under the Plan have voted to accept the Plan and in support of the

6    substantive consolidation.  Therefore, Davidson's Objection should be overruled and the

7    Court should order substantive consolidation of the Debtors as, among other things, a

8    settlement approved by creditors and authorized under section 1123(a)(5).

9        (2) Davidson argues in the Objection that the "best interest" test under 1129(a)(7) is

10   not satisfied.  As discussed above, every holders of Claim or Interest of each Class that is

11   impaired under the Plan will either (a) have voted to accept the Plan, or (b) not receive the

12   same recovery under the Plan in a liquidation scenario unless the Debtors' assets were to be

13   liquidated for at least $47 million.  The Breakeven Analysis attached to the Pompay

14   Declaration supports this conclusion by comparing the liquidation value of the Debtors'

15   assets and the estimated liabilities in a chapter 7 case with the distributions under the Plan.

16   As demonstrated by the Breakeven Analysis and the Liquidation Analysis in the

17   Disclosure Statement, the prospects for recovery that may be realized by Creditors on

18   account of their Claims against the Debtor would be at least as great, if not better, under

19   the Plan as in a chapter 7 liquidation of the Debtors.  The Debtors' Investment Banking

20   Process is still ongoing and the Debtors will be prepared to make an offer of proof to the

21   Court at the confirmation hearing regarding the submissions of bids received up to that

22   time.

23       (3) In a footnote, the Objection makes a conclusory statement that the Plan was not

24   proposed in good faith.  As discussed above, there is no evidence in the record that puts the

25   Proponents' good faith at issue.  The Plan is a negotiated plan proposed for the purpose of

26   reorganizing the Debtors and maximizing the value of their estates.  The evidence before

27   the Court shows good faith in proposing the Plan.

28

-33-

CONFIRMATION BRIEF

1   Counsel for the Debtors met and conferred with Davidson's counsel regarding the

2   Objection.  Those discussions are still ongoing.

3   ### III.

4   ### <u>COMMITTEE'S CONSENT</u>

5   One of the conditions to confirmation of the Plan is that:  "If the Exit Facility is not

6   sufficient to pay the General Unsecured Creditor Recovery, the Committee shall have

7   consented to such other treatment."  Section VIII.A.9 of the Plan.  The General Unsecured

8   Creditor Recovery is defined as a 100% recovery for Holders of Allowed General

9   Unsecured Claims.  Because the Exit Facility as currently contemplated under the Plan will

10  not be sufficient to pay the General Unsecured Creditor Recovery and the Committee has

11  not consented to other treatment, one of the conditions to confirmation of the Plan have not

12  yet been met.  While the Committee and certain of the Proponents who are providing the

13  Exit Facility (Fourth Third and Investment Funding) are in discussions regarding this

14  condition precedent, as of the date of the filing of this pleading, no agreement had yet been

15  reached.  Negotiations are ongoing.  Therefore, the Committee reserves all of its rights

16  with respect to the Plan, including to argue at the time of the confirmation hearing that one

17  of the required conditions to confirmation of the Plan has not been met.

18  //

19  //

20  //

21  //

22

23

24

25

26

27

28

W02-EAST:5KES1\200406687.4                                    CONFIRMATION BRIEF

## IV.

## <u>CONCLUSION</u>

For the reasons discussed above, the Court should enter an order confirming the Plan.  Attached hereto as <u>Exhibit A</u> is a proposed form of order confirming the Plan under Scenario B in the event the Plan is confirmed under such scenario.

Dated: July 18, 2011

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By    _____
                    */s/ Ori Katz*
                    ORI KATZ
                    ROBERT K. SAHYAN

Attorneys for the Debtors

W02-EAST:5KES1\200406687.4